# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# MCALLEN DIVISION

TEXAS BANKERS ASSOCIATION;
RIO BANK, MCALLEN, TEXAS; and
AMERICAN BANKERS ASSOCIATION

*Plaintiffs*,

v.

CONSUMER FINANCIAL PROTECTION
BUREAU; and ROHIT CHOPRA, in his official
capacity as Director of the Consumer Financial
Protection Bureau,

*Defendants*.

Case No: 7:23-cv-00144

## **DECLARATION OF CELESTE M. EMBREY**

In accordance with 28 U.S.C. § 1746, Celeste M. Embrey offers the following declaration:

1. My name is Celeste M. Embrey. I am employed by the Texas Bankers Association (TBA) as its Executive Vice President, Government Relations & General Counsel. As part of my job responsibilities, I regularly correspond with banks operating in the State of Texas. My testimony herein is based upon my personal knowledge and a review of records kept in the ordinary course of business by the Texas Bankers Association.

2. TBA is America's oldest and largest state banking organization in the United States. TBA advocates in both Austin and Washington D.C. for its 397 member banks across Texas. The Association also invests directly in Texas communities through financial literacy, scholarships, and other charitable activities. TBA's membership consists of mostly small to medium size banks with a median asset size of approximately $357

million.  While its banks employ over 200,000 individuals, the median employment of its member banks is 50 or fewer.

3.      The members of TBA range in size: from small community banks and thrifts, to medium-sized banks operating in several parts of the state, to large regional financial institutions that are headquartered outside the state.  TBA's membership covers depository institutions offering small business loans in each category covered by Final Rule at issue in the current suit (*e.g.*—2,500 hundred loans or more; 500 to 2,499 business loans; and 100 to 499 small business loans).

4.      Recently, TBA polled 125 individual members across a representative sampling of its membership base to determine the effect that promulgation of the Final Rule has had on its member depository institutions.  The results of that survey showed that:

    (a)     Seventy percent (70%) of TBA member banks make 100 or more small business loans on an annual basis, which is the minimum threshold established for the compliance requirements; and

    (b)     Ten percent (10%) of those banks, according to the compliance dates under the Final Rule, are likewise phased-in on the basis of loan volume and must begin collecting the extensive data requirements set forth in the present by June 2024.

5.      Consumer compliance experts such as the Compliance Alliance (which is owned and endorsed by 30 State Bank Associations including TBA) advised their bank customers to commence compliance preparation steps immediately after the Final Rule was announced and made public.  These steps begin with a review of in-house capacity; procurement of software compliance programs; hiring and then training personnel

(including search firms in almost all cases); and next, according to the Compliance Alliance's standard recommendations, implementation of the following start-up processes:

- Loan Calculators
- Check Lists
- Compliance Calendar
- Flowcharts
- Forms
- Handouts
- Matrices
- Policies
- Procedures
- Risk Assessments
- Signage
- Training Tools
- Videos
- Webinars
- Worksheets

6.  As a result, the responding members to the TBA survey referenced above have already incurred or are about to incur direct economic injuries caused by the promulgation of the Final Rule.

7.  TBA approximates the initial compliance costs that will be lost by its member institutions to be approximately $100,000 per community bank—almost $40 Million dollars total.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 12, 2023.

*Celeste Embrey*
Celeste M. Embrey

3