IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| TEXAS BANKERS ASSOCIATION; RIO BANK, MCALLEN, TEXAS; and AMERICAN BANKERS ASSOCIATION,<br><br>Plaintiffs,<br><br>TEXAS FIRST BANK, INDEPENDENT BANKERS ASSOCIATION OF TEXAS, and INDEPENDENT COMMUNITY BANKERS OF AMERICA,<br><br>Proposed Intervenor Plaintiffs,<br><br>v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU and ROHIT CHOPRA, in his official capacity as Director of the Consumer Financial Protection Bureau,<br><br>Defendants. | Case No: 7:23-cv-00144 |

**UNOPPOSED EMERGENCY MOTION FOR LEAVE
TO INTERVENE AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

Page

**TABLE OF AUTHORITIES** ................................................................................................... iii

**INTRODUCTION** ...................................................................................................................... 1

**CREDIT UNION INTERVENORS AND THEIR INTERESTS** ............................................ 1

**RELEVANT BACKGROUND** .................................................................................................. 2

**ARGUMENT** ............................................................................................................................... 5

    I.    Credit Union Intervenors Are Entitled to Intervene As of Right. ....................... 6

        A.    Credit Union Intervenors' motion is timely. .............................................. 6

        B.    Credit Union Intervenors have a significant, protectable interest in this case. ........... 7

        C.    Disposition of this action without Credit Union Intervenors will impede their ability to protects their interests. ......................................................... 8

        D.    The current parties do not adequately represent Credit Union Intervenors' interests. .................................................................................................... 9

    II.    Alternatively, Credit Union Intervenors Should Be Granted Permissive Intervention. ... 10

    III.    The Court Should Consider this Motion on an Expediated Basis. ................................... 10

**CONCLUSION** ......................................................................................................................... 11

**CERTIFICATE OF CONFERRAL** ....................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

*Cases*

*Alexander v. AmeriPro Funding, Inc.*,
  848 F.3d 698 (5th Cir. 2017) ..................................................................................................2

*Berger v. N.C. State Conf. of the NAACP*,
  142 S. Ct. 2191 (2022) ...........................................................................................................6

*Brumfield v. Dodd*,
  749 F.3d 339 (5th Cir. 2014) .................................................................................................8

*Edwards v. City of Houston*,
  78 F.3d 983 (5th Cir. 1996) ...................................................................................................6

*La Union del Pueblo Entero v. Abbott*,
  29 F.4th 299 (5th Cir. 2022) ..................................................................................................6

*In re Lease Oil Antitrust Litig.*,
  570 F.3d 244 (5th Cir. 2009) ............................................................................................5, 6

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
  732 F.2d 452 (5th Cir. 1984) ...............................................................................................10

*Newby v. Enron Corp.*,
  443 F.3d 416 (5th Cir. 2006) ...............................................................................................10

*Seila Law LLC v. CFPB*,
  140 S. Ct. 2183 (2020) .......................................................................................................1, 3

*Sierra Club v. Espy*,
  18 F.3d 1202 (5th Cir. 1994) .............................................................................................6, 8

*Stallworth v. Monsanto Co.*,
  558 F.2d 257 (5th Cir. 1977) .................................................................................................6

*Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*,
  338 F.R.D. 364 (W.D. Tex. 2021) ........................................................................................9

*United States v. Tex. E. Transmission Corp.*,
  923 F.2d 410 (5th Cir. 1991) .................................................................................................5

*Texas v. United States*,
  805 F.3d 653 (5th Cir. 2015) ........................................................................................5, 7, 9

*VanDerStok v. Garland*,
  No. 4:22-CV-00691-O, 2022 WL 19023858 (N.D. Tex. Dec. 19, 2022) ..............................9

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
  834 F.3d 562 (5th Cir. 2016) ........................................................................................5, 6, 9

## TABLE OF AUTHORITIES (con't)

*Statutes*

Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010,
 Pub. L. No. 111-203, § 1071, 124 Stat. 1376 (2010)..................................................................2

Equal Credit Opportunity Act of 1974,
 Pub. L. 93-495, 88 Stat. 1500 (1974) ...............................................................................2, 3, 8

Federal Credit Union Act of 1934,
 Pub. L. No. 73-467, § 2, 48 Stat. 1216, 1216 (1934)..................................................................4

*Rules*

Fed. R. Civ. P. 24..................................................................................................................5, 8

Fed. R. Civ. P. 24(a)(2)..................................................................................................5, 6, 7, 11

