IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| TEXAS BANKERS ASSOCIATION; RIO BANK, MCALLEN, TEXAS; AMERICAN BANKERS ASSOCIATION, §§§§§§§§ Plaintiffs, § v. § § CONSUMER FINANCIAL § PROTECTION BUREAU and ROHIT § CHOPRA, in his official capacity as § Director of the Consumer Financial § Protection Bureau, §§§ Defendants. § | Case No: 7:23-cv-00144 |

**INTERVENORS' EMERGENCY MOTION FOR
<u>PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT</u>**

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

EVIDENCE......................................................................................................................................1

FACTS .............................................................................................................................................2

ARGUMENT AND AUTHORITIES..............................................................................................4

    I.       Intervenors are likely to succeed on the merits of their constitutional claim. .................4

    II.      Intervenors will be irreparably harmed without an injunction. .......................................5

    III.     The balance of the equities favors an injunction, and granting an injunction serves the public interest....................................................................................................................10

    IV.     Intervenors respectfully suggest that, even if nationwide relief was not appropriate previously, it is now..........................................................................................................11

    V.      Intervenors request that the Court consider this motion on an expedited basis.............12

CONCLUSION..............................................................................................................................13

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                          Page(s)

*BST Holdings, LLC v. OSHA*,
   17 F.4th 604 (5th Cir. 2021) ...................................................................................................10

*Community Fin. Servs. Ass'n of Am., Ltd. v. Consumer Financial Protection
   Bureau*, 51 F.4th 616 (5th Cir. 2022)..........................................................................2, 4, 5, 10

*Digital Generation, Inc. v. Boring*,
   869 F. Supp. 2d 761 (N.D. Tex. 2012) .......................................................................................9

*La. v. Becerra*,
   20 F.4th 260 (5th Cir. 2021) .........................................................................................4, 11, 12

*La. v. Biden*,
   55 F.4th 1017 (5th Cir. 2022) ....................................................................................................8

*Millennium Restaurants Group, Inc. v. City of Dallas*,
   181 F.Supp.2d 659 (N.D. Tex. 2001) .......................................................................................10

*Moore v. Brown*,
   868 F.3d 398 (5th Cir. 2017) .....................................................................................................4

*Opulent Life Church v. City of Holly Springs, Miss.*,
   697 F.3d 279 (5th Cir. 2012) ...................................................................................................10

*Restaurant Law Ctr. v. United States Dep't of Lab.*,
   66 F.4th 593 (5th Cir. 2023) ...................................................................................................7, 8

*Tex. v. EPA*,
   829 F.3d 405 (5th Cir. 2016) ...............................................................................................7, 8, 9

*Tex. v. United States*,
   809 F.3d 134 (5th Cir. 2015) ...................................................................................................10

*Thunder Basin Coal Co. v. Reich*,
   510 U.S. 200 (1994)....................................................................................................................7

*Wages & White Lion Invs., LLC v. FDA*,
   16 F.4th 1130 (5th Cir. 2021) ....................................................................................................7

*Winter v. Nat. Res. Def. Council*,
   555 U.S. 7 (2008)........................................................................................................................4

**Statutes**

12 U.S.C. § 5497(a) ...........................................................................................................2

12 U.S.C. § 5511(a) ...........................................................................................................2

15 U.S.C. § 691c-2(a) .......................................................................................................11

15 U.S.C. § 691c-2(g)(2) ..................................................................................................12

**Other Authorities**

*Small Business Lending Under the Equal Credit Opportunity Act (Regulation)*, 88 Fed. Reg. 35150 (May 31, 2023) (to be codified at 12 C.F.R. §§ 1002.102 - 1002.114 (Aug. 29, 2023) ................................................................................ *passim*

Pursuant to Federal Rule of Civil Procedure 65, Intervenors Independent Community Bankers of America ("ICBA"), Independent Bankers Association of Texas ("IBAT"), and Texas First Bank ("Texas First") (collectively, "Intervenors") file this Motion for Preliminary Injunction and Brief in Support, and they respectfully would show this Court as follows:

