IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| TEXAS BANKERS ASSOCIATION; RIO BANK, MCALLEN, TEXAS; and AMERICAN BANKERS ASSOCIATION,<br><br>Plaintiffs,<br><br>CREDIT UNION NATIONAL ASSOCIATION, CORNERSTONE CREDIT UNION LEAGUE, RALLY CREDIT UNION, TEXAS FIRST BANK, INDEPENDENT BANKERS ASSOCIATION OF TEXAS, and INDEPENDENT COMMUNITY BANKERS OF AMERICA,<br><br>Intervenor-Plaintiffs,<br><br>v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU and ROHIT CHOPRA, in his official capacity aa Director of the Consumer Financial Protection Bureau,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § §    Case No: 7:23-cv-00144 |

**CREDIT UNION INTERVENORS' JOINDER TO
EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

Intervenor-Plaintiffs Credit Union National Association (CUNA), Cornerstone Credit Union League (Cornerstone), and Rally Credit Union (Rally) (collectively, Credit Union Intervenors) join Intervenor-Plaintiffs Independent Community Bankers of America (ICBA), Independent Bankers Association of Texas (IBAT), and Texas First Bank (Texas First) (collectively, Community Bank Intervenors) emergency motion for preliminary injunction under Federal Rule of Civil Procedure 65, and state:

## STATEMENT OF JOINDER

This case concerns the Consumer Financial Protection Bureau's (CFPB or Bureau) Final Rule under section 1071 (Section 1071) of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (Dodd-Frank), which in part amended the Equal Credit Opportunity Act of 1974 (ECOA). *See* Small Business Lending Under the Equal Credit Opportunity Act (Regulation B), 88 Fed. Reg. 35, 150 (May 31, 2023) (Final Rule). The Bureau issued the Final Rule *after* the Fifth Circuit held that the agency's funding scheme violates the Constitution and vacated a different rule promulgated by the agency. Indeed, the Final Rule came *after* the U.S. Supreme Court granted review in that case, *CFPB v. Community Financial Services Association of America, Ltd.*, No. 22-448 (U.S.), which presents a first-impression separation-of-powers question. The effective date of the Final Rule is August 29, 2023.

Soon after the Bureau promulgated the Final Rule, Plaintiffs sued alleging, in part, that the Rule is invalid and unenforceable because of the constitutional defects in the Bureau's funding scheme. (Compl. 15, Doc. 1 (Count I).) Plaintiffs sought "both a preliminary and permanent injunction setting aside and holding unlawful the CFPB's ECOA Final Rule." (*Id.* at 20.) Subsequently, Plaintiffs "move[d] for a nationwide preliminary injunction to prevent [the Bureau] from enforcing the rule." (Order 8, Doc. 25.)

On July 31, 2023, the Court granted Plaintiffs' motion for preliminary injunction but narrowed the scope of the injunction to only Plaintiffs and their member banks. Specifically, the Court ordered that the Bureau is "preliminarily enjoined from implementing and enforcing the Final Rule, 88 Fed. Reg. 35,150 (May 31, 2023), against Plaintiffs and their members pending

the Supreme Court's reversal of [*CFSA*], a trial on the merits of this action, or until further order of this Court." (*Id.* at 16.) The Court clarified that the Bureau "shall immediately cease all implementation or enforcement of the Final Rule against Plaintiffs and their members" and "that all deadlines for compliance with the requirements of the Final Rule are stayed for Plaintiffs and their members until after the Supreme Court's final decision in [the *CFSA* case]." (*Id.* at 16–17.)

As a result of the narrowed preliminary injunction, both Credit Union Intervenors and Community Bank Intervenors moved to intervene in this case to seek the same relief achieved by Plaintiffs. The Court granted Credit Union Intervenors' and Community Bank Intervenors' motions to intervene on August 14 and 15, 2023, respectively. (Order, Docs. 34 and 38.) On August 15, 2023, Community Bank Intervenors moved for a preliminary injunction that is similar to the injunction requested by Plaintiffs in their motion for preliminary injunction (Doc. 13), and granted by the Court (Doc. 25).

To avoid duplicating efforts and unnecessarily compounding these proceedings, Credit Union Intervenors join, in full, Community Bank Intervenors' motion for preliminary injunction. In addition to their joinder, Credit Union Intervenors offer the declarations of Dana Sisk (on behalf of Rally and attached as **Exhibit A**), Jonathan Jared Ihrig (on behalf of CUNA and attached as **Exhibit B**), and Jim Phelps (on behalf of Cornerstone and attached as **Exhibit C**) as evidence of the irreparable harm Rally and CUNA's and Cornerstone's members will suffer absent a preliminary injunction.

