# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| TEXAS BANKERS ASSOCIATION; RIO BANK, MCALLEN, TEXAS; and AMERICAN BANKERS ASSOCIATION, | § § § § § § § | |
| Plaintiffs, | § § | |
| CREDIT UNION NATIONAL ASSOCIATION, CORNERSTONE CREDIT UNION LEAGUE, RALLY CREDIT UNION, TEXAS FIRST BANK, INDEPENDENT BANKERS ASSOCIATION OF TEXAS, and INDEPENDENT COMMUNITY BANKERS OF AMERICA, | § § § § § § § § § | Case No: 7:23-cv-00144 |
| Intervenor-Plaintiffs, | § § § | |
| v. | § § § | |
| CONSUMER FINANCIAL PROTECTION BUREAU and ROHIT CHOPRA, in his official capacity aa Director of the Consumer Financial Protection Bureau, | § § § § § § § | |
| Defendants. | § | |

**JIM PHELPS'S DECLARATION IN SUPPORT OF CREDIT UNION INTERVENORS' JOINDER TO EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

I, Jim Phelps, declare:

1.      I am the Executive Vice President and Chief Advocacy Officer at Cornerstone Credit Union League (Cornerstone). The statements in this declaration are based on my own personal knowledge and are true and correct. If called to testify to their accuracy, I could and would do so.

2.      I have served as the Executive Vice President and Chief Advocacy Officer at Cornerstone since 2020. I have served in various other capacities at Cornerstone over the last 20 years. As the CAO, I direct and oversee the advocacy programs for Cornerstone and serve as advocacy advisor to the Cornerstone Board of Directors to provide strategy and direction for legislative and regulatory advocacy.

3.      Cornerstone is a non-profit corporation organized in accordance with the laws of Texas. Cornerstone is the largest regional credit union trade association in the United States, serving credit unions in Arkansas, Kansas, Missouri, Oklahoma, and Texas.  Cornerstone provides resources for credit unions and credit union staff including federal and state policy advocacy, compliance assistance and research, and statistics affecting the markets its member credit unions participate in.

4.      Cornerstone has 598 affiliated credit unions in its five-state service area with $168 billion in total assets and $117 billion in outstanding loans. The median asset size of Cornerstone's affiliate credit unions is $38.5 million with a median full time employee count of nine. These affiliate credit unions have a total of $7.1 billion in business and Small Business Administration (SBA) loans.

5.      Cornerstone's credit union members are neither members of the American Bankers Association (ABA) nor Texas Bankers Association (TBA). In fact, the ABA's and TBA's membership limitations bar credit unions from joining the organizations.

6.      I have reviewed the declaration of Dana Sisk of Rally Credit Union (Sisk Declaration) submitted in support of Credit Union Intervenors' Joinder to Emergency Motion for Preliminary Injunction, and I agree with the statements made in that declaration. Rally is a

member of Cornerstone, and I understand it will be required to comply with the Final Rule and has already begun incurring costs in preparing to comply with the Final Rule.

7.      Based on my personal knowledge of Cornerstone's members, many of Cornerstone's other members made a sufficient number of qualifying small-business loans in 2021 and 2022, respectively, and likely will make a sufficient number of those loans in 2023, such that they will be required to comply with the Final Rule. In complying with the Final Rule, the costs being incurred, and to be incurred, by Cornerstone's other members will be similar to those of Rally as described in the Sisk Declaration. I understand that many of Cornerstone's members have already begun incurring costs in preparing to comply with the Final Rule.

8.      Many of Cornerstone's members are also members of CUNA. For this reason, I have reviewed the declaration of Jaren Ihrig (Ihrig Declaration) submitted in support of Credit Union Intervenors' Joinder to Emergency Motion for Preliminary Injunction. I agree with the statements in that declaration. In complying with the Final Rule, the costs being incurred and to be incurred by Cornerstone's members are similar to those described in the Ihrig Declaration.

9.      I also have reviewed the declarations and supplemental declarations filed previously in this case by Plaintiffs. Because Cornerstone's members primarily are smaller credit unions with fewer employees, assets, and deposits compared to ABA's and TBA's member banks, the costs and burdens of complying with Final Rule generally will have a more significant impact on Cornerstone's members than on many of ABA's and TBA's members. In fact, most credit unions are small, local financial institutions with limited staff and resources. Over 40% of all credit unions employ five or fewer full-time employees, more than 25% have less than $10 million in assets, and almost 75% have less than $100 million in assets. Additionally, credit unions do not issue stock. Their capitalization is based on member deposits and retained earnings, meaning members' deposits may be at risk from these increased compliance costs due to the Final Rule.

I declare under penalty of perjury that the foregoing is true and correct, and that this

Declaration was executed on August 16, 2023

_____

Jim Phelps