IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| TEXAS BANKERS ASSOCIATION, *et al.*,<br><br>                Plaintiffs,<br><br>    v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*,<br><br>                Defendants. | Case No. 7:23-cv-00144 |

**DEFENDANTS' OPPOSITION TO INTERVENORS' MOTION
FOR PRELIMINARY INJUNCTION**

The Court should deny the motion for a preliminary injunction filed by Independent Community Bankers of America, Independent Bankers Association of Texas, and Texas First Bank, ECF No. 44, and joined by Credit Union National Association, Cornerstone Credit Union League, and Rally Credit Union, ECF No. 45 (collectively, "Intervenors"). If the Court were to grant the motion, it should deny Intervenors' request to order relief as to non-parties as well as their apparent request to broaden the conduct covered by the preliminary injunction.

**1. Intervenors have not met their burden to show that they are entitled to the extraordinary relief they seek.**

The Bureau recognizes that the Court recently adjudicated a similar request for preliminary relief and concluded that the original Plaintiffs in this action had met their burden to show that such relief was warranted. *See* ECF No. 25; *see generally Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (describing four-factor test for preliminary relief). The Bureau respectfully submits, however, that Intervenors have not met their burden under the controlling legal standard and, in particular, have not provided specific evidence of compliance costs that they are required to incur now, as opposed to years down the road. *See, e.g.*, *Texas v.*

*Biden*, No. 3:21-cv-309, 2022 WL 18436750, at *1 (S.D. Tex. Oct. 20, 2022) ("To show irreparable harm, the party must demonstrate 'that the injury is *imminent*.'") (emphasis added) (quoting *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986)).

For example, the two individual financial institution intervenors, Texas First Bank and Rally Credit Union, appear to be "Tier 3" institutions that will not be required to comply with the Small Business Lending Rule for well over two years, on January 1, 2026. *See* Decl. of Jessica Tsai ¶ 4, ECF No. 44-2 ("Tsai Decl.") (estimating that Texas First will originate "approximately 400 covered credit transactions" in 2023); Decl. of Dana Sisk ¶ 7, ECF No. 45-1 ("Sisk Decl.") (stating that Rally has originated and will continue to originate "over 100" covered transactions per year); *see also* 88 Fed. Reg. 35150, 35533 (May 31, 2023) (determining initial compliance date based on the number of covered credit transactions originated in 2022 and 2023).

Yet Texas First says nothing to establish what if any expenses it is actually required to incur at this time. And it specifically seeks to rely on costs it will not incur until *2026*. Tsai Decl. ¶ 6. Such costs do not establish an entitlement to preliminary relief in 2023. Rally's only explanation why it is required to incur compliance costs at this time is the conclusory assertion that compliance "will be onerous and expensive." Sisk Decl. ¶ 8. And it too seeks to rely on costs it will not incur until 2026 and beyond. *Id.* ¶ 10.[1] Similarly, none of the four trade association intervenors specifically identify any member institution (other than Texas First and Rally) or

---

[1] Intervenors argue that "the Fifth Circuit has accepted projected compliance costs for establishing irreparable harm," citing *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016), and suggest that this means they are not required to establish that any of their projected costs are imminent. ECF No. 44 at 8-9. What Intervenors leave out is that the petitioners in that case established through specific evidence that "the regulated companies *will have to begin [incurring these costs] almost immediately*" "[b]ecause plant emission controls take several years to install." *Texas v. EPA*, 829 F.3d at 433 (emphasis added); *see also, e.g.*, Pet'rs' Exs. at 74-76 (¶¶ 31-35), *Texas v. EPA*, No. 16-60118 (5th Cir. Mar. 17, 2016) (declaration explaining why compliance costs were imminent), Doc. 141. Intervenors have not made a similar showing here.

2

establish with specific evidence any particular expense that such member is required to incur at this time.

In addition, the Bureau respectfully disagrees with the Court's prior conclusion that "the balance of harms and public interest favor a stay." ECF No. 25 at 15. The copious evidence before the Bureau when it issued the Rule, and that the Bureau described at length in the preamble to the Rule, supports the Bureau's view that the Rule as well as the statutory requirements it implements will produce significant benefits for small businesses, the communities they serve, and lenders. *See, e.g.*, 88 Fed. Reg. at 35503-07. The public interest does not favor further delay to those requirements taking effect. Moreover, Intervenor's requested relief would postpone compliance not only with the Rule but with the statutory requirements that the Rule implements, requirements that no party to this case has suggested (or could suggest) are invalid. *Cf. Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws.").

Like the original Plaintiffs, Intervenors' argument that they are likely to succeed on the merits turns entirely on the novel claim that Congress violated the Appropriations Clause when it passed a statute appropriating money for the Bureau's operations. As before, the Bureau recognizes that the Court is bound by the Fifth Circuit's ruling on this issue in *Community Financial Services Ass'n of America, Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022), *cert. granted*, No. 22-448 (Feb. 27, 2023), but maintains that *CFSA* was wrongly decided. In any event, merely establishing a likelihood of success on the merits is not enough, on its own, to justify preliminary relief. *See, e.g.*, *Winter*, 555 U.S. at 21-24.

### 2. The Court correctly limited the scope of its preliminary relief.

The original Plaintiffs requested a universal injunction that would apply beyond the parties to this case. The Court correctly determined that a more limited injunction was appropriate and stayed the Rule only with respect to Plaintiffs and their members.

