IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| TEXAS BANKERS ASSOCIATION; RIO BANK, MCALLEN, TEXAS; AMERICAN BANKERS ASSOCIATION, <br><br>    Plaintiffs, <br> v. <br><br> CONSUMER FINANCIAL PROTECTION BUREAU and ROHIT CHOPRA, in his official capacity as Director of the Consumer Financial Protection Bureau, <br><br>    Defendants. | § § § § § § § § § § § § § § § § § | Case No: 7:23-cv-00144 |

**INTERVENOR COMMUNITY BANKS' REPLY IN SUPPORT OF
<u>EMERGENCY MOTION FOR PRELIMINARY INJUNCTION</u>**

The Community Banks¹ file this Reply to CFPB's Opposition to their Moton for Preliminary Injunction (Dkt. 46, "Opposition" or "Opp."), and they respectfully would show the Court as follows:

## INTRODUCTION

In the Opposition, CFPB effectively confirms that, because of the Fifth Circuit's ruling in *Community Financial Services Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022), *cert granted*, 215 L. Ed. 2d 104, 143 S. Ct. 978 (2023), and to be consistent with this Court's July Preliminary Injunction, the Court should grant the Community Banks' Emergency Motion for Preliminary Injunction (Dkt. 44, the "Motion").² The Community Banks beyond question have proven that they by necessity have incurred specific, substantial costs to comply with the Final Rule. Regardless, the Community Banks' proof of projected compliance costs establishes irreparable harm, as the Court previously held.

Next, the Community Banks request that the Court enter an injunction that protects all covered financial institutions in the nation, and CFPB's arguments in opposition to that request lack merit. Finally, the Community Banks, in their proposed order, are not attempting to broaden the conduct covered by the July Preliminary Injunction as to CFPB's implementation of the Final Rule, and CFPB's concerns on that front therefore are a non-issue.

---

¹ The "Community Banks" are Independent Community Bankers of America ("ICBA"), Independent Bankers Association of Texas ("IBAT"), and Texas First Bank ("Texas First"). Terms not otherwise defined in this reply shall have the same meaning as defined in the Motion.

² In its response to Plaintiffs' motion for preliminary injunction, CFPB challenged Plaintiffs' standing and argued that venue is not proper in this District. CFPB does not make those arguments in opposition to the Community Banks' motion.

1

## ARGUMENT AND AUTHORITIES

**I.     The Community Banks are entitled to injunctive relief.**

Because CFPB concedes that the Community Banks are likely to succeed on the merits under *Community Financial,* the only remaining issues are irreparable harm and the balance of the equities and public interest, both of which favor the Community Banks.

First, the Community Banks have proven that ICBA's and IBAT's members, including Texas First, will be irreparably harmed without an injunction because they will continue to incur significant unrecoverable compliance costs. Motion at 5–10. CFPB's response is that the Final Rule does not require compliance costs to be incurred now. Opp. at 1–2. But, this Court already rejected that argument. More specifically, in its July Preliminary Injunction, this Court explained that, "[c]ontrary to what Defendants argue, the Fifth Circuit has accepted projected compliance costs as constituting irreparable harm." July Preliminary Injunction at 14 (citing *Texas v. EPA*, 829 F.3d 405, 433–34 (5th Cir. 2016)). So long as compliance costs are more than de minimis and cannot be recovered, they are irreparable. *Id.* That standard is plainly satisfied here, and CFPB has submitted no argument that the Court has not rejected previously. July Preliminary Injunction at 7–8.

Second, CFPB is also wrong that the Community Banks have not shown imminent harm. CFPB points out that Texas First is a tier 3 institution that does not need to be in compliance with the Final Rule until January 1, 2026 (Opp. at 2), but it ignores that, in order to meet that compliance date, Texas First already has incurred $30,000 in expenses. Decl. of Jessica Tsai ¶ 5, (Dkt. 44-2, "Tsai Decl."). Further, CFPB ignores its own finding that smaller tier 3 institutions are not required to achieve compliance until 2026 *precisely* because it will take them longer to do so. *See* 88 Fed. Reg. 35,150, 35,152 (May 31, 2023) (adopting a tiered compliance schedule because "smaller and mid-sized lenders would have particular difficulties complying within the single 18-

2

month compliance period proposed"). To comply, Texas First will need to hire at least one employee and possibly outside consultants and attorneys, as well as purchase or license systems and software necessary for compliance. Tsai Decl. ¶ 6. Those tasks take time, so small institutions must begin now, just as CFPB recognized when it adopted the tiered compliance approach and specifically acknowledged the lead-time needed to purchase compliance software and train and/or hire staff to use the software. 88 Fed. Reg. at 35,439.

Third, ICBA identified two member banks that are tier 1 institutions which must achieve compliance on a much quicker timetable—by October 1, 2024. Decl. of Anne M. Balcer ¶ 11 (Dkt. 44-1). Each of those member banks estimates that they will spend $100,000 to purchase and install new software by October 1, 2024, to comply with the Final Rule, and incur additional costs each year for software maintenance and hiring and training additional employees. *Id.* CFPB offers no response to that evidence, nor does it present controverting evidence.

