**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| TEXAS BANKERS ASSOCIATION; RIO BANK, MCALLEN, TEXAS; and AMERICAN BANKERS ASSOCIATION, | § § § § § | |
| Plaintiffs, | § § § | |
| CREDIT UNION NATIONAL ASSOCIATION, CORNERSTONE CREDIT UNION LEAGUE, RALLY CREDIT UNION, TEXAS FIRST BANK, INDEPENDENT BANKERS ASSOCIATION OF TEXAS, and INDEPENDENT COMMUNITY BANKERS OF AMERICA, | § § § § § § § § § § | Case No: 7:23-cv-00144 |
| Intervenor-Plaintiffs, | § § § | |
| v. | § § | |
| CONSUMER FINANCIAL PROTECTION BUREAU and ROHIT CHOPRA, in his official capacity aa Director of the Consumer Financial Protection Bureau, | § § § § § | |
| Defendants. | § § | |

**CREDIT UNION INTERVENORS' REPLY IN SUPPORT OF THEIR**
**JOINDER TO EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

On July 31, the Court granted a preliminary injunction enjoining the implementation and enforcement of the Final Rule against the original Plaintiffs. The Court likewise stayed all compliance deadlines under the Final Rule, again, as to Plaintiffs. In awarding preliminary relief, the Court found Plaintiffs were substantially likely to prevail on their claims challenging the Final Rule; they would suffer irreparable harm in the form of unrecoverable compliance costs; and the balance of harms and public interest favored injunctive relief.

The Court's findings apply with equal force to Intervenor-Plaintiffs Rally and CUNA's and Cornerstone's credit union members. Credit Union Intervenors allege the same constitutional and statutory challenges to the Final Rule; they have proved, through declarations, that irreparable harm will befall Rally and CUNA's and Cornerstone's members absent injunctive relief; and, even more so now, the balance of harms and public interest decidedly favor an injunction to level playing field and avoid disparate treatment under the Final Rule.

The Bureau's limited opposition fails persuade otherwise. In addition, since the Court's July 31 order, the Bureau has made apparent it intends to plow forward with implementing and enforcing the Final Rule despite the cloud of constitutional doubt hanging over the Rule and the Bureau's existence more broadly. This stubborn persistence makes little sense and covered financial institutions around the county are preparing to seek individualized relief consistent with the Court's preliminary injunction. Respectfully, the Court should avoid the impending judicial mayhem by enjoining implementation and enforcement of the Final Rule on a nationwide basis. That said, even if the Court confines preliminary relief to the parties here, there is no basis to exclude Credit Union Intervenors from the preliminary relief already entered.

## REPLY IN SUPPORT

***Irreparable Harm.*** The Bureau resists extending the existing preliminary injunction to Rally and CUNA's and Cornerstone's credit union members. Its retort turns on a single claim: the Bureau argues Credit Union Intervenors' "have not provided specific evidence of compliance costs that they are required to incur now." (Defs.' Opp'n 1, Doc. 46.) Every part of this statement is wrong. First, the specific evidence of compliance costs. Rally's CEO, Dana Sisk, offered a

declaration explaining Rally has **already** "incurred approximately $15,000 in operating costs in preparing to comply with the Final Rule" and has "dedicated approximately 50 hours" of manpower to preparation. (Sisk Decl. ¶ 9, Doc. 45-1.) Sisk also explained Rally "is implementing a new business-loan origination software," which supplies reporting tools consistent with the Final Rule, at an initial cost of $250,000 and an annual maintenance expense of $60,000. (*Id.* ¶ 10.) The Final Rule's present burden on Rally tracks what CUNA's and Cornerstone's members have reported. (*See* Ihrig Decl. ¶¶ 9–11; Phelps Decl. ¶¶ 6–9.) In the end, there's no real dispute that Credit Union Intervenors offered "specific evidence of compliance costs" incurred because of the Final Rule's new requirements.

This leads to the Bureau's quizzical alternative position: that Credit Union Intervenors have been **too** diligent in preparing to comply with the Final Rule. (*See* Defs.' Opp'n 2.) The Court has already rejected this argument as unpersuasive and against Fifth Circuit precedent. (*See* Order 14, Doc. 25 (rejecting the Bureau's "main issue … that the Final Rule does not require compliance costs to be incurred *now*" and pointing out "the Fifth Circuit has accepted projected compliance as constituting irreparable harm").) Nor does the argument make sense practically. The Final Rule is tomorrow. 12 C.F.R. § 1002.113(a) ("The effective date for this subpart is August 29, 2023."). While the compliance period is phased in over three years, one of the Bureau's stated purposes for this tiered approach was to give covered financial institutions "enough time to implement one-time changes in a manner consistent with the Bureau's estimates" based on the anticipated burden of compliance. 88 Fed. Reg. 35,150, 35,510. Yet now, the Bureau faults Credit Union Intervenors for doing exactly what they say the phased approach is intended to encourage. This litigation position "take[s] us to a strange world where the government itself—the very 'expert' agency responsible for promulgating the 'law' no less— seems unable to keep pace with its own frenetic lawmaking." *See Caring Hearts Pers. Home Servs., Inc. v. Burwell*, 824 F.3d 968, 976 (10th Cir. 2016) (Gorsuch, J.). Based on the evidence, Credit Union Intervenors are entitled to at least the same relief as Plaintiffs.

***Nationwide Relief.*** Credit Union Intervenors join Community Bank Intervenors' argument for nationwide relief. While Credit Union Intervenors appreciate the first principles that guided the Court's decision to initially deny nationwide relief, respectfully the circumstances here warrant broad geographic relief while the U.S. Supreme Court considers the affirmance of *Community Financial Services Association of America v. CFPB*, 51 F.4th 616, 623 (5th Cir. 2022). Maintaining a narrower-scope injunction will only lead to further litigation in this Court and in courts across the country over the year by those with the resources to do so. *See* Compl., *The Monticello Banking Co. v. CFPB*, No. 6:23-cv-00148 (E.D. Ky. Aug. 11, 2023) (stating "[t]he plaintiffs are seeking a 'level playing field' in Kentucky." "It is entirely appropriate that the plaintiffs in this case be protected from unrecoverable compliance costs pursuant to an invalid rule, particularly when financial institutions located in Kentucky who are members of the [ABA] are currently receiving this injunctive relief."). A nationwide injunction balances the competing interests and levels the playing field during this interim period.

***Scope of the Preliminary Injunction.*** Lastly, the Bureau misreads Credit Union Intervenors' requested injunction. (*See* Defs.' Opp'n 4–6.) Credit Union Intervenors seek the same preliminary relief the Court awarded to the original Plaintiffs—no more, no less.

## CONCLUSION

Credit Union Intervenors respectfully request that the Court: (1) accept their joinder and reply in support, and grant the motion for preliminary injunction; (2) enter a preliminary injunction prohibiting the CFPB from enforcing the Final Rule nationwide or, alternatively, as to Credit Union Intervenors and CUNA's and Cornerstone's members; and (3) grant them such other and further relief to which they may show themselves justly entitled.

Dated: August 28, 2023.              Respectfully submitted,

*/s/ Christopher O. Murray*
Christopher O. Murray
Julian R. Ellis, Jr. (admitted *pro hac vice*)
BROWNSTEIN HYATT
  FARBER SCHRECK, LLP
675 15th Street, Suite 2900
Denver, Colorado 80202
Email: cmurray@bhfs.com
       jellis@bhfs.com
Ph: (303) 223-1100

**Attorneys for Credit Union Intervenors**