UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| TEXAS BANKERS ASSOCIATION; RIO BANK, MCALLEN, TEXAS; and AMERICAN BANKERS ASSOCIATION,<br><br>*Plaintiffs*,<br><br>TEXAS FIRST BANK; INDEPENDENT BANKERS ASSOCIATION OF TEXAS; and INDEPENDENT COMMUNITY BANKERS OF AMERICA,<br><br>*Proposed Intervenor Plaintiffs*,<br><br>CREDIT UNION NATIONAL ASSOCIATION; CORNERSTONE CREDIT UNION LEAGUE; and RALLY CREDIT UNION,<br><br>*Proposed Intervenor Plaintiffs*,<br><br>v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU and ROHIT CHOPRA, in his official capacity as Director of the Consumer Financial Protection Bureau,<br><br>*Defendants*. | Case No. 7:23-cv-00144 |

**UNOPPOSED EMERGENCY MOTION FOR LEAVE
TO INTERVENE AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ...........................................................................................................i

**INDEX OF AUTHORITIES** .....................................................................................................ii

**INTRODUCTION** .....................................................................................................................1

**STATEMENT OF FACTS** ........................................................................................................2

    A.   Identities of the ELFA Intervenors .............................................................................2

    B.   The CFPB's Unconsitutional Funding Mechanism ....................................................4

    C.   Immediate and Irreparable Harm to the ELFA Intervenors Caused by the Final Rule ....................................................................................................................7

**ARGUMENT AND AUTHORITIES** ........................................................................................8

    A.  The ELFA Intervenors should be Granted Leave under Rule 24(a) .............................9

        i.  This Motion is timely. ..............................................................................................9

        ii. The ELFA Intervenors have an interest in the transaction at issue .....................10

        iii. The disposition of this action in the ELFA Intervenors' absence impedes their ability to protect their rights and interests ........................................................11

        iv. The existing parties do not adequately protect the ELFA Intervenors' interests .......................................................................................................................12

    B. The ELFA Intervenors should be Granted Leave under Rule 24(b) ...........................13

    C. ELFA Intervenors are Entitled to Consideration of Leave on an Emergency Basis ................14

**REQUEST FOR RELIEF** .........................................................................................................15

**CERTIFICATE OF CONFERENCE** ......................................................................................16

**CERTIFICATE OF SERVICE** ................................................................................................16

# INDEX OF AUTHORITIES

**Cases**

*Community Fin. Servs. Ass'n of Am., Ltd. v. Consumer Financial Protection Bureau*,
  41 F.4th 616 (5th Cir. 2022), *cert. granted*, 215 L. Ed. 2d 104, 143 S. Ct. 978
  (2023) ..................................................................................................................10, 11

*Contender Farms, L.L.P. v. U.S. Dept. of Agriculture*,
  779 F.3d 28 (5th Cir. 2015) ..............................................................................................15

*Edwards v. City of Houston*,
  78 F.3d 983 (5th Cir. 1996) ..............................................................................................16

*Entergy Gulf States La., L.L.C. v. EPA*,
  817 F.3d 198 (5th Cir. 2016) ............................................................................................11

*Hodnett v. Smurfit-Stone Container Enters., Inc.*,
  No. 09-1256, 2010 WL 3522497 (W.D. La. Sept. 2, 2010) ..............................................18

*John Doe No. 1 v. Glickman*,
  256 F.3d 371 (5th Cir. 2001) ..................................................................................... *passim*

*La Union del Pueblo Entero v. Abbott*,
  29 F.4th 299 (5th Cir. 2022) ..............................................................................................15

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*,
  884 F.2d 185 (5th Cir. 1989) ............................................................................................13

*Miller v. Vilsack*
  No. 21-11271, 2022 WL 851782 (5th Cir. Mar. 22, 2022) ...............................................11

*NextEra Energy Cap. Holdings, Inc. v. D'Andrea*,
  No. 20-50168, 2022 WL 17492273 (5th Cir. 2022) .........................................................16

*Payne v. Fidelity Sec. Life Ins. Co.*,
  No. 1:09CV760, 2010 WL 11553079 (E.D. Tex. May 13, 2010).....................................17

