## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | |
|---|---|
| TEXAS BANKERS ASSOCIATION; RIO BANK, MCALLEN, TEXAS; and AMERICAN BANKERS ASSOCIATION, <br><br> *Plaintiffs*, <br><br> TEXAS FIRST BANK; INDEPENDENT BANKERS ASSOCIATION OF TEXAS; and INDEPENDENT COMMUNITY BANKERS OF AMERICA, <br><br> *Intervenor Plaintiffs*, <br><br> CREDIT UNION NATIONAL ASSOCIATION; CORNERSTONE CREDIT UNION LEAGUE; and RALLY CREDIT UNION, <br><br> *Intervenor Plaintiffs*, <br><br> XL FUNDING, LLC D/B/A AXLE FUNDING, LLC AND EQUIPMENT LEASING AND FINANCE ASSOCIATION, <br><br> *Intervenor Plaintiffs*, <br><br> v. <br><br> CONSUMER FINANCIAL PROTECTION BUREAU and ROHIT CHOPRA, in his official capacity as Director of the Consumer Financial Protection Bureau, <br><br> *Defendants*. | Case No. 7:23-cv-00144 |

**XL FUNDING, LLC D/B/A AXLE FUNDING, LLC AND EQUIPMENT LEASING AND FINANCE ASSOCIATION'S EMERGENCY MOTION FOR PRELIMINARY <u>INJUNCTION AND BRIEF IN SUPPORT</u>**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ..................................................................................................................i

**INDEX OF AUTHORITIES** ..........................................................................................................ii

**INTRODUCTION**.................................................................................Error! Bookmark not defined.

**EVIDENCE**...................................................................................................................................2

**FACTUAL BACKGROUND**.........................................................................................................2

**ARGUMENT AND AUTHORITIES** ............................................................................................4

    A. The ELFA Intervenors are likely to succeed on the merits of their claim .................................5

    B. The ELFA Intervenors will be irreparably harmed without an injunction ................................5

    C. The balance of equities favors an injunction applicable to the ELFA Intervenors ..................10

    D. The intervention of the ELFA Intervenors further supports the need for a nationwide injunction ..................................................................................................................................10

    E. Expedited consideration of the Motion is justified....................................................................11

**CONCLUSION AND REQUEST FOR RELIEF** ..........................................................................12

**CERTIFICATE OF CONFERENCE** ............................................................................................13

**CERTIFICATE OF SERVICE**.......................................................................................................13

# INDEX OF AUTHORITIES

**Cases**

*BST Holdings, LLC v. OSHA*,
   17 F.4th 604 (5th Cir. 2021) ..................................................................................................10

*Community Fin. Servs. Ass'n of Am., Ltd. v. Consumer Financial Protection Bureau*,
   41 F.4th 616 (5th Cir. 2022), *cert. granted*, 215 L. Ed. 2d 104, 143 S. Ct. 978
   (2023) ...................................................................................................................3, 4, 5, 11

*Digital Generation, Inc. v. Boring*,
   869 F. Supp. 2d 761 (N.D. Tex. 2012) ......................................................................................9

*La. v. Becerra*,
   20 F.4th 260 (5th Cir. 2021) ................................................................................................4, 10

*Millennium Restaurants Group, Inc. v. City of Dallas*,
   181 F. Supp. 2d 659 (N.D. Tex. 2001) ......................................................................................9

*Moore v. Brown*,
   868 F.3d 398 (5th Cir. 2017) .....................................................................................................4

*Opulent Life Church v. City of Holly Springs, Miss.*,
   697 F.3d 279 (5th Cir. 2012) ...................................................................................................10

*Restaurant Law Ctr. v. U.S. Dep't. of Labor*,
   66 F.4th 593 (5th Cir. 2023) .................................................................................................7, 8

*Tex. v. EPA*,
   829 F.3d 405 (5th Cir. 2016) .................................................................................................7, 9

*Tex. v. U.S.*,
   809 F.3d 134 (5th Cir. 2015) ...................................................................................................10

*Wages & White Lion Invs., LLC v. FDA*,
   16 F.4th 1130 (5th Cir. 2021) ....................................................................................................8

*Winter v. Nat. Res. Def. Council*,
   555 U.S. 7 (2008) .......................................................................................................................4

**Statutes**

Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010,
   Pub. L. No. 111-203, § 1071, 124 Stat. 1376 (2010) .................................................................3