Fed. R. Civ. P. 24(b)......................................................................................................5, 10, 11

Fed. R. Civ. P. 26(f)....................................................................................................................7

*Regulations*

12 C.F.R. § 202.........................................................................................................................2

40 Fed. Reg. 49,298 (Oct. 22, 1975)..........................................................................................2

Small Business Lending Under the Equal Credit Opportunity Act (Regulation B),
 88 Fed. Reg. 35,150 (May 31, 2023) ...............................................................................2, 4, 8

*Other Authorities*

Letter from Major L. Clark, III, U.S. Small Bus. Admin. Office of Advocacy, to
 Dir. Rohit Chopra, CFPB, Re: Notice of Proposed Rulemaking on Small
 Business Lending Data Collection, Jan. 6, 2022 ......................................................................5

Judge R. Crane's Court Procedures VII(3)................................................................................10

S.D. Tex. L.R. 7.8 ....................................................................................................................10

iv

**INTRODUCTION**

In creating the Consumer Financial Protection Bureau (CFPB or Bureau), Congress "deviated from the structure of nearly every other independent administrative agency in our history." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020). This deviation has necessitated constitutional scrutiny of the agency and its authority. Of course, in *Seila Law*, the Supreme Court held that a critical part of the Bureau's unprecedented structure—its single director removable only for cause—violated Article II of the Constitution by imposing an unconstitutional limit on the President's oversight of the Bureau. And last year the Fifth Circuit held that the Bureau's insulation from Congressional appropriations similarly violates Article I. *Community Fin. Servs. Ass'n of Am., Ltd. v. Consumer Financial Protection Bureau*, 41 F.4th 616, 642 (5th Cir. 2022). The Supreme Court has agreed to consider the Fifth Circuit's decision, which would render virtually all actions by the CFPB a nullity.

Notwithstanding the Supreme Court's pending review, the Bureau has only amplified its administrative work. Months after the Fifth Circuit's decision, the Bureau issued the Final Rule at issue in this case. Just three months ago, Plaintiffs Texas Bankers Association, American Bankers Association and Rio Bank brought this lawsuit seeking a nationwide preliminary and permanent injunction enjoining the enforcement of the Final Rule. On July 31, the court issued a preliminary injunction, "enjoin[ing] the CFPB from implementing and enforcing the Final Rule," but only against "Plaintiffs and its members." (Order 16, Doc. 25.) Intervenors—a credit union and regional and national trade associations of credit unions—seek to participate in this lawsuit as plaintiffs to vindicate their constitutional interest in the injunction of the Final Rule, which is identical to the interest of the original plaintiffs.

**CREDIT UNION INTERVENORS AND THEIR INTERESTS**

*Rally Credit Union.* **Rally** is a credit union chartered by the State of Texas with its headquarters in Corpus Christi, Texas. Rally serves over 200,000 members across an eight-county area that covers the Southern District of Texas. Rally has 20 branches, six of which are in

1

or around the McAllen area. Because of the cultural diversity in the communities it serves, Rally frequently makes loans to Texas women-owned, minority-owned, and small business.

*Credit Union National Association.* **CUNA** is the largest trade association in the United States serving America's credit unions and the only national association representing the entire credit union movement. CUNA represents nearly 5,000 federal and state credit unions, which collectively serve more than 135 million members nationwide. CUNA's mission, in part, is to advocate for the responsible regulation of credit unions to ensure market stability, while eliminating needless regulatory burden that interferes with the efficient and effective administration of financial services of credit unions to their millions of members.

*Cornerstone Credit Union League.* **Cornerstone** is among the nation's largest regional credit union trade associations, serving approximately 700 credit unions in Texas, Arkansas, Kansas, Missouri, and Oklahoma. Cornerstone exists to advance the success of credit unions in the region through legislative and grassroots advocacy; regulatory and compliance support; training, educational, and networking opportunities; essential communications related to news and information affecting the credit union industry; and other products and services.

**RELEVANT BACKGROUND**

At the center of this case is the Bureau's Final Rule under section 1071 (Section 1071) of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (Dodd-Frank), which in part amended the Equal Credit Opportunity Act of 1974 (ECOA). *See* Small Business Lending Under the Equal Credit Opportunity Act (Regulation B), 88 Fed. Reg. 35, 150 (May 31, 2023) (Final Rule). The ECOA protects individuals and businesses against discrimination in accessing and using credit. *See Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 707 (5th Cir. 2017). Congress originally tasked the Board of Governors of the Federal Reserve System (Board) with setting the ECOA's implementing regulations, which the Board did by rulemaking. *See* 40 Fed. Reg. 49,298 (Oct. 22, 1975). The Board issued its rules as Regulation B. 12 C.F.R. § 202.