## INTRODUCTION

On July 31, 2023, the Court entered an Order Granting In-Part and Denying In-Part Plaintiffs' Motion for Preliminary Injunction (Dkt. 25) (the "July Preliminary Injunction") prohibiting Defendants (collectively, "CFPB") from enforcing the Final Rule issued on March 30, 2023, *Small Business Lending Under the Equal Credit Opportunity Act (Regulation)*, 88 Fed. Reg. 35150 (May 31, 2023) (to be codified at 12 C.F.R. §§ 1002.102 – 1002.114 (Aug. 29, 2023)) (the "Final Rule"), against Plaintiffs American Bankers Association ("ABA"), Texas Bankers Association ("TBA"), their members, and Rio Bank, McAllen, Texas ("Rio Bank") (collectively, "Plaintiffs"). The Final Rule amended Regulation B governing small business lending under the Equal Credit Opportunity Act ("ECOA"), purporting to implement Congress' changes made 13 years earlier to § 1071 of the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act").[1]  88 Fed. Reg. at 35,150.  Texas First and many of ICBA's and IBAT's members are not members of ABA or TBA and therefore are not protected by the July Preliminary Injunction.  Accordingly, Intervenors file the present motion seeking a preliminary injunction on many of the same grounds asserted previously by Plaintiffs.

## EVIDENCE

In support of this motion, Plaintiffs rely on and incorporate the Declaration of Anne M. Balcer (exhibit "1"), Declaration of Jessica Tsai (exhibit "2") and Declaration of Christopher L.

---

[1] Pub. L. 111-203, tit. X, Section 1071, 124 Stat. 1376, 2056 (2010) (codified at 15 U.S.C. § 1691c-2)).

1

Williston, VI (exhibit "3"), the declarations attached to Plaintiffs' Amended Complaint (Dkt. 12), and supplemental declarations filed on July 25, 2023 (Dkt. 23).

**FACTS**

1. In 2010, Congress passed the Dodd-Frank Act creating the CFPB and charging it with "'implement[ing]' and 'enforc[ing]' consumer protection laws to 'ensur[e] that all consumers have access to markets for consumer financial products and services," that "are fair, transparent, and competitive." 12 U.S.C. § 5511(a); *Community Fin. Servs. Ass'n of Am., Ltd. v. Consumer Financial Protection Bureau,* 51 F.4th 616, 623 (5th Cir. 2022), *cert. granted*, 215 L. Ed. 2d 104, 143 S. Ct. 978 (2023). Instead of periodic Congressional appropriations of money, Congress established a funding structure pursuant to which CFPB's funding comes from the receipts of the Federal Reserve System up to a cap of 12 percent of the total operating expenses of the Federal Reserve System, subject to adjustment for inflation. 12 U.S.C. § 5497(a). As the Fifth Circuit explained in *Community Financial*, "Congress's decision to abdicate its appropriations power under the Constitution, i.e., to cede its power of the purse to the [CFPB], violates the Constitution's structural separation of powers." 51 F.4th at 623. As a result, the Fifth Circuit held that the rules promulgated by CFPB are invalid and should be vacated or enjoined where they "inflict[] harm." *Id.* at 643; *see also* July Preliminary Injunction at 12.

2. On March 30, 2023, the CFPB published the Final Rule. The Final Rule transforms 3 pages of text in the Dodd-Frank Act into more than 880 pages of regulations and commentary and requires "covered financial institutions"[2] to develop and implement systems and compliance

---

[2] The Final Rule applies to any financial institution that "originated at least 100 covered credit transactions for small businesses in each of the two preceding calendar years." Final Rule, 88 Fed. Reg. at 35,529 (to be codified at 12 C.F.R. § 1002.105 (Aug. 29, 2023)). A "covered credit transaction" is broadly defined to include "an extension of business credit" with six (6), narrow exceptions. *Id.* (to be codified at 12 C.F.R. § 1002.104 (Aug. 29, 2023)).