### CREDIT UNION INTERVENORS IRREPARABLE HARM

Like Plaintiffs and Community Bank Intervenors, Rally and CUNA's and Cornerstone's members face a substantial threat of irreparable harm from the new requirements imposed by the Final Rule. Absent immediate relief—like the injunctive relief Plaintiffs achieved—CUNA's and Cornerstone's members (including Rally) stand to incur, individually, hundreds of thousands of dollars in costs to prepare to comply with the Final Rule. The declarations in support of this joinder detail the types of upfront costs credit unions are incurring now in preparing to comply with the onerous data collection and reporting requirement imposed by the Final Rule. Rally, for

instance, has already incurred $15,000 in operating costs and has dedicated 50 hours of employee time to preparation efforts. (Sisk Decl., Ex. A, ¶ 9.) It is also in the process of implementing new software at the cost of $250,000, with an annual maintenance expense of $60,000. (*Id.* ¶ 8.) These are the precise sort of "unrecoverable compliance costs" the Court and the Fifth Circuit have held satisfy the irreparable-harm factor. (Order 13–14, Doc. 25 (collecting cases).)

Nor should the new compliance costs be a surprise to the Bureau—because the agency predicted the increased burden. *See* 88 Fed. Reg. 35,441 ("Regarding the concern that compliance costs will directly increase lending costs, the Bureau acknowledges in its impacts analysis in part IX below that this may take place … ."); *id.* at 35,507 (estimating one-time upfront compliance costs to be between $44,800 and $96,400 per covered financial institution). Indeed, in the Final Rule, "[t]he Bureau estimate[d] that the overall market impact of one-time costs for depository institutions" for upfront investments to comply with the requirements in the Final Rule "will be between $147,000,000 and $159,000,000." *Id.* at 35,509. So, it is beyond dispute that credit unions will—and have—incurred upfront compliance costs and that these costs are unrecoverable. (*See* Order 13, 14, Doc. 25.) Further, "complying with a [rule] later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016) (emphasis in original).

CUNA's and Cornerstone's credit union members' experience are consistent with Rally's. (*See generally* Ihrig Decl., Ex. B; Phelps Decl., Ex. C.) The types of costs already incurred, and to be incurred, by credit unions include costs for new infrastructure and technology to capture, aggregate, and report new data points, which is an extensive overhaul of the current application processes; additional FTE expense to meet the new minimum compliance requirements; segregation technology to "firewall" the information from those in the credit-decision process; the cost to train employees on new software, technology, and reporting requirements; the ongoing costs to regularly train employees on the compliance requirements in the Final Rule; and the cost to hire scores of vendors to advise on the Final Rule and its implementation. (Ihrig Decl., Ex. B, ¶ 9.) It's for this reason that CUNA has dedicated hundreds

of hours of staff time, and has engaged a third-party consultant, to advise CUNA, its state leagues, and its members on the burdens the Final Rule will impose on operations. (*Id.*)

This irreparable harm, along with the harm outlined by Community Bank Intervenors (Mot. 5–10, Doc. 44), provide more than enough evidence to show the irreparable-harm factor tips decidedly in Credit Union Intervenors' favor.

## CONCLUSION

Credit Union Intervenors respectfully request that the Court: (1) accept their joinder and grant the motion for preliminary injunction; (2) enter a preliminary injunction prohibiting CFPB from enforcing the Final Rule nationwide or, alternatively, as to Credit Union Intervenors and CUNA's and Cornerstone's members; and (3) grant them such other and further relief to which they may show themselves justly entitled.

Dated: August 16, 2023.                                   Respectfully submitted,

*/s/ Christopher O. Murray*
Christopher O. Murray
Julian R. Ellis, Jr. (admitted *pro hac vice*)
BROWNSTEIN HYATT
  FARBER SCHRECK, LLP
675 15th Street, Suite 2900
Denver, Colorado 80202
Email: cmurray@bhfs.com
           jellis@bhfs.com
Ph: (303) 223-1100

***Attorneys for Credit Union Intervenors***

## CERTIFICATE OF CONFERRAL

I certify that, on August 15–16, 2023, I conferred with counsel for Plaintiffs, counsel for Defendants, and counsel for Community Bank Intervenors. Defendants' counsel advised that Defendants oppose the emergency motion for preliminary injunction. Counsel for the other parties advised that they do not oppose the motion.

*/s/ Christopher O. Murray*
Christopher O. Murray