Although Intervenors now ask the Court to reconsider that ruling, they provide no compelling reason to do so. Intervenors extrapolate from the Fifth Circuit's discussion of a "constitutional uniformity principle" in immigration law, *see Louisiana v. Becerra*, 20 F.4th 260, 264 (5th Cir. 2021), a more general "uniformity principle" embedded in Section 1071 of the Dodd-Frank Act. ECF No. 44 at 11-12. But Intervenors fail to identify anything unique about Section 1071 in this regard; most laws have some general application, including the rule that was at issue in *Becerra* and that the Fifth Circuit nonetheless concluded should be enjoined as to certain covered entities but not others. *Becerra*, 20 F.4th at 263-64. While Intervenors also claim that the fact they have intervened as parties in this case shows that preliminary relief should be extended to non-parties, ECF No. 44 at 12, that does not follow. As before, "[p]rinciples of judicial restraint" counsel against granting relief to non-parties. *Becerra*, 20 F.4th at 263.

### 3. The Court should deny Intervenors' apparent request to broaden the conduct covered by the preliminary injunction.

Intervenors' proposed order largely tracks the preliminary relief that the Court previously ordered, but in one key respect would seem to sweep in more conduct than the existing order. The proposed order would not only preliminarily enjoin Defendants "from implementing and enforcing the Final Rule against Intervenors, their members, and any other person or entity" but would also order Defendants to "immediately cease *all* implementation or enforcement of the Final Rule." ECF No. 44-4 (emphasis added). The Court should reject this proposed expansion of the preliminary relief it previously ordered.

The order Intervenors ask for would appear to prohibit more conduct than the Court's previously issued injunction against "implementing and enforcing the Final Rule … *against* Plaintiffs and their members." ECF No. 25 at 17 (emphasis added). For example, the Bureau does not understand the previously ordered injunction against "implementing … the Final Rule … against Plaintiffs and their members" to prohibit the Bureau from answering implementation questions brought to it by regulated entities, including by Plaintiffs and their members, or otherwise providing guidance and information about the Rule.[2] An order to cease "all implementation … of the Final Rule," however, could be understood to bar that conduct. The Bureau does not understand the Court to have prohibited or intended to prohibit such activity. The Bureau instead understands the Court to have enjoined Defendants from seeking to compel compliance with the Rule's requirements by an entity that the Bureau knows or has reason to know is a member of the American Bankers Association or Texas Bankers Association. (Defendants, of course, could not and would not seek to compel compliance with the Rule prior to the compliance dates in any event.)

Intervenors do not attempt to show that the broader injunction they apparently seek would be justified. Indeed, their motion does not even mention the request in their proposed order for an injunction against "all implementation" of the Rule. Nor could they justify such relief. The injury of which they complain—having to spend money in order to prepare to comply with the Rule and the statute by the compliance dates set out in the Rule—would be fully redressed by an order staying those compliance dates, similar to what the Court has already

---

[2] *See, e.g.*, ConsumerFinance.gov, Small Business Lending Rule (collecting links to resources about the Rule such as guides and FAQs, as well as a portal where financial institutions can submit regulatory inquiries to the Bureau and receive informal guidance from staff), *available at* https://www.consumerfinance.gov/1071-rule/.

ordered with respect to members of the ABA and TBA. For that reason, no broader relief is required or appropriate. *See, e.g., Gill v. Whitford*, 138 S. Ct. 1916, 1930, 1934 (2018) ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury"); *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 765 (1994) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."). Intervenors have shown no need for a broader injunction that on its face would seem to bar the Bureau from, for example, answering a regulatory inquiry from a covered bank or publishing guidance materials on its website.

It is unclear that Intervenors even mean to request this relief. Their motion for a preliminary injunction, for example, asks only that the Court "enter a preliminary injunction prohibiting CFPB from enforcing the Final Rule nationwide or, alternatively, as to Intervenors and [their] members." ECF No. 44 at 13. That relief is in line with what the Bureau understands the Court to have previously ordered with respect to the original Plaintiffs. Nevertheless, the Bureau addresses this point here, out of an abundance of caution, due to the potential for confusion about the scope of any additional preliminary relief that the Court might order.

Dated:  August 22, 2023　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　Seth Frotman
　　　　　　　　　　　　　　　　　　　　　 *General Counsel*

　　　　　　　　　　　　　　　　　　　　Steven Y. Bressler
　　　　　　　　　　　　　　　　　　　　　 *Deputy General Counsel*

　　　　　　　　　　　　　　　　　　　　Christopher Deal
　　　　　　　　　　　　　　　　　　　　　 *Assistant General Counsel*

　　　　　　　　　　　　　　　　　　　　*/s/ Kevin E. Friedl*
　　　　　　　　　　　　　　　　　　　　Kevin E. Friedl (NY #5240080)
　　　　　　　　　　　　　　　　　　　　Attorney-in-Charge
　　　　　　　　　　　　　　　　　　　　Consumer Financial Protection Bureau
　　　　　　　　　　　　　　　　　　　　1700 G Street NW
　　　　　　　　　　　　　　　　　　　　Washington, DC 20552

(202) 435-9268
kevin.friedl@cfpb.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing has been filed on August 22, 2023 and served on all parties via the CM/ECF system.

                                                 */s/ Kevin E. Friedl*
                                                 Kevin E. Friedl