Finally, CFPB fails to show why the Court was wrong in finding that the balance of the equities and public interest support enjoining the Final Rule. CFPB claims that the Final Rule will produce significant benefits for small businesses, communities, and lenders. Opp. at 3. But, the purported benefits of the Final Rule are irrelevant because the Final Rule is unlawful and "'there is generally no public interest in the perpetuation of unlawful agency action.'" *La. v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022) (quoting *State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021)); *see also BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) ("Any interest [an agency] may claim in enforcing an unlawful (and likely unconstitutional) [regulation] is illegitimate."). CFPB also contends that the injunction would postpone compliance with not only the Final Rule but also the statutory requirements that the Final Rule implements. Opp. at 3. However, there is

3

no basis whatsoever for this contention; the Community Banks challenge and seek to enjoin only implementation and enforcement of the Final Rule.

### II. Even if nationwide relief was not appropriate previously when the Court granted Plaintiffs' motion, it is now.

The Community Banks have demonstrated that nationwide relief is now appropriate based on the uniformity principle in Section 1071 and because nearly all covered institutions are now represented in this case. Motion at 11–12.

CFPB first argues that the Community Banks have failed to identify anything unique about Section 1071's uniformity principle and that many laws, including the rule at issue in *Becerra*, have "some general application." Opp. at 4. However, the Community Banks went well beyond the barebones justifications provided in *Becerra*. In that case, the Fifth Circuit explained that the district court relied solely on "the nationwide scope of the [rule]" and the fact that "there are unvaccinated workers in other states who also need protection." *La. v. Becerra*, 20 F.4th 260, 263–64 (5th Cir. 2021). Here, the need for uniformity does not come solely from the fact that the Final Rule has nationwide scope, but also from the nature of the Dodd-Frank Act, the Final Rule's requirements, and a specific provision in the relevant section that expressly presumes nationwide uniformity. In 15 U.S.C. § 1691c-2(g)(2), Congress specifically permitted CFPB to "exempt any financial institution or class of financial institutions from the requirements of this section," provided the CFPB explained how doing so is "necessary or appropriate to carry out the purposes of th[e] section." This is undeniably a statutory presumption of uniformity (to which CFPB offers no response) that this Court should honor.

CFPB next asserts that nationwide relief "does not follow" from the fact that the Community Banks have entered this case (Opp. at 4), but it offers no actual or reasoned answer to the Community Banks' argument. As they explained in the Motion, the Community Banks'

4

participation (and that of the Credit Union Intervenors[3]) has changed the "circumstances" that the Fifth Circuit has instructed district courts to consider when determining the proper scope of relief. *Becerra*, 20 F.4th at 263 (holding that "the scope of the injunction must be justified based on the 'circumstances'"). In *Becerra*, one factor the Fifth Circuit thought militated against nationwide relief was that "many states that have not brought suit may well have accepted and even endorsed the" rule being challenged. *Id.* at 263. That is not the case here. Among Plaintiffs and all the intervening parties, nearly all of the covered institutions in the country are now represented in this case. CFPB does not deny that fact, nor does it deny that this case is now materially different from *Becerra* in a way that supports nationwide relief.

### III. There is no difference between the conduct prohibited by the existing preliminary injunction and the conduct that the Community Banks request the Court enjoin.

CFPB's final argument attempts to create an issue where none exists. The Community Banks' proposed order states that CFPB shall "cease all implementation or enforcement of the Final Rule." Dkt. 44-4 at 2. In its July Preliminary Injunction, the Court enjoined CFPB from "implementing and enforcing the Final Rule." July Preliminary Injunction at 16. Although CFPB claims that the Community Banks' proposed order "would seem to sweep in more conduct than the existing order" (Opp. at 4), that is incorrect. Regardless, the Community Banks did not intend by the language to expand the conduct prohibited by the July Preliminary Injunction.

Further, CFPB's concern that the language in the proposed order arguably could prohibit it from answering questions or providing guidance or information about the Final Rule (Opp. at 5) is unfounded. The Community Banks simply contend that no covered entity should be forced to comply with the Final Rule and that, in the unlikely event that compliance becomes necessary in

---

[3] Credit Union Intervenors are Credit Union National Association, Cornerstone Credit Union League, and Rally Credit Union.

the future, the deadlines to comply will be extended day-for-day while the Court's preliminary injunction remains in place. Accordingly, the Community Banks seek the same relief this Court already granted, except they ask the Court to extend that relief nationwide or, alternatively, as to ICBA, IBAT, and their members, including Texas First.

## CONCLUSION

For these reasons and those in the Community Banks' Emergency Motion for Preliminary Injunction and Brief in Support, the Community Banks respectfully request that the Court grant the Motion.

Respectfully submitted,

*/s/ James W. Bowen*
James W. Bowen
*attorney-in-charge*
jbowen@HuntonAK.com
Texas Bar No. 02723305
S.D. Texas Bar No. 16337
Jennifer L. Clyde
jclyde@HuntonAK.com
Texas Bar. No. 24101032
S.D. Texas Bar No. 3644312
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: (214) 979-3000
Facsimile: (214) 880-0011

Elbert Lin
elin@HuntonAK.com
VA Bar No. 92740
*admitted pro hac vice*
**HUNTON ANDREWS KURTH LLP**
951 East Byrd Street, East Tower
Richmond, VA 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218

Erica Peterson
epeterson@HuntonAK.com
D.C. Bar No. 1686244
*admitted pro hac vice*
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 955-1932
Facsimile: (202) 778-2201

**ATTORNEYS FOR INTERVENORS ICBA, IBAT, AND TEXAS FIRST BANK**