*Sierra Club v. Espy*,
  18 F.3d 1202 (5th Cir. 1994) ..............................................................................11, 13, 15

*Students for fair Admissions, Inc. v. Univ. of Texas at Austin*,
  338 F.R.D. 364 (W.D. Tex. 2021).....................................................................................17

*Tex. v. U.S.*,
  805 F.3d 653 (5th Cir. 2015) ............................................................................................14

Statutes

12 U.S.C. § 5512 ..................................................................................................................8, 9

12 U.S.C. § 5581 .......................................................................................................................8

Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010,
    Pub. L. No. 111-203, § 1071, 124 Stat. 1376 (2010)................................................................15

Equal Credit Opportunity Act of 1974,
    Pub. L. 93-495, 88 Stat. 1500 (1974) ......................................................................................15

**Rules**

Tex. R. Civ. P. 24 .............................................................................................................. *passim*

S.D. Tex. L. R. 7.8 ...................................................................................................................18

**Regulations**

12 C.F.R. § 1002.102 (Aug. 29, 2023) .....................................................................................22

12 C.F.R. § 1002.104 (Aug. 29, 2023) .....................................................................................22

12 C.F.R. § 1002.105 (Aug. 29, 2023) .....................................................................................22

12 C.F.R. § 1002.107 (Aug. 29, 2023) .......................................................................................9

40 Fed. Reg. 49,298 (Oct. 22, 1975) ..........................................................................................6

88 Fed. Reg. 35,150 (May 31, 2023).......................................................................................11

88 Fed. Reg. 35,521 (May 31, 2023).........................................................................................6

88 Fed. Reg. 35,529 (May 31, 2023).........................................................................................6

88 Fed. Reg. 35,530 (May 31, 2023).........................................................................................6

Small Business Lending Under the Equal Credit Opportunity Act (Regulation B),
    86 Fed. Reg. 56,356, 2021 WL 4636032 (Oct. 8, 2021) ................................................ *passim*

Small Business Lending Under the Equal Credit Opportunity Act (Regulation B),
    88 Fed. Reg. 35,150, 2023 WL 3723408 (May 31, 2023)............................................... *passim*

TO THE HONORABLE JUDGE OF SAID COURT:

XL FUNDING, LLC d/b/a Axle Funding, LLC ("Axle") and the Equipment Leasing and Finance Association ("ELFA," collectively with Axle the "ELFA Intervenors") file this Unopposed Motion for Leave to Intervene and Brief in Support, and in support thereof would respectfully show the Court as follows:

## INTRODUCTION

1. On March 30, 2023, Defendants, the Consumer Financial Protection Bureau and Rohit Chopra, in his capacity as Director (collectively, the "CFPB" or "Defendants"), published a final rule (the "Final Rule") amending Regulation B governing small business lending under the Equal Credit Opportunity Act ("ECOA"). *Small Business Lending Under the Equal Credit Opportunity Act (Regulation B)*, 88 Fed. Reg. 35,150, 2023 WL 3723408 (May 31, 2023). According to CFPB, the Final Rule implemented changes to the ECOA made 13 years earlier by Congress in § 1071 of the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Act").[1] 88 Fed. Reg. 35,150.

2. As described in detail in the Complaint in Intervention (the "Proposed Complaint") attached hereto as Exhibit "1," the Final Rule is unconstitutional and unenforceable. Should the CFPB be allowed to proceed with the Final Rule, Axle and many of ELFA's other members that qualify as covered financial institutions, but are not members of any other complaining organization ("Exposed ELFA Covered Financial Institutions"), will be irreparably harmed, at least to the same extent as Plaintiffs, Rio Bank, McAllen, Texas, American Bankers Association, and Texas Bankers Association (collectively, the "Original Plaintiffs").

---

[1] Pub. L. 111-203, tit. X, Section 1071, 124 Stat. 1376, 2056 (2010), codified at 15 U.S.C. § 1691c-2.