Equal Credit Opportunity Act of 1974,
    Pub. L. 93-495, 88 Stat. 1500 (1974) ................................................................................3

**Regulations**

88 Fed. Reg. 35,150 (May 31, 2023)..........................................................................................1

88 Fed. Reg. 35,510 (May 31, 2023)......................................................................................7, 8

88 Fed. Reg. 35,517 (May 31, 2023)..........................................................................................7

88 Fed. Reg. 35,521 (May 31, 2023)..........................................................................................8

Small Business Lending Under the Equal Credit Opportunity Act (Regulation B),
    88 Fed. Reg. 35,150, 2023 WL 3723408 (May 31, 2023).................................................. *passim*

TO THE HONORABLE CHIEF UNITED STATES DISTRICT JUDGE:

XL FUNDING, LLC d/b/a Axle Funding, LLC ("Axle") and the Equipment Leasing and Finance Association ("ELFA," collectively with Axle, the "ELFA Intervenors") file this Emergency Motion for Preliminary Injunction and Brief in Support (the "Motion"), and in support thereof would respectfully show the Court as follows:

## INTRODUCTION

1. On July 31, 2023, the Court entered its Order Granting In-Part and Denying In-Part Plaintiffs' Motion for Preliminary Injunction [Doc. # 25] (the "Injunction") prohibiting the Consumer Financial Protection Bureau and Rohit Chopra, in his capacity as Director (collectively, the "Defendants" or "CFPB") from enforcing the Final Rule issued on March 30, 2023, *Small Business Lending Under the Equal Credit Opportunity Act (Regulation)*, 88 Fed. Reg. 35150 (May 31, 2023) (to be codified at 12 C.F.R. §§ 1002.102 – 1002.114 (Aug. 29, 2023)) (the "Final Rule"), against Plaintiffs American Bankers Association ("ABA"), Texas Bankers Association ("TBA"), their members, and Rio Bank, McAllen, Texas ("Rio Bank," collectively with ABA and TBA, "Original Plaintiffs"). The Final Rule amended Regulation B governing small business lending under the Equal Credit Opportunity Act ("ECOA"), purporting to implement Congress' changes made 13 years earlier to § 1071 of the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Act"). 88 Fed. Reg. at 35150. Axle and many of ELFA's members are not members of ABA or TBA and, therefore, are not protected by the Injunction. Accordingly, the ELFA Intervenors file the instant motion seeking a preliminary injunction on many of the same grounds asserted previously by the Original Plaintiffs, along with the parties that have not yet received an injunction, including Intervenor-Plaintiffs Texas First Bank, Independent Community Bankers of America, Independent Bankers Association of Texas,

XL FUNDING, LLC D/B/A AXLE FUNDING, LLC AND
EQUIPMENT LEASING AND FINANCE ASSOCIATION'S
EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

PAGE 1

Credit Union National Association, Cornerstone Credit Union League, and Rally Credit Union (collectively with Prior Plaintiffs, "Plaintiffs").

## EVIDENCE

2. In support of the Motion, the ELFA Intervenors rely upon and incorporate the following:

   a. Affidavit of Edward Tremblay, attached and incorporated herein as Exhibit "A," and

   b. Declaration of Andrew Fishburn attached and incorporated herein as Exhibit "B."

3. ELFA Intervenors also rely upon and incorporate by reference the following declarations previously submitted in this action: Declaration of Celeste M. Embrey [Doc. #12-1], Declaration of Ford Sasser [Doc #12-2], Declaration of Virginia O'Neill [Doc. #12-3], Declaration of Anne M. Balcer [Doc. #44-1], Declaration of Jessica Tsai [Doc. #44-2], Declaration of Christopher L. Williston, VI [Doc. #44-3], Dana Sisk's Declaration in Support of Credit Union Intervenors' Joinder to Emergency Motion for Preliminary Injunction [Doc. #45-1], Jonathan Jared Ihrig's Declaration in Support of Credit Union Intervenors' Joinder to Emergency Motion for Preliminary Injunction [Doc. #45-2], and Jim Phelps's Declaration in Support of Credit Union Intervenors' Joinder to Emergency Motion for Preliminary Injunction [Doc. #45-3].

## FACTUAL BACKGROUND

4. Congress enacted the Act, in part, to bolster and encourage loans made to women-owned, minority-owned, and small businesses. *See* 15 U.S.C. § 1691; 15 U.S.C. § 1691c-2(a).