*The Final Rule.* On September 1, 2021, the Bureau—also a creature of Dodd-Frank—issued a notice of proposed rulemaking amending Regulation B to implement its interpretation of

the changes to ECOA required by Section 1071. The notice-and-comment period ran from September 1, 2021 until January 6, 2022. After litigation in *California Reinvestment Coalition v. CFPB*, No. 4:19-cv-02572-JSW (N.D. Cal.) over the Bureau's review of the proposed rule, the Bureau issued the Final Rule. The effective date of the Final Rule is August 29, 2023.

Curiously, the Bureau issued the Final Rule ***after*** the Fifth Circuit held that the agency's funding scheme violates the Constitution and vacated a different rule promulgated by the agency. Indeed, the Final Rule came ***after*** the U.S. Supreme Court granted review in that case, *CFPB v. Community Financial Services Association of America, Ltd.*, No. 22-448 (U.S.), which presents a first-impression separation-of-powers question. When Congress created the Bureau in 2010, it "deviated from the structure of nearly every other independent administrative agency in our history." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020). From the very beginning, this ingenuity in design invited constitutional scrutiny from all corners, including the Supreme Court. In *Seila Law*, the Supreme Court held that a critical part of the Bureau's unprecedented structure—its single director removable only for cause—violated separation of powers by imposing an unconstitutional limit on the President's oversight of the Bureau. The *CFSA* case concerns yet another separation-of-powers problem: Congress's lack of oversight of the Bureau through traditional congressional appropriations.

***Plaintiffs' Complaint and Motion for Nationwide Preliminary Injunction.*** Unsurprisingly, soon after the Bureau promulgated the Final Rule, Plaintiffs sued alleging, in part, that the Rule is invalid and unenforceable because of the constitutional defects in the Bureau's funding scheme. (Compl. 15, Doc. 1 (Count I).) Plaintiffs sought "both a preliminary and permanent injunction setting aside and holding unlawful the CFPB's ECOA Final Rule." (*Id.* at 20.) Subsequently, Plaintiffs "move[d] for a nationwide preliminary injunction to prevent [the Bureau] from enforcing the rule." (Order 8, Doc. 25.)

***The Scope of the Court's Preliminary Injunction.*** On July 31, 2023, the Court granted Plaintiffs' motion for preliminary injunction but narrowed the scope of the injunction to only Plaintiffs and their member banks. Specifically, the Court ordered that the Bureau is

"preliminarily enjoined from implementing and enforcing the Final Rule, 88 Fed. Reg. 35,150 (May 31, 2023), against Plaintiffs and their members pending the Supreme Court's reversal of [*CFSA*], a trial on the merits of this action, or until further order of this Court." (*Id.* at 16.) The Court clarified that the Bureau "shall immediately cease all implementation or enforcement of the Final Rule against Plaintiffs and their members" and "that all deadlines for compliance with the requirements of the Final Rule are stayed for Plaintiffs and their members until after the Supreme Court's final decision in [the *CFSA* case]." (*Id.* at 16–17.)

***Credit Union Intervenors' Interest and Irreparable Harm.*** Due to the limited scope of the preliminary injunction, Credit Union Intervenors and their members now have a unique, unprotected interest in this litigation. To be clear, Credit Union Intervenors and their members will be harmed the same—if not more—by the Bureau's enforcement of the Final Rule. That harm, however, is compounded now that Plaintiffs' member banks (Credit Union Intervenors' competitors) are preliminarily relieved from compliance from, or preparing to comply with, the Final Rule while credit unions must bear the cost of compliance.