mechanisms to compile, report, and maintain for at least three (3) years more than eighty (80) different "data points" for each application for a covered credit transaction.[3]  88 Fed. Reg. 35,530 – 35,532 (to be codified at 12 C.F.R. §§ 1002.107, 1002.109, and 1002.111 (Aug. 29, 2023)); *see also* the 40 page "Small Business Lending Rule: Data Points Chart," https://files.consumerfinance.gov./f/documents/cfpb_small-business-lending-data-points-chart.pdf.

3. The Final Rule also requires covered financial institutions to create a "firewall" so that employees and officers involved in making credit decisions shall not have access to applicants' responses to the financial institution's inquiries made pursuant to the Final Rule regarding whether the applicant is a minority-owned business, women-owned business, or any LGTBQI+-owned business and regarding the ethnicity, race, and sex of the applicant's principal owners.  88 Fed. Reg. at 35,531 (to be codified at 12 C.F.R. § 1002.108 (Aug. 29, 2023)).  Finally, the Final Rule provides for the punishment of financial institutions that violate the rule with administrative sanctions and civil liability.  88 Fed. Reg. at 35,532 (to be codified at 12 C.F.R. § 1002.112 (Aug. 29, 2023)).

4. The Final Rule becomes effective August 29, 2023 and establishes rolling compliance deadlines depending on the number of covered credit transactions made by financial institutions.  88 Fed. Reg. at 35,533 (to be codified at 12 C.F.R. § 1002.114 (Aug. 29, 2023)).  Financial institutions that originate at least 2,500 covered credit transactions must comply by October 1, 2024.  *Id.*  Institutions that originate between 500 and 2,500 covered credit transactions

---

[3] The CFPB's Filing Instructions Guide (for small business lending data collected in 2024), which sets forth all the fields and all the possible codes a bank will have to use to collect and submit data and to validate the data, is 124 pages long.  https://www.consumerfinance.gov/data-research/small-business-lending/filing-instructions-guide/2024-guide/#1.

must comply by April 1, 2025. *Id.* And, institutions that originate at least 100, but less than 500, covered credit transactions must comply by January 1, 2026. *Id.*

5. Texas First is a member of ICBA and IBAT, but, like many of ICBA's and IBAT's members, is not a member of ABA or TBA. Exhibit "2," ¶ 3. Further, Texas First, like most of ICBA's and IBAT's members, is governed by the Rule. *Id.* ¶ 4. Texas First must comply with the Final Rule beginning April 1, 2025. Exhibit "1," ¶ 8.

6. If not enjoined, Texas First and many of ICBA's and IBAT's members will be irreparably harmed in that they will incur non-recoverable costs and be subject to the other burdens described below and as established by the evidence submitted with this motion. *See generally* exhibits "1," "2," and "3."

## ARGUMENT AND AUTHORITIES

To obtain a preliminary injunction, a movant must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) the threatened injury outweighs any harm that will result if the injunction does not issue; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Moore v. Brown*, 868 F.3d 398, 402–03 (5th Cir. 2017). "Likelihood of success and irreparable injury to the movant are the most significant factors." *La. v. Becerra*, 20 F.4th 260, 262 (5th Cir. 2021). Intervenors meet each of the four elements.

**I.     Intervenors are likely to succeed on the merits of their constitutional claim.**

In granting Plaintiffs' request for a preliminary injunction, this Court correctly recognized that the constitutional claim in this case is governed by binding Fifth Circuit precedent. July Preliminary Injunction at 12. In *Community Financial Services*, the Fifth Circuit held that CFPB's funding structure violates the Appropriations Clause of the Constitution. 51 F.4th at 642. CFPB's 2017 Payday Lending Rule, the appeals court further held, was invalid and should be vacated

because "without its unconstitutional funding, [CFPB] lacked any other means to promulgate the rule." *Id.* at 643. Applying that holding to the Final Rule at issue here, this Court concluded Plaintiffs were likely to succeed on the merits of their claims because, like the 2017 Payday Lending Rule, the Final Rule was promulgated using funds obtained through CFPB's unconstitutional funding scheme. July Preliminary Injunction at 12. Accordingly, for the same reason, Intervenors are likely to succeed on the merits of their claims.[4]