**UNOPPOSED EMERGENCY MOTION FOR LEAVE TO INTERVENE AND BRIEF IN SUPPORT**                    **PAGE 1**

3.  On July 31, 2023, the Court entered its Order Granting In-Part and Denying In-Part Plaintiffs' Motion for Preliminary Injunction (the "Injunction:"), enjoining CFPB's enforcement of the Final Rule. *See* Doc. # 25. However, the Court declined to implement the Injunction on a nationwide scale, thereby limiting its application to the Original Plaintiffs and their members, only.

4.  Axle and many of the Exposed ELFA Covered Financial Institutions are not associated with the Original Plaintiffs, nor are they associated with any other intervening parties. In fact, they are generally competitors, united in a common cause due to the severely detrimental effects of the CFPB's actions. Accordingly, Axle and the Exposed ELFA Covered Financial Institutions will suffer irreparable harm if the CFPB is not enjoined from enforcing its unconstitutional Final Rule. Therefore, the ELFA Intervenors seek the same relief sought by the Original Plaintiffs (and other intervening parties) on common legal grounds. Rather than incurring the burden and expense associated with filing a separate, nearly identical action, the ELFA Intervenors respectfully request that the Court grant them leave to intervene in the present action. Intervention is timely and appropriate under Federal Rule of Civil Procedure 24 and will avoid duplicative, costly litigation.

**STATEMENT OF FACTS**[2]

**A.  Identities of the ELFA Intervenors**

5.  ELFA is a national trade association dedicated to representing the interests of financial services companies and manufacturers in the equipment finance sector. ELFA's

---

[2] ELFA Intervenors do not seek leave to assert claims against (1) Original Plaintiffs; (2) Proposed Intervenor-Plaintiffs Texas First Bank, Independent Community Bankers of America, and Independent Bankers Association of Texas (collectively, "Banker Intervenors"); or (3) Proposed Intervenor-Plaintiffs Credit Union National Association, Cornerstone Credit Union League, and Rally Credit Union (collectively, "Credit Union Intervenors"). Each of the Original Plaintiffs, Banker Intervenors, and Credit Union Intervenors (collectively, "Prior Claimants") have appeared in the instant action through counsel. Accordingly, each may be served through their counsel of record via the Court's electronic filing system.

membership consists of more than 630 member companies located throughout the United States, including in the Southern District of Texas. These include independent leasing and finance companies, captive finance companies, investment banks, commercial banks, service providers, inventory lenders, diversified financial services companies, brokers and packagers, and multinational financial and manufacturing companies operating within the United States. ELFA members collectively operate thousands of locations nationwide, and employ tens of thousands of Americans.  Of the $2 trillion that American businesses, nonprofits, and government agencies invest in capital goods and software each year, 57.3%, or $1.16 trillion of that investment, is financed through loans, leases, and other financial instruments.  ELFA member companies finance the acquisition of assets, including without limitation, all types of capital equipment; software; agricultural equipment; IT equipment and software; aircraft; manufacturing and mining machinery; rail cars and rolling stock; vessels and containers; trucks and transportation equipment; construction and off-road equipment; motor vehicles; business, retail, and office equipment; and medical technology and equipment.  The customers of ELFA members range from Fortune 100 companies to small and medium sized enterprises to governments and nonprofits.

6.     Axle is a limited liability company duly organized and existing under and by virtue of the laws of the State of Indiana, with its principal office located at 15301 N. Dallas Parkway Addison, Texas 75001. Axle operates as a floorplan lender that provides financing for motor vehicle dealerships. Axle operates from brick-and-mortar branches located in Texas and fourteen (14) other states, including two branches located in the Southern District of Texas at 1440 FM 3083, Conroe, Texas 77301 and 1826 Almeda Genoa, Houston, Texas 77047, employing more than a dozen citizens within the Southern District of Texas. Axle has existing loans with hundreds of motor vehicle dealers located within the State of Texas, including numerous active borrower

dealerships located within the Southern District of Texas, and hundreds of others operating nationwide, many of which purchase vehicles in Texas.[3] Axle frequently extends credit to, and increases credit lines of, Texas women-owned, minority-owned, and small businesses, specifically those with less than $5 million in gross annual revenue. The volume of such loans exceeded one hundred (100) in each of 2021 and 2022, and Axle projects it will maintain (or increase) such volume in 2023 and 2024. Axle is a member of ELFA.