XL FUNDING, LLC D/B/A AXLE FUNDING, LLC AND
EQUIPMENT LEASING AND FINANCE ASSOCIATION'S
EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

PAGE 2

The Act requires covered financial institutions to gather and report certain data from applications for credit by those businesses. 15 U.S.C. § 1691c-2(e).

5. On March 30, 2023, the CFPB published the Final Rule, which morphs three pages of the Act into more than 880 pages of regulations and commentary, requiring all "covered financial institutions" to develop and implement systems and compliance mechanisms to gather 81 data points including demographic points to be reported. 88 Fed. Reg. 5, 35, 107-108, 545–35, 561, 640, 707-708 (to be codified at 12 C.F.R. § 1002.107); *see also* https://files.consumerfinance.gov./f/documents/cfpb_small-business-lending-data-points-chart.pdf.

6. The Final Rule, issued in the face of a finding that the CFPB's funding structure is unconstitutional, will irreparably harm Axle and other member entities of ELFA, as "covered financial institutions" subject to the Final Rule, and ultimately the women-owned, minority-owned, and small businesses the Act was designed to benefit. Axle and numerous other members of ELFA that qualify as "covered financial institutions" will be required to incur actual and opportunity costs by dedicating more staff and financial resources into government reporting, rather than actual lending, in order to comply with the Final Rule which is invalid and unenforceable.

7. Beyond being harmful to financial institutions and borrowers alike, the Final Rule is unconstitutional and was promulgated in violation of the Administrative Procedure Act (the "APA"). *See Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 642 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 978 (2023) 5 U.S.C. §§ 551–59. This led both to criticism by the Fifth Circuit and entry of the *Order Granting In-Part and Denying In-Part Plaintiffs' Motion for Preliminary Injunction* [Doc. # 25] (the "Injunction"), which enjoins the Final Rule as it pertains to the Original Plaintiffs, only. The party-specific nature of the Injunction necessitates the ELFA

Intervenors' intervention in this action and this Motion in order to protect Axle and numerous other ELFA members who qualify as "covered financial institutions" under the Final Rule.

8.   In an abundance of caution, covered financial institutions, including Axle and other members of ELFA, are implementing the Final Rule and incurring significant costs in furtherance of the same, which may ultimately affect availability and increase the cost of their products and services.

9.   This Court's Injunction currently enjoins the CFPB from implementing and enforcing the Final Rule against only the Original Plaintiffs and their associated membership pending the Supreme Court's determination of *Community Financial*. Axle and many of ELFA's other members qualify as covered financial institutions, but are not members of any other complaining organization (collectively, the "Exposed ELFA Covered Financial Institutions") and, thus, are not protected by the Injunction in its current form. Like the other claimants, Axle and the Exposed ELFA Covered Financial Institutions are subject to irreparable harm arising from their forced compliance with the unconstitutional Final Rule. Accordingly, the ELFA Intervenors seek relief identical to that of the other Plaintiffs.

## ARGUMENTS AND AUTHORITIES

10.   To obtain a preliminary injunction, a movant must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) the threatened injury outweighs any harm that will result if the injunction does not issue; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Moore v. Brown*, 868 F.3d 398, 402–03 (5th Cir. 2017). "Likelihood of success and irreparable injury to the movant are the most significant factors." *La. v. Becerra*, 20 F.4th 260, 262 (5th Cir. 2021). The ELFA Intervenors meet each of the foregoing elements.

**A. The ELFA Intervenors are likely to succeed on the merits of their claim.**

11.     In issuing the Injunction, the Court correctly recognized that the constitutional claim in this case is governed by binding Fifth Circuit precedent. Injunction at 12. In *Community Financial*, the Fifth Circuit held the CFPB's funding structure violates the Appropriations Clause of the Constitution. 51 F.4th at 642. Accordingly, the Fifth Circuit held that the CFPB's 2017 Payday Lending Rule was invalid and should be vacated because "without its unconstitutional funding, [CFPB] lacked any other means to promulgate the rule." *Id.* at 643. Applying that holding to the Final Rule, the Court properly concluded that the Original Plaintiffs were likely to succeed on the merits of their claims because, like the rule at issue in *Community Financial*, the Final Rule was promulgated (and will be enforced) using funds obtained through the CFPB's unconstitutional funding scheme. Injunction at 12.