This is particularly problematic due to credit unions unique, member-owned design. Credit unions are not-for-profit, financial cooperatives, established "for the purpose of promoting thrift among [their] members and creating a source of credit for provident and productive purposes." Federal Credit Union Act of 1934, Pub. L. No. 73- 467, § 2, 48 Stat. 1216, 1216 (1934) (codified as amended at 12 U.S.C. § 1752(1)). Most credit unions are small, local financial institutions with limited staff and resources. Over 40 percent of all credit unions employ five or fewer full-time employees, more than 25 percent have less than $10 million in assets, and almost 75 percent have less than $100 million in assets. Additionally, credit unions do not issue stock. Their capitalization is based on member deposits and retained earnings, meaning members' deposits may be at risk from increased compliance costs due to the Final Rule. Even the Small Business Administration Office of Advocacy warned during the comment period for the Final Rule that the Bureau's approach "may be unnecessarily burdensome to small entities, may impact the cost of credit for small businesses and may lead to a decrease in lending to small,

4

minority- and women-owned businesses." Letter from Major L. Clark, III, U.S. Small Bus. Admin. Office of Advocacy, to Dir. Rohit Chopra, CFPB, Re: Notice of Proposed Rulemaking on Small Business Lending Data Collection, Jan. 6, 2022, https://tinyurl.com/y4cwptj7.

Based on the uneven playing field, Credit Union Intervenors are left no choice but to intervene in this case and file a motion to modify the preliminary injunction or motion for preliminary injunction, or seek the same relief in a separate action in this Court. Credit Union Intervenors agree with Proposed Intervenors Texas First Bank, Independent Bankers Association of Texas, and Independent Community Bankers of America (Community Bank Intervenors), that the more efficient path is to litigate the common legal issues and claims in this case, as opposed to filing separate actions. (*See* Community Bank Intervenors Mot. to Intervene 4–5, Doc. 26.) Accordingly, attached to this motion as **Exhibit 1** is Credit Union Intervenors proposed complaint in intervention, which largely follows Plaintiffs' first amended complaint.

## ARGUMENT

Rule 24 provides two avenues for a non-party to intervene in a pending lawsuit: as a matter of right under Rule 24(a)(2), and as a matter of permission under Rule 24(b). The Fifth Circuit has recognized that "Rule 24 represents an accommodation between two potentially conflicting goals: to achieve judicial economies of scale by resolving related issues in a single lawsuit, and to prevent the single lawsuit from becoming fruitlessly complex." *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 412 (5th Cir. 1991) (cleaned up). Rule 24 is therefore to be "liberally construed," based on the Circuit's "broad policy favoring intervention." *Wal–Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565, 569 (5th Cir. 2016) (quoting *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015)). To be clear, any doubts over the propriety of intervention should be "resolved in favor of the proposed intervenor." *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir. 2009).

Here, both avenues broadly favor intervention. Thus, Credit Union Intervenors should be permitted to intervene as plaintiffs under Rule 24(a)(2) or, alternatively, under Rule 24(b).

5

### I. Credit Union Intervenors Are Entitled to Intervene As of Right.

The "starting point" is Rule 24(a)(2), which "provides that a 'court must permit anyone to intervene' who, (1) '[o]n timely motion,' (2) 'claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest,' (3) 'unless existing parties adequately represent that interest.'" *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2200–01 (2022). In evaluating these factors, courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint in intervention, and declarations supporting the motion as true. *See La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022). Credit Union Intervenors satisfy each Rule 24(a)(2) requirement.

### A. Credit Union Intervenors' motion is timely.

The Fifth Circuit applies the *Stallworth* factors to timeliness questions, which include: "(1) the length of time between the would-be intervenor's learning of his interest and his petition to intervene; (2) the extent of prejudice to existing parties from allowing late intervention; (3) the extent of prejudice to the would-be intervenor if the petition is denied; and (4) any unusual circumstances [weighing in favor of or against intervention]." *In re Lease Oil Antitrust Litig.*, 570 F.3d at 247–48 (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977)). Timeliness is not confined "to chronological considerations" but rather is "determined from all the circumstances." *Wal–Mart Stores*, 834 F.3d at 565 (quoting *Stallworth*, 558 F.2d at 263). Further, because courts "discourage premature intervention"—because it "wastes judicial resources," *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994)—"[t]he timeliness clock runs … from the time [the proposed intervenor] became aware that his interest would no longer be protected by the existing parties to the lawsuit," *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996) (citation omitted).

This case is very much in its infancy. Plaintiffs filed the operative complaint less than three months ago, seeking a nationwide preliminary and permanent injunction enjoining the enforcement of the Final Rule. (*See* First Am. Compl., Doc. 12) The Bureau only filed its answer

6

on July 3, 2023. (*See* Answer, Doc. 19.) And 10 days ago, the Court issued a preliminary injunction, "enjoin[ing] the CFPB from implementing and enforcing the Final Rule," but only against "Plaintiffs and its members." (Order 16, Doc. 25.) It was not until the Court's order narrowing the scope of the requested injunction that it became apparent that Credit Union Intervenors' interest were no longer protected. In just 10 days, Credit Union Intervenors promptly organized, hired counsel, and now present a single motion in support of credit unions' unique interest in this litigation and the relief awarded. The motion is therefore timely.