## II. Intervenors will be irreparably harmed without an injunction.

Intervenors and ICBA's and IBAT's members, many of whom are not protected by the Court's July Preliminary Injunction, will be irreparably harmed without an injunction because they will incur significant compliance costs that cannot be recouped. Texas First and many of ICBA's and IBAT's members are indisputably subject to the rule. Exhibit "1," ¶ 4; exhibit "2," ¶ 4; and exhibit "3," ¶ 6. So, absent immediate relief, ICBA's and IBAT's members, including Texas First, will be forced to spend significant sums preparing to comply with an unlawful Final Rule.

The evidence submitted with this motion details the costs of complying with the Final Rule. Exhibits "1," ¶ 11, "2," ¶¶ 5-7, and "3," ¶¶ 5-7. Along with Texas First, the associations' members in Texas and across the country are immediately beginning to undertake substantial expenses in preparation for implementation of the Final Rule. *Id.* These compliance activities include selecting new computer software systems (that are yet to be created to address the requirements of the Final Rule), training employees, and hiring outside managers for the implementation of the information collection, report preparation, intra-company segmentation procedures, and overall privacy protection. *Id.*

---

[4] Intervenors also raise claims that the Final Rule exceeds CFPB's statutory authority and is arbitrary and capricious under the APA. Intervenors are not relying on those claims here because the unconstitutional funding claim is more than sufficient at this stage, but Intervenors intend to fully brief all of their claims at the appropriate time.

Further, the Final Rule will require small and rural banks with limited staff and resources, including ICBA's and IBAT's members, to devote more resources to gathering, reporting, storing, and firewalling data they collect as required by the Final Rule. *Id.* Those banks must begin preparing to comply with the Final Rule immediately because of its complexity, the uncertainty surrounding exactly what they must do to comply with the rule, including the possibility of hiring additional employees and/or retaining outside professionals, and the possibility of sanctions and civil liability if they fail to comply. *Id.* Also, federal and state financial regulatory authorities likely will require community banks to show their progress toward compliance with the Final Rule during examinations and other agency communications. Exhibit "1," ¶ 10.

To date, Texas First estimates that it has incurred almost $30,000 preparing to comply with the Final Rule, including costs for about 300 hours of employee, management, and senior management time. Exhibit "2," ¶ 5. Texas First also estimates that, in 2026, it will incur in excess of $180,000 in complying with the Final Rule, not including the potential costs of purchasing or licensing systems and software necessary for compliance. Id. ¶ 6. And, Texas First anticipates that it may be required to hire at least one additional employee to oversee compliance with the Final Rule. *Id.*

The evidence submitted with this motion also establishes irreparable harm to ICBA's other members. Exhibit "1," ¶ 11; see also exhibit "3," ¶¶ 6-7. More specifically, the evidence establishes that community banks of all sizes will incur immediate and substantial costs, including one-time implementation costs, recurring expenses in complying with the Final Rule, and the costs of hiring additional staff. *Id.* The evidence further shows that the estimated costs are far in excess of CFPB's estimates. Exhibit "1," ¶ 11.

6

In previously granting Plaintiffs an injunction, this Court properly recognized that those types of compliance costs are likely unrecoverable. July Temporary Injunction at 13–14. As the Fifth Circuit has held, "a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." *Tex. v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016) (emphasis in original) (quoting *Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 220-21 (1994) (Scalia, J., concurring in part and in the judgment)); *see also Restaurant Law Ctr. v. United States Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023) ("[T]he nonrecoverable costs of complying with a putatively invalid regulation typically constitute irreparable harm."). The reason is that "federal agencies generally enjoy sovereign immunity for any monetary damages." *Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021).