**B. The CFPB's Unconstitutional Funding Mechanism**

7. Congress passed the Dodd-Frank Act (the "Act") in 2010 in response to the 2008 financial crises. Pub. L. No. 111-203. Title X of the Act is the Consumer Financial Protection Act of 2010 ("CFPA"), which established the CFPB as the regulator for individuals and entities that provide financial products and services, including loans for small businesses.

8. The CFPB has the power to "prescribe rules or issue orders or guidelines pursuant to" nineteen distinct consumer protection laws. 12 U.S.C. § 5581(a). These include rules, orders, and guidelines applicable to commercial loans in certain contexts.

9. Pursuant to § 1021(a) of the CFPA, the CFPB must implement and enforce rules applicable to consumer transactions "consistently for the purpose of ensuring that all consumers have access to markets for consumer financial products," and to ensure that "consumers are provided with timely and understandable information to make" their own "responsible decisions about financial transactions."

10. While exercising its rulemaking and enforcement authority, the CFPB must weigh "the potential benefits and costs to consumers and covered persons, including the potential reduction of access by consumers to consumer financial products or services resulting from such

---

[3] These include more than 50 dealer borrowers located within—and selling vehicles to customers located within—the Southern District of Texas.

rule" and "the impact of proposed rules on covered persons… and the impact on consumers in rural areas." 12 U.S.C. § 5512.

11. Allegedly in furtherance of its mission, the CFPB proposed a rule that, according to CFPB, implemented these statutory directives from § 1071. *Small Business Lending Data Collection under the Equal Credit Opportunity Act (Regulation B)*, 86 Fed. Reg. 56,356, 2021 WL 4636032 (Oct. 8, 2021).

12. In reality, the CFPB's proposed rule would vastly expand the categories of information to be reported by lenders, adding nearly 70 additional data points including demographic data to § 1071's list. Those included, *inter alia*, data concerning loan guarantees, loan terms, counteroffers, reasons for denials, comprehensive pricing information, origination charges, annual fees, broker fees, prepayment penalties, number of workers, and time in business. *Id.*

13. During the notice and comment period, most commenters characterized the proposed rule as excessively overbroad in terms of its data points and complained of the negative impact and substantial costs implementation of the proposed rule would have on the small business lending market.

14. In the Final Rule, the CFPB expanded Congress' three-page mandate in the Act into a Final Rule of more than 880 pages, including commentary. Concurrent with the publication of the Final Rule, the CFPB issued a "Small Business Lending Rule: Data Points Chart," which sets forth the 81 separate data or sub-data points. *See* 12 C.F.R. § 1002.107 and https://files.consumerfinance.gov./f/documents/cfpb_small-business-lending-data-points-chart.pdf.

15. Rather than dispute the comments raising concerns, the CFPB dismissed them with a notation that "it expects the variable portion of ongoing costs to be passed on to small business

credit borrowers in the form of higher interest rates and fees." 88 Fed. Reg. 35521. The CFPB ultimately issued the Final Rule in substantially the same form as originally proposed disregarding valid comments made by interested parties.

16. Nearly two years ago, while the rule underwent notice and comment procedures, the Fifth Circuit took issue with the CFPB's "self-actualizing, perpetual funding mechanism." *Community Fin. Servs. Ass'n of Am., Ltd. v. Consumer Financial Protection Bureau*, 41 F.4th 616, 638 (5th Cir. 2022), *cert. granted*, 215 L. Ed. 2d 104, 143 S. Ct. 978 (2023) (quoting *CFPB v. All American Check Cashing, Inc.*, 33 F.4th 218, 221–22 (5th Cir. 2021) (Jones, J., concurring,)). "While the great majority of executive agencies rely on annual appropriations for funding, the Bureau does not. Instead, each year, the Bureau simply requisitions from the Federal Reserve an amount determined by the Director to be reasonably necessary to carry out' the Bureau's functions." *Cmty. Fin.,* 51 F.4th at 638 (citing 12 U.S.C. § 5497(a)). Accordingly, as described by the Fifth Circuit:

> Congress did not merely cede *direct* control over the Bureau's budget by insulating it from annual or other time limited appropriations. It also ceded *indirect control* by providing that the Bureau's self-determined funding be drawn from a source that is itself outside the appropriations process— a double insulation from Congress's purse strings that is unprecedented across the government. *Id.* at 638–39 (quoting *All American Check Cashing*, 33 F.4th at 225 (Jones, J., concurring)).