12.     This is not a novel claim as described by the CFPB; rather, it represents binding Fifth Circuit Precedent. Accordingly, for the same reason, the ELFA Intervenors are likely to succeed on the merits of their claims.[1] The CFPB has seemingly acknowledged such, instead urging the Court to deny other Plaintiffs' requests for injunctive relief for their alleged failure to establish the other applicable elements.[2]

**B. The ELFA Intervenors will be irreparably harmed without an injunction.**

13.     Axle and the Exposed ELFA Covered Financial Institutions, many of whom are not protected by the Injunction, will be irreparably harmed without an injunction because they will (and already have) incurred significant compliance costs that cannot be recouped. Axle and the

---

[1] Similar to the other Plaintiffs, the ELFA Intervenors also claim the Final Rule exceeds CFPB's statutory authority and is arbitrary and capricious under the APA. The ELFA Intervenors are not relying upon those claims for immediate injunctive relief because the unconstitutional funding claim is more than sufficient at this stage, but the ELFA Intervenors intend to fully pursue all of their claims should the CFPB be allowed to proceed.
[2] *See* Doc. # 46, at 3.

other Exposed ELFA Covered Financial Institutions are subject to the Final Rule. Ex. A, ¶ 3; Ex. B, ¶ 6. Without immediate relief, Axle and the other Exposed ELFA Covered Financial Institutions will be forced to spend significant sums preparing to comply with an unlawful Final Rule, which remains subject to intense scrutiny.

14. Along with Axle, the Covered Financial Institutions are immediately beginning to undertake substantial expenses in preparation for implementation of the Final Rule. *Id.* These preparations are more intensive for Axle and many of the Covered Financial Institutions, which lack the historical procedures and relationships that larger financial institutions maintain. Ex. B, ¶ 9. These compliance activities include selecting new computer software systems, training employees, and hiring outside managers and consultants for the implementation of the information collection, report preparation, intra-company segmentation procedures, and overall privacy protection. *Id.*

15. Further, the Final Rule will require Axle and the Exposed ELFA Covered Financial Institutions to devote more resources to gathering, reporting, storing, and firewalling data they collect as required by the Final Rule. Ex. B, ¶ 8–9. Those financial institutions must begin preparing to comply with the Final Rule immediately because of its complexity and the uncertainty surrounding compliance. *Id.* Should they fail to adequately comply with the moving target reflected by the Final Rule, they will be subject to significant scrutiny and penalties.

16. To date, Axle estimates that it has incurred almost $10,000 preparing to comply with the Final Rule. Ex. A, ¶ 7. Axle also estimates that, assuming the CFPB's projected costs for compliance with 13 data points is accurate, it will incur in excess of $180,000 in complying with all the data points in the Final Rule, not including the potential costs of purchasing or licensing systems and software necessary for compliance. *Id*. Axle also anticipates it will be

required to hire at least one additional employee to oversee compliance with the Final Rule, not to mention unknown expenses in consulting with outside experts and attorneys—a heightened cost for Axle, which lacks an in-house attorney. *Id.* This, on top of the CFPB-projected ongoing costs of $83.00 for every application received. 88 Fed. Reg. 35510.

17. The exposure and irreparable harm posed by the Final Rule is not limited to Axle, but extends to the other Exposed ELFA Covered Financial Institutions as well. Ex. B, ¶ 6. Exposed ELFA Covered Financial Institutions of all sizes and across countless industries—many of which are subject to the first compliance deadline of October 2024—will incur (and have incurred) immediate and substantial costs, including one-time implementation costs, recurring compliance expenses, and the costs of hiring additional staff. *Id.* Such estimated costs are far in excess of CFPB's estimates, which, again, focused on costs for obtaining information for the original 13 data points, not the breadth of information contemplated by the Final Rule. Ex. B, ¶ 8–9. If allowed to proceed, the CFPB would vastly expand the categories of information to be reported by lenders, adding nearly 70 additional data points to the original 13 prescribed by the Act and, by extension, increasing costs far beyond projection. 88 Fed. Reg. 35517.

18. Through the Injunction, the Court properly recognized such compliance costs are likely unrecoverable. Injunction at 13–14. "[A] regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." *Tex. v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016) (emphasis in original) (quoting *Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 220-21 (1994) (Scalia, J., concurring in part and in the judgment)); *see also Restaurant Law Ctr. v. United States Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023) ("[T]he nonrecoverable costs of complying with a putatively invalid regulation typically constitute irreparable harm."). This is so because "federal agencies generally enjoy sovereign immunity for any monetary

XL FUNDING, LLC D/B/A AXLE FUNDING, LLC AND
EQUIPMENT LEASING AND FINANCE ASSOCIATION'S
EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

PAGE 7

damages," leaving those subject to regulations with no recourse. *Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021).