Nor will any party be prejudiced by the Credit Union Intervenors' intervention here. As the Community Bank Intervenors explained in their August 4, 2023 motion to intervene, other than briefing the motion for preliminary injunction, there has been no other case activity. No discovery, no Rule 26(f) conference, no appeal of the order granting in part the preliminary injunction, and no other substantive activity. (*See* Community Bank Intervenors Mot. to Intervene 7, Doc. 26.) Simply, no prejudice will result from ensuring that key stakeholders subject to the Final Rule are before the Court in a single case.

### B. Credit Union Intervenors have a significant, protectable interest in this case.

Rule 24(a)(2)'s "interest" showing requires a "direct, substantial, legally protectable interest in the proceedings." *Texas*, 805 F.3d at 657. This "inquiry turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Id.* That Credit Union Intervenors' interests are "concrete, personalized, and legally protectable" is readily apparent. *See id.* at 658.

As to Rally, it has a direct interest in seeking relief from the Final Rule, which is unconstitutional and unenforceable because of defects in the CFPB's funding scheme. (*See generally* Credit Union Intervenors' Compl. in Intervention.) Like Plaintiff Rio Bank and Proposed Intervenor Texas First, Rally frequently makes loans to Texas women-owned, minority-owned, and small businesses, and it is subject to the Final Rule as "covered financial institution" that made at least 100 "covered credit transactions" in each of 2021 and 2022, and

7

expect to make at least 100 of these transactions in 2023. *See* 88 Fed. Reg. 35529–30 (to be codified at 12 C.F.R. §§ 1002.102(g), (h), 1002.104, 1002.105(b)).

As to CUNA and Cornerstone, they also have an interest in seeking relief from the Final Rule for their credit union members, the vast majority of which are "covered financial institutions" that engage in, or will engage in, "covered credit transactions." In that way, CUNA's and Cornerstone's thousands of members are in the same position as Rally—they are subject to the Final Rule but not presently covered by the Court's preliminary injunction because they are neither members of ABA nor TBA. At bottom, Credit Union Intervenors' participation in the case will ensure that credit unions have the opportunity to protect their unique interests and explain how the Final Rule harms these financial institutions.

### C. Disposition of this action without Credit Union Intervenors will impede their ability to protects their interests.

"If an absentee would be substantially affected in a practical sense by the determination made in an action, [it] should, as a general rule, be entitled to intervene." Rule 24, adv. comm. notes. This is not a high bar. "Once a movant has successfully established a sufficient interest in the subject of the action, the movant must demonstrate that disposition of that action ***may***, as a practical [and not merely 'theoretical'] matter, impair or impede the movant's ability to protect that interest." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (citations omitted) (emphasis added). A legal or practical impact to the Credit Union Intervenors' interests suffices, such as that of stare decisis. *See Espy*, 18 F.3d at 1207.

Here, Credit Union Intervenors would plainly be "substantially affected in a practical sense" based on how the Court decides the ultimate question of the Final Rule's constitutionality. The Final Rule greatly expands Credit Union Intervenors' and their members' compliance obligations under the ECOA, requiring covered institutions to collect and report to the Bureau on 80 data points related to applications for credit for small businesses. Further, technology providers are already building functionality to capture the additional data points and passing the increased cost to financial institutions, immediately increasing the cost for processing and

8

providing small-business loans. Any decision on the constitutionality of the Final Rule in this case therefore may impair Credit Union Intervenors' and their members' interest, particularly those credit unions in Texas and the Fifth Circuit more broadly. (*See* Community Bank Intervenors Mot. to Intervene 9 (collecting cases).)