Further, this Court concluded that substantially similar compliance costs asserted by the ABA, TBA, and Rio Bank are more than de minimis and constitute irreparable harm. July Preliminary Injunction at 14. And, because ICBA's and IBAT's members are primarily small community banks with fewer employees, assets, and deposits compared to ABA's and TBA's member banks, the costs of complying with the Final Rule will have an even more significant impact on many of ICBA's and IBAT's members than on ABA's and TBA's members. Exhibit "1," ¶ 5; exhibit "3," ¶ 8.[5] For example, small banks are unlikely to have the IT infrastructure needed to automate the data collection and the cost of acquiring technology for this purpose will

---

[5] *See also American Financial Services Association, Comment letter on Proposed Rule on Small Business Lending Data Collection Under the Equal Credit Opportunity Act, Docket No. CFPB-2021-0015*, at 22 (Jan. 6, 2022), available at https://afsaonline.org/wp-content/uploads/2022/01/AFSA-Comment-Letter-on-DFA-Sec-1071-Jan-6-2022.pdf ("Small entities will need to devote a relatively larger proportion of their resources to develop the processes and systems necessary to collect and report § 1071 information when compared with larger companies who have more resources at their disposal.").

be more of a burden on small banks.⁶ The Conference of State Bank Supervisors recognized these challenges in comments on the proposed rule (86 Fed. Reg. 56,356, 2021 WL 4636032 (Oct. 8, 2021)), which in relevant part is materially the same as the Final Rule, expressing "concern[] that, as proposed, the small business data collection and reporting requirements will disproportionately impact community banks."⁷

CFPB itself estimates the initial compliance costs for depository institutions will be between $147,000,000 and $159,000,000. 88 Fed. Reg. at 35,509. Even assuming CFPB's cost estimates are less than those estimated by Intervenors, that does not matter for at least two reasons. First, "[Fifth Circuit] precedent requires only that alleged compliance costs be 'more than de minimis.'" *Restaurant Law Center*, 66 F.4th at 600 (quoting *La. v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022)). That is because "it is not so much the magnitude but the irreparability that counts." *Tex.*, 829 F.3d at 433–34. So it is enough that the CFPB conceded that there would be compliance costs that would be significant enough to warrant passing them on to consumers, much less de minimis costs. 88 Fed. Reg. at 35,521. Second, the CFPB admitted that its analysis ignores the jump from collecting thirteen data points to collecting eighty-one data points. July Preliminary Injunction at 12; 88 Fed. Reg. at 35,509. Thus, the analysis significantly undercounts the true compliance costs.

Although Texas First and other ICBA and IBAT members already are incurring compliance costs, the Fifth Circuit has accepted projected compliance costs for establishing

---

⁶ Bailey Allen et al., BankersDigest, *A Comment on Implementing Section 1071 of the Dodd-Frank Act* (Dec. 16, 2021), available at https://www.bankersdigest.com/a-comment-on-implementing-section-1071-of-the-dodd-frank-act/.

⁷ Conference of State Bank Supervisors, *Comment Letter on Small Business Lending Data Collection Under the Equal Credit Opportunity Act (Regulation B)* (Jan. 6, 2022), available at https://www.csbs.org/policy/statements-comments/small-business-lending-data-collection-under-equal-credit-opportunity.

8

irreparable harm. *Tex.*, 829 F.3d at 433–34 ("compliance with the Final Rule [at issue] would impose $2 billion in costs on power companies, businesses, and consumers" demonstrates one irreparable injury, as "[n]o mechanisms . . . exists for the power companies to recover the compliance costs they will incur if the Final Rule is invalidated."); *see also* July Preliminary Injunction at 14. And, in its July Preliminary Injunction, the Court rejected CFPB's argument that injunctive relief was not necessary to prevent irreparable harm because, according to CFPB, covered financial institutions need not incur those costs now. July Preliminary Injunction at 14.