17. This concession alone gave the Fifth Circuit "grave pause," *Id*. at 639. "But Congress went to even greater lengths to take the Bureau completely off the separation-of-powers books. Indeed, it is literally off the books: Rather than hold funds in a Treasury account, the Bureau maintains 'a separate fund,' the 'Bureau of Consumer Financial Protection Fund,' which shall be maintained and established at a Federal Reserve bank. 'This fund is under the control of the Director,' and the monies on deposit are permanently available to him without any further act of

Congress. Thus, contra the Federal Reserve, the Bureau may 'roll over' the self-determined funds it draws *ad infinitum*," resulting in, essentially, blank check authority. *Id.* at 639 (citations omitted).

18. For these reasons, the Fifth Circuit held that CFPB's funding mechanism is irreconcilable with both the Appropriations Clause and the separation of powers, thereby invalidating the rule before as unconstitutional. *Id.* at 642–43.

19. Similarly, the Final Rule is invalid and unenforceable. *See* Injunction at 12 ("Accordingly, this Court finds that a substantial likelihood exists that Plaintiff would prevail in asserting that the Final Rule is invalid."). The CFPB has ignored pleas for a stay of the rule pending a resolution of the constitutionality of its funding mechanism.

**C.     Immediate and Irreparable Harm to the ELFA Intervenors Caused by the Final Rule**

20. The Final Rule is set to become effective on August 29, 2023. 88 Fed. Reg. 35150. As a result, the ELFA Intervenors must immediately incur substantial expenses in preparation for the implementation of the Final Rule.

21. For Axle and the Exposed ELFA Covered Financial Institutions, that compliance activity will include selecting new computer software systems (that are yet to be created to address the requirements of the Final Rule); training employees; and hiring outside managers for the implementation of the information collection, report preparation, intra-company segmentation procedures, and overall privacy protection needed to obtain and safeguard the extensive invasive, personal, demographic, and sexual orientation data mandated for collection and reporting by the Final Rule.

22. Accordingly, Axle and Exposed ELFA Covered Financial Institutions will be irreparably harmed by CFPB's enforcement of the Final Rule to the same extent, if not more so, than the Prior Plaintiffs. If granted leave, the ELFA Intervenors intend to immediately file a

motion seeking a preliminary injunction.

23. With the Injunction limited only to the Original Plaintiffs, the ELFA Intervenors find themselves in a similar posture as other intervening parties—they must either intervene, file a separate action concerning the exact same facts and legal issues, or suffer the consequences of the Final Rule. Because the ELFA Intervenors seek the same relief as the Original Plaintiffs were granted through the Injunction and would be irreparably harmed if forced to comply with the Final Rule particularly while other similarly situated financial institutions are shielded from compliance by the Court's injunction, they seek leave to intervene.

## ARGUMENT AND AUTHORITIES

24. The Court should grant the ELFA Intervenors either intervention by right under Rule 24(a)(2) or permissive intervention under Rule 24(b)(2).

25. Upon timely motion, Rule 24(a)(2) permits a party to intervene as a matter of right if: (1) the potential intervenor claims an interest relating to the property or transaction that forms the basis of the controversy in the case; (2) the proposed intervenor is so situated that disposing of the action may as a practical matter impair or impede the potential intervenor's ability to protect its interest; and (3) the existing parties do not adequately represent the potential intervenor's interest. *John Doe No. 1 v. Glickman,* 256 F.3d 371, 375 (5th Cir. 2001). The inquiry is "a flexible one, which focuses on the particular facts and circumstances" and is "measured by a practical rather than technical yardstick." *Miller v. Vilsack,* No. 21-11271, 2022 WL 851782, at *2 (5th Cir. Mar. 22, 2022) (citing *Entergy Gulf States La., L.L.C. v. EPA,* 817 F.3d 198, 203 (5th Cir. 2016)). A court should allow intervention where "no one would be hurt and greater justice could be attained." *Sierra Club v. Espy,* 18 F.3d 1202, 1205 (5th Cir. 1994).