19. Further, the Court concluded that nearly identical compliance costs referenced by the Original Plaintiffs are more than *de minimis* and constitute irreparable harm requiring injunctive relief. Injunction at 14. These costs are heightened for Axle and the other Exposed ELFA Covered Financial Institutions because, unlike the more traditional lenders, they have fewer employees, assets, and historical relationships with regulators and the protocols associated with the same. Ex. B, ¶ 9. Much like smaller banks and Axle, the Exposed ELFA Covered Financial Institutions lack the technological infrastructure needed to automate the data collection and the cost of acquiring technology for this purpose (to the extent it even exists) will be more of a burden. These harms are magnified when viewed in connection with the nature of Axle's business—to provide financing for motor vehicle dealers. Such financing requires "very flexible timing and pricing terms, as merchants' inventory needs are dynamic with shifting and sometimes seasonal demand for goods." Letter from Am. Fin. Servs. Assoc. to Rohit Chopra, Director, CFPB (Jan. 6, 2022), https://afsaonline.org/wp-content/uploads/2022/01/AFSA-Comment-Letter-on-DFA-Sec-1071-Jan-6-2022.pdf.

20. The CFPB itself estimates—without justification—that a "Type A" financial institution (those with lower levels of complexity, projected to receive between 100 and 300 applications per year) will incur start-up costs of $59,400.00, plus ongoing costs of $83.00 for every application received. 88 Fed. Reg. 35510. This, coupled with the CFPB's own admission that compliance costs would be significant enough to warrant passing the costs to consumers, meets the "more than de minimis" standard for injunctive relief. *See Restaurant Law Center*, 66 F.4th at 600 (quoting *La. v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022)); 88 Fed. Reg. at 35521.

21. Although Axle and Exposed ELFA Covered Financial Institutions have already incurred—and continue to incur—compliance costs, projected compliance costs are sufficient to establish irreparable harm. *Tex. v. EPA*, 829 F.3d at 433–34; *see also* Injunction at 14. The CFPB's argument to the contrary has already been considered and rejected. Injunction at 14.

22. Beyond the unrecoverable present and future costs associated with compliance, Axle and the Exposed ELFA Covered Financial Institutions will suffer irreparable harm unique from other Plaintiffs. ELFA's member institutions currently face additional costs in the form of lost business opportunities given the competitive advantage given to member-institutions of the Original Plaintiffs, or any other institution protected from the Final Rule. The leasing and finance industry occupied by ELFA's member institutions is highly competitive, and a substantial portion of their business results from referrals by equipment manufacturers, distributors, dealers of their customers to multiple financing providers. ELFA anticipates that said sources of business will be more likely to refer a customer to financial institutions that do not require the applicant to answer an additional set of inquiries. Further, given the costs incurred and anticipated to be incurred, ELFA anticipates that its member institutions will be forced to decrease the availability of loans or modify the terms of existing loans to share costs with their customers.

23. This will cause irreparable harm to the group having to ask for additional information or modify the terms of its loans (Axle and the Exposed ELFA Covered Financial Institutions) and will result in perceived discrimination by applicants, all of which is contrary to the statutory objectives of the CFPB and will likely result in lost customers. Courts recognize that lost customers and goodwill can constitute irreparable harm. *See Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 778 (N.D. Tex. 2012); *Millennium Restaurants Group, Inc. v. City of Dallas*, 181 F.Supp.2d 659, 666 (N.D. Tex. 2001).

**C. The balance of equities favors an injunction applicable to the ELFA Intervenors.**

24. The final two elements of the preliminary injunction analysis "merge when the Government is the opposing party." *Tex. v. U.S.*, 809 F.3d 134, 187 n. 204 (5th Cir. 2015). Once irreparable harm is shown, the government "need[s] to present *powerful* evidence of harm to its interests to prevent [the moving party] from meeting [the third prong of the preliminary injunction inquiry]." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 297 (5th Cir. 2012) (emphasis added).

25. The CFPB and the public have no interest in enforcing an invalid rule; rather, the interest lies in maintaining constitutional structure by staying the Final Rule until the questions concerning the legitimacy of the CFPB's funding structure are resolved. *See BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). In responding to two separate requests for such an injunction, the CFPB has failed to offer any evidence of harm. Injunction at 15.