### D. The current parties do not adequately represent Credit Union Intervenors' interests.

The burden of showing inadequacy of representation is "minimal" and satisfied if the proposed intervenor can show that representation of its interests "*may* be inadequate." *Wal–Mart Stores*, 834 F.3d at 569 (quoting *Texas*, 805 F.3d at 662). The current posture of the case proves Plaintiffs—and the Bureau for that matter—do not adequately represent Credit Union Intervenors' interests. True, both Plaintiffs and Credit Union Intervenors share an interest in challenging the Final Rule. And before the order granting a preliminary injunction in part, Plaintiffs and Credit Union Intervenors shared an interest in nationwide relief in the form of a preliminary injunction that covered **all** covered financial institutions. But the Court denied nationwide relief. Now Plaintiffs, which represent banks (including some of the largest in the world), are uniquely positioned to leverage this competitive advantage over non-banks, including credit unions, which, by design, do not enjoy the same economies of scale that large banks do. Thus, based on the case's current posture, there is little incentive for Plaintiffs to represent their own interests **and** credit unions' interests going forward. *See Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 338 F.R.D. 364, 372 (W.D. Tex. 2021) (granting intervention because movants' "evidence and arguments" were "unlikely to be put forth by Defendants" thus movants demonstrated their divergent interests in the litigation); *VanDerStok v. Garland*, No. 4:22-CV-00691-O, 2022 WL 19023858, at *4 (N.D. Tex. Dec. 19, 2022) (granting intervention because "[t]he existing parties and Putative Intervenors do not … have the same ultimate objective"). For this reason, Credit Union Intervenors should be granted intervention to protect the interests of a class of covered financial institutions otherwise absent from the case.

## II. Alternatively, Credit Union Intervenors Should Be Granted Permissive Intervention.

Rule 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." Permissive intervention is subject to the discretion of the Court. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 470–71 (5th Cir. 1984) (en banc).

The threshold inquiry is whether Credit Union Intervenors' claims and the underlying litigation share a question of law or fact. *Newby v. Enron Corp.*, 443 F.3d 416, 421 (5th Cir. 2006). Here, the answer is unquestionably yes. Credit Union Intervenors' claims track Plaintiffs' and Community Bank Intervenors' claims; thus, by default Credit Union Intervenors' claims present common questions of law or fact. Likewise, Credit Union Intervenors' motion is timely. It was filed 10 days from when the Court granted a narrowed preliminary injunction covering only the plaintiff-banks. (*See* I.A, *supra.*)

Next, granting intervention will not unduly delay the case or prejudice the parties. Granting intervention will avoid dueling litigation over the precise issues already pending before the Court. (*See* Community Banks Mot. to Intervene 11 (explaining the same).) Rather than multiple cases presenting the same issues—in the same court—permissive intervention joins interested parties in a single action and ensures consistent treatment, as it relates to the Final Rule, while the Supreme Court considers the constitutionality of the Bureau's funding scheme in *CFPB v. Community Financial Services Association of America, Ltd.*, No. 22-448.

For these reasons, Credit Union Intervenors should be allowed to participate in this case.

## III. The Court Should Consider this Motion on an Expedited Basis.

Like the Community Bank Intervenors, Credit Union Intervenors respectfully request expedited treatment of this motion. (*See* Community Banks Mot. to Intervene 11–12 (citing S.D. Tex. Local Rule 7.8; Judge R. Crane's Court Procedures VII(3)).) The Final Rule goes into effect August 29, 2023. While covered financial institutions have a year to comply with the Final Rule, compliance preparation is beginning now. As mentioned, technology providers are

building functionality now to capture the additional data points. And they are immediately passing the increased cost to financial institutions, which must either absorb the increased cost or pass them along to small-business loan applicants. Thus, any delay guarantees credit unions will be disadvantaged as they budget and spend capital on resources to comply with the Final Rule's new data collection and reporting requirements.

## CONCLUSION

Credit Union Intervenors request that this Court grant them intervention as of right in this lawsuit as defendants under Rule 24(a)(2), or in the alternative, permissive intervention under Rule 24(b). Credit Union Intervenors also request expedited treatment of their motion.

Dated: August 10, 2023.                    Respectfully submitted,

*/s/ Christopher O. Murray*
Christopher O. Murray
Julian R. Ellis, Jr. (*pro hac vice pending*)
BROWNSTEIN HYATT
  FARBER SCHRECK, LLP
675 15th Street, Suite 2900
Denver, Colorado 80202
Email: cmurray@bhfs.com
            jellis@bhfs.com
Ph: (303) 223-1100

**Attorneys for Credit Union Intervenors**

## CERTIFICATE OF CONFERRAL

I certify that, on August 8–10, 2023, I conferred with counsel for Plaintiffs, counsel for Defendants, and counsel for Community Bank Intervenors, and they advised they do not oppose Credit Union Intervenors' motion to intervene.

*/s/ Christopher O. Murray*
Christopher O. Murray