Although unrecoverable compliance costs are sufficient to establish irreparable harm, ICBA, IBAT, and their members, including Texas First, will be irreparably harmed in other ways. First, absent immediate relief, ICBA's and IBAT's members, including Texas First, will be forced to devote more resources to government reporting rather than lending in the community. See generally exhibits "1" – "3." The result will be lost business for community banks and, more importantly, lost borrowing opportunities for the very women-owned, minority-owned, and small businesses that Congress set out to help in the Dodd-Frank Act.[8] Second, absent an injunction protecting Intervenors and ICBA's and IBAT's members who are not members of ABA or TBA will suffer competitive harm from being subject to an unlawful rule, and incurring additional costs that they must pass on to potential borrowers, to which ABA's and TBA's members are not subject as a result of this Court's July Preliminary Injunction, potentially causing Intervenors and their members to lose customers. Courts recognize that lost customers and goodwill can constitute irreparable harm. *See Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 778 (N.D. Tex.

---

[8] According to the Federal Reserve, almost 70 percent of small businesses seeking loans applied to a bank for credit. *Availability of Credit to Small Businesses,* Federal Reserve Board, p. 36 (Oct. 2022), https://www.federalreserve.gov/publications/2022-october-availability-of-credit-to-small-businesses.htm.

2012); *Millennium Restaurants Group, Inc. v. City of Dallas*, 181 F.Supp.2d 659, 666 (N.D. Tex. 2001).

### III. The balance of the equities favors an injunction, and granting an injunction serves the public interest.

The third and fourth prongs of the preliminary injunction analysis may be considered together because they "merge when the Government is the opposing party." *Tex. v. United States*, 809 F.3d 134, 187 n. 204 (5th Cir. 2015). The Fifth Circuit has recognized that once irreparable harm is shown, the government actor "need[s] to present *powerful* evidence of harm to its interests to prevent [the moving party] from meeting [the third prong of the preliminary injunction inquiry]." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 297 (5th Cir. 2012) (emphasis added). These merged prongs favor Intervenors.

CFPB and the public have no interest in enforcing an invalid rule. *See BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) ("Any interest OSHA may claim in enforcing an unlawful (and likely unconstitutional) [regulation] is illegitimate."). In fact, the public interest favors staying the Final Rule to "maintain[] our constitutional structure." *BST Holdings*, 17 F.4th at 618. Moreover, in response to Plaintiffs' Motion for Preliminary Injunction, CFPB did not offer any evidence, much less powerful evidence, of harm to its interest from an injunction in place during this litigation or, at minimum, until the Supreme Court decides *Community Financial Services* and definitively resolves questions regarding the constitutionality of the CFPB's funding structure.[9] July Preliminary Injunction at 15. Nor could it, given that it waited approximately 13 years after the enactment of the Dodd-Frank Act to promulgate the Final Rule.

---

[9] Despite ICBA's requests, CFPB has refused to delay the effective date of the Final Rule and/or the compliance deadlines until the Supreme Court decides *Community Financial.* Exhibit "1," ¶ 9.

10

**IV.     Intervenors respectfully suggest that, even if nationwide relief was not appropriate previously, it is now.**

Intervenors recognize that this Court previously denied Plaintiffs' request for nationwide injunctive relief. July Preliminary Injunction at 16. At the same time, this Court also acknowledged that it had authority to grant nationwide relief in certain circumstances. *Id.* (citing *Becerra*, 20 F.4th at 263). Intervenors respectfully suggest that the circumstances warranting nationwide relief under *Louisiana v. Becerra* are in fact satisfied here, particularly now that Intervenors have joined the case.