26. Rule 24(b)(2) provides for permissive intervention when (1) application is timely; (2) the intervening claim and the main action have a common question of law or fact; and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the existing parties. *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 n. 2 (5th Cir. 1989).

### A. The ELFA Intervenors should be Granted Leave under Rule 24(a)

i. This Motion is timely.

27. Courts consider four factors to determine the timeliness of a motion to intervene: (1) the length of time the intervenor knew or reasonably should have known of its interest in the case; (2) prejudice the existing parties to the litigation may suffer as a result of the intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the prejudice the intervenor may suffer if intervention were denied; and (4) the existence of unusual circumstances. *Espy*, 18 F.3d at 1205. The clock runs from the time the intervenor knew or should have known of its stake in the case or from the time it became aware that its stake would no longer be protected by the existing parties. *Glickman,* 256 F.3d at 376.

28. The ELFA Intervenors have sought intervention less than three weeks after it became clear they needed to do so, and before the effective date of the Final Rule. The Original Plaintiffs commenced this action on April 26, 2023, seeking a nationwide preliminary and permanent injunction prohibiting CFPB from enforcing the Final Rule. Doc. # 1; *see also* Doc. # 12 (Original Plaintiffs' May 14, 2023 First Amended Complaint) and Doc. # 13 (Original Plaintiffs' May 26, 2023 Motion for Preliminary Injunction). The Court entered its Injunction on July 31, 2023, limiting the application of the injunction to Original Plaintiffs and their members. Doc. # 25. It was not until then that it became apparent that the ELFA Intervenors needed to

participate in this case to protect their own interests. Accordingly, this motion is timely. *See, e.g., Glickman,* 256 F.3d at 377 (concluding motion to intervene filed one month after movant learned about stake in the lawsuit was timely).

29. Further, this Motion is filed prior to any party conducting discovery, participating in a Rule 26(f) conference, or engaging in significant litigation activities, other than those accompanying the Injunction. At this point, the CFPB has only responded with its answer to the Original Plaintiffs' amended complaint.

30. Accordingly, the ELFA Intervenors' request to intervene is timely.

ii. The ELFA Intervenors have an interest in the transaction at issue.

31. To satisfy the "interest" requirement of Rule 24(a), intervenors must "claim an interest relating to the property or transaction that is the subject of the action." *Tex. v. U.S.,* 805 F.3d 653, 657 (5th Cir. 2015). The Fifth Circuit interprets this to require a "direct, substantial, legally protectable interest in the proceedings." *Id.*

32. Axle and ELFA, on behalf of the Exposed ELFA Covered Financial Institutions, have an interest in obtaining relief from complying with the Final Rule, including a judgment declaring that the Final Rule is unconstitutional and unenforceable. *See generally* Proposed Complaint. Axle and the Exposed ELFA Covered Financial Institutions each frequently make loans to Texas women-owned, minority-owned, and small businesses, and are "covered financial institution(s)" subject to the requirements of the Final Rule. Specifically, Axle made at least 100 "covered credit transactions" in each of 2021 and 2022, and expect to make at least 100 "covered credit transactions" in 2023 and beyond. *See* 88 Fed. Reg. 35529–30 (to be codified at 12 C.F.R. §§ 1002.102, 1002.104, and 1002.105 (Aug. 29, 2023)). The ELFA Intervenors also

have standing as "object(s) of the regulation." *Contender Farms, L.L.P. v. U.S. Dept. of Agriculture*, 779 F.3d 258, 264 (5th Cir. 2015).