**D. The intervention of the ELFA Intervenors further supports the need for a nationwide injunction.**

26. The ELFA Intervenors follow a similar path as their predecessors, recognizing that the Court denied the Original Plaintiffs' request for a nationwide injunction, but re-urging the request. ELFA Intervenors join in the suggestion that the circumstances warranting nationwide relief under are satisfied here, as evidenced by intervention of the ELFA Intervenors—the third group to join this action for the purpose of seeking immediate protection from the Final Rule.

27. A legally grounded "uniformity principle" may justify a nationwide injunction. *Becerra*, 20 F.4th at 264. The general purpose of the Act and Final Rule is equal application of

XL FUNDING, LLC D/B/A AXLE FUNDING, LLC AND
EQUIPMENT LEASING AND FINANCE ASSOCIATION'S
EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

PAGE 10

laws to all credit applicants to avoid disparate outcomes and, by extension, collecting data that promotes equal opportunity.

28.   The Final Rule and the Injunction, in its current form, changes the playing field, disproportionately favoring larger banks over smaller financial institutions based upon both their size and trade association membership. Even if extended to each of the parties intervening in this action and their respective members, certain financial institutions would undoubtedly be left without protection. This Court should not require every covered financial institution and related association to intervene or bring suit to obtain the protections provided by the Injunction.

29.   Furthermore, the extension of the compliance date afforded by the Injunction should apply equally to Axle and ELFA's other members, along with any other covered financial institutions or associations, that obtain subsequent injunctive relief. Should the ELFA Intervenors (including ELFA's members) be awarded a similar extension and *Community Financial* ultimately be reversed, varying dates for the beginning of the extension period would further the unbalanced treatment of different financial institutions that did not benefit from the original Injunction. Accordingly, the ELFA Intervenors respectfully request that, in the event of a reversal of *Community Financial*, Defendants be ordered to extend Axle and ELFA's members' deadline for compliance with the requirements of the Final Rule from entry of the Injunction to compensate for the period stayed.

**E. Expedited consideration of the Motion is justified.**

30.   Axle and the other Exposed ELFA Covered Financial Institutions are suffering ongoing, irreparable harm, as the Final Rule became effective on August 29, 2023. Further, the Motion only represents issues previously considered and determined by the Court in granting the Injunction. Thus, ELFA Intervenors respectfully request that the Court order a condensed briefing

schedule as the Court deems appropriate and consider the Motion on an expedited basis.

## CONCLUSION AND REQUEST FOR RELIEF

The actions of the CFPB and the Final Rule blindly impose expansive data collection requirements and draconian reporting burdens on financial institutions that will provide zero or suspect benefit while increasing costs and drastically reducing the availability of financial products and services. Promulgation of the Rule through the CFPB's unconstitutional funding structure is alone sufficient to justify a finding of invalidity and an order of enjoinment. Its wanton disregard of the costs to financial institutions and consumers only worsens matters.

For those reasons, the ELFA Intervenors respectfully request that the Court: (a) grant the Motion; (b) enter a preliminary injunction prohibiting CFPB from enforcing the Final Rule nationwide or, alternatively, as to the Axle and ELFA's other members; and (c) grant the ELFA Intervenors such other and further relief to which they may show themselves justly entitled.

Dated: August 31, 2023          Respectfully Submitted,

PADFIELD & STOUT, LLP
420 Throckmorton Street, Ste. 1210
Fort Worth, TX 76102
817-338-1616 – Telephone
817-338-1610 – Facsimile

/s/ *Alan B. Padfield*
Alan B. Padfield
State Bar I.D. #00784712
abp@padfieldstout.com
Owen C. Babcock
State Bar I.D. #24104585
obabcock@padfieldstout.com
Kelsey N. Linendoll
State Bar I.D. #24120975
klinendoll@padfieldstout.com

*Attorneys for ELFA Intervenors*

## CERTIFICATE OF CONFERENCE

I hereby certify that on August 30, 2023, I conferred with counsel for Defendants. Defendants are opposed to the relief requested. Accordingly, the Motion is presented to the Court for determination.

*/s/ Owen C. Babcock*
Owen C. Babcock

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2023, the foregoing was served upon each appearing party through their respective counsel of record via the Court's electronic filing system.

*/s/ Owen C. Babcock*
Owen C. Babcock