First, the Fifth Circuit recognized in *Becerra* that a legally grounded "uniformity principle" could justify a nationwide injunction. 20 F.4th at 264. The Dodd-Frank Act provides that principle, given that the purpose of the relevant provision "is to facilitate enforcement of fair lending laws and enable communities, governmental entities, and creditors to identify business and community development needs and opportunities of women-owned, minority-owned, and small businesses." 15 U.S.C. § 691c-2(a). A key underpinning of the Dodd-Frank Act, the Final Rule, and fair lending laws generally is the equal application of laws to all credit applicants to avoid disparate outcomes. This assumes the collection of the same required information from similarly situated banks and covered financial institutions, and in this case the same relief from implementation of these laws. That ensures applicants are getting the same experience from bank to bank and that lending needs are being assessed consistently by banks across the country, and in the context of the Final Rule, all covered financial institutions. In other words, the Dodd-Frank Act is premised on collecting data that promotes equal credit opportunities for all applicants across all communities.

What is more, the provision expressly presumes that it will apply uniformly, unless the CFPB provides a reasonable explanation for exempting certain individual or classes of financial

11

institutions. 15 U.S.C. § 691c-2(g)(2). By imposing a more limited injunction, this Court has actually introduced such exemptions. The current injunction for Plaintiffs and their members only has the effect of disproportionately favoring larger financial institutions over smaller ones based on their trade association membership. And even were the injunction extended to Plaintiff-Intervenors and their members, it would still arbitrarily exclude those financial institutions that are not members of the organizations currently in this case.

Second, the court in *Becerra* focused on the fact that less than one-third of the states were trying to stop a rule from going into effect in all states, including states that had accepted or even embraced the rule. 20 F.4th at 263–64. The situation here is now quite different. Before the recent intervention motions, it could have been argued that Plaintiffs did not represent the whole of the regulated industry. But the recent interventions make clear that, unlike in *Becerra*, all of the regulated industry believes the rule was invalidly promulgated. Between Plaintiffs and Intervenors, nearly all of the covered institutions in the country are now represented in this case. This Court need not, and should not, require *every* such institution to intervene or bring suit to conclude that the circumstances here differ sharply from those in *Becerra* and that a nationwide injunction is therefore appropriate.

## V.     Intervenors request that the Court consider this motion on an expedited basis.

As described above, ICBA, IBAT, their members, and Texas First are suffering ongoing, irreparable harm. And, the foregoing motion presents only issues that the Court, after full briefing, has considered and ruled upon. Accordingly, Intervenors respectfully request that the Court order a condensed briefing schedule as the Court deems appropriate.

## CONCLUSION

For those reasons, Intervenors respectfully request that the Court: (a) grant this motion; (b) enter a preliminary injunction prohibiting CFPB from enforcing the Final Rule nationwide or, alternatively, as to Intervenors and ICBA's and IBAT's members; and (c) grant them such other and further relief to which they may show themselves justly entitled.

Respectfully submitted,

*/s/ James W. Bowen*
James W. Bowen
*attorney-in-charge*
jbowen@HuntonAK.com
Texas Bar No. 02723305
S.D. Texas Bar No. 16337
Jennifer L. Clyde
jclyde@HuntonAK.com
Texas Bar. No. 24101032
S.D. Texas Bar No. 3644312
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: (214) 979-3000
Facsimile: (214) 880-0011

Elbert Lin
elin@HuntonAK.com
VA Bar No. 92740
*admitted pro hac vice*
**HUNTON ANDREWS KURTH LLP**
951 East Byrd Street, East Tower
Richmond, VA 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218

Erica Peterson
epeterson@HuntonAK.com
D.C. Bar No. 1686244
*admitted pro hac vice*
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 955-1932
Facsimile: (202) 778-2201

**ATTORNEYS FOR INTERVENORS**

## CERTIFICATE OF CONFERENCE

I hereby certify that, on August 15, 2023, I conferred with counsel for Plaintiffs, Defendants, and Intervenors Rally Credit Union, Credit Union National Association, and Cornerstone Credit Union League. Defendants' counsel advised that his clients oppose the motion. Counsel for the other parties advised that their clients do not oppose the Motion.

/s/ James W. Bowen
James W. Bowen
Counsel for Intervenors