33. ELFA itself also has an interest in seeking relief from the Final Rule on behalf of its members, a majority of which are "covered financial institutions" that engage in "covered credit transactions" subject to the Final Rule. Accordingly, ELFA's other members are in an identical position as Axle (and many other covered financial institutions)—they are subject to an unenforceable, unconstitutional rule and excluded from the Injunction protecting their competitors from the burdens arising therefrom. ELFA's participation will ensure another group of financial institutions—beyond large banks, community banks, and credit unions—are protected from the CFPB's wanton disregard for the welfare of the American financial system.

    iii.    <u>The disposition of this action in the ELFA Intervenors' absence impedes their ability to protect their rights and interests.</u>

34. The impairment element only requires that a party seeking intervention demonstrate that disposition of the action may, as a practical matter, impair or impede its ability to protect its interest. *La Union del Pueblo Entero v. Abbott,* 29 F.4th 299, 307 (5th Cir. 2022). A party's interest in a regulatory scheme is "impaired by the *stare decisis* effect of the district court's judgment" as to that scheme's validity. *Espy,* 18 F.3d at 1207.

35. Axle and the Exposed ELFA Covered Financial Institutions' interests would be significantly and irreparably impaired if their intervention were denied, as the outcome of the pending action would change their compliance obligations. If not protected from the Final Rule, Axle and the Exposed ELFA Covered Financial Institutions will immediately be obligated to implement processes and procedures to begin obtaining information and reporting on 81 data points of which dozens can reasonably be described as sensitive, the collection of which may reasonably be described as invasive. *See La Union,* 29 F.4th at 307 (concluding committees

associated with the Republican party had established their interests may be impaired if denied intervention in suit concerning the constitutionality of certain amendments to Texas' election laws as the outcome of the lawsuit could potentially change upcoming election preparations); *Glickman,* 256 F.3d at 380 (concluding that where ruling in separate lawsuit could collaterally estop intervenor from relitigating issue, the disposition of the case may impair or impede intervenor's ability to protect its interest); *NextEra Energy Cap. Holdings, Inc. v. D'Andrea*, No. 20-50168, 2022 WL 17492273, at *4 (5th Cir. 2022) (concluding that intervenors would be impaired by determination on the constitutionality of a state regulatory scheme). Without further action by this Court or a voluntary stay issued by the CFPB, the Final Rule will become effective on August 29, 2023.

      iv.    <u>The existing parties do not adequately protect the ELFA Intervenors' interests.</u>

36.    The burden to prove lack of adequate representation is "minimal." *Edwards v. City of Houston,* 78 F.3d 983, 1005 (5th Cir. 1996). An intervenor need only show the representation of its interest may be inadequate. *Id.* Courts apply two presumptions of adequate representation: first, where the putative representative is a governmental body or officer charged by law with representing the interests of the absentee; and second, where the intervenor has the same ultimate objective as an existing party. *Id.* at 1005. Neither is present here.

37.    The ELFA Intervenors are not governmental bodies or officers. Further, their ultimate objective extends beyond that of the existing parties. Although the Original Plaintiffs sought a nationwide injunction, the Injunction is limited to the Original Parties and their members, only. Even if the Court were to grant the other Prior Plaintiffs' forthcoming requests for extension of the Injunction to their own members, Axle and many of ELFA's other members will be left unprotected unless they are allowed to apply for their own injunctive relief.

38. Regardless, the ELFA Intervenors satisfy their *de minimis* burden to establish that their interests are not adequately protected. None of the ELFA Intervenors are associated with the financial institutions or members of the associations that have already appeared.[4] Although some members of the Prior Plaintiffs engage in equipment finance, it is only a fraction of their portfolios. Exposed ELFA Covered Financial Institutions, on the other hand, are not covered by the injunction, not because of any difference in their finance offerings, but solely because they are not a member of a banking trade association. Accordingly, Axle and the Exposed ELFA Covered Financial Institutions will experience their own unique challenges and unrecoverable expenses, which are magnified if the Prior Plaintiffs engaged in the same markets are allowed to forego compliance while Axle and the Exposed ELFA Covered Financial Institutions are forced to change their lending practices to comply with the Final Rule. At this point, intervention is the sole remedy the ELFA Intervenors have to protect their industry—a massive portion of the country's commerce.

**B. The ELFA Intervenors should be Granted Leave under Rule 24(b)**

39. Assuming, *arguendo*, the ELFA Intervenors are not entitled to intervene as a matter of right, the ELFA Intervenors request the Court exercise its discretion and grant permissive intervention.

40. The ELFA Intervenors have timely filed the present motion and their claims involve common questions of law or fact as the claims asserted by Prior Plaintiffs. *See Students for Fair Admissions, Inc.*, 338 F.R.D. at 372-73 (granting permissive intervention, in the alternative, where common interests in race admissions policy demonstrated shared questions of law and fact); *Payne v. Fidelity Sec. Life Ins. Co.*, No. 1:09CV760, 2010 WL 11553079, at *2

---

[4] Some other members of ELFA may be affiliated with the Original Plaintiff and, thus, protected by the Injunction. However, many ELFA members, including Axle, are not.

(E.D. Tex. May 13, 2010) (permitting intervention pursuant to Rule 24(b) where intervenor's complaint sought the same declaratory relief sought by existing plaintiffs). Intervention will not unduly delay or prejudice the existing parties as discovery has not begun, no scheduling order has been entered, and little litigation has occurred beyond entry of the Injunction.

**C. ELFA Intervenors are Entitled to Consideration of Leave on an Emergency Basis**

41.    The ELFA Intervenors respectfully seek expedited consideration of the instant motion. The Final Rule goes into effect on August 29, 2023 and the CFPB has been unwilling to agree to ELFA's request for a voluntary stay. Accordingly, Axle and the Exposed ELFA Covered Financial Institutions must continue to devote or immediately begin devoting staff and resources to comply. Local Rule 7.8 expressly allows the Court to shorten time periods. *See* S.D. Tex. Local Rule 7.8 ("The Court may in its discretion, on its own motion or upon application, entertain and decide any motion, shorten or extend time periods").

42.    Axle and the Exposed ELFA Covered Financial Institutions stand to incur thousands of dollars in expenses associated with complying with the unconstitutional and unenforceable Final Rule, while many of their competitors, including the Original Plaintiffs, have been granted injunctive relief. An extended briefing schedule would interfere with the ELFA Intervenors' ability to seek injunctive relief prior to the Final Rule's effective date in this action (if intervention is granted) or in a separate action (if intervention is denied). *See Hodnett v. Smurfit-Stone Container Enters., Inc.,* No. 09-1256, 2010 WL 3522497, at *1 (W.D. La. Sept. 2, 2010) (granting request for expedited consideration because of impending deadlines to comply with subpoenas at issue).

## REQUEST FOR RELIEF

For the reasons set forth herein, ELFA Intervenors respectfully request that the Court: consider the instant motion on an expedited basis and, after consideration, afford the ELFA Intervenors leave to intervene in this action and file the Proposed Complaint attached hereto. Additionally, the ELFA Intervenors request any further relief to which they show themselves justly entitled.

Dated: August 28, 2023                Respectfully Submitted,

PADFIELD & STOUT, LLP
420 Throckmorton Street, Ste. 1210
Fort Worth, TX 76102
817-338-1616 – Telephone
817-338-1610 – Facsimile

  /s/ *Alan B. Padfield*
Alan B. Padfield
State Bar I.D. #00784712
abp@padfieldstout.com
Mark W. Stout
State Bar I.D. #24008096
mstout@padfieldstout.com
Owen C. Babcock
State Bar I.D. #24104585
obabcock@padfieldstout.com
Kelsey N. Linendoll
State Bar I.D. #24120975
klinendoll@padfieldstout.com

*Attorneys for ELFA Intervenors*

**CERTIFICATE OF CONFERENCE**

I hereby certify that August 25-28, 2023, I conferred with counsel for each of the Prior Plaintiffs and counsel for Defendants. Each advised they are unopposed to the ELFA Intervenors' motion for leave to intervene.

Owen C. Babcock

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2023, the foregoing was served upon each appearing party through their respective counsel of record via the Court's electronic filing system.

Owen C. Babcock