**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**


TEXAS BANKERS ASSOCIATION; RIO )
BANK, MCALLEN, TEXAS; )
AMERICAN BANKERS ASSOCIATION, )
                                  )
            Plaintiffs, )
                                  )
   v. )
                                  )    Case No. 7:23-cv-00144
CONSUMER FINANCIAL )
PROTECTION BUREAU and ROHIT )
CHOPRA, in his official capacity as )
Director of the Consumer Financial )
Protection Bureau, )
                                  )
           Defendants. )


**UNOPPOSED EMERGENCY MOTION FOR LEAVE TO INTERVENE
<u>AND BRIEF IN SUPPORT</u>**

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................ 1

FARM CREDIT INTERVENORS AND THEIR INTERESTS ................................................. 2

RELEVANT BACKGROUND ............................................................................................... 3

ARGUMENT ....................................................................................................................... 7

I.    The Farm Credit Intervenors Are Entitled To Intervene As Of Right In This Action ................................................................................................................... 7

    A.    The Farm Credit Intervenors' Motion Is Timely ................................................... 7

    B.    The Farm Credit Intervenors Have A Strong Interest In The Litigation .............. 9

    C.    Denial Of The Farm Credit Intervenors' Motion To Intervene Would Impede Their Ability To Protect Their Rights And Interests ............................. 11

    D.    The Existing Parties Do Not Adequately Represent The Farm Credit Intervenors' Interests ................................................................................. 11

II.    Alternatively, The Farm Credit Intervenors Should Be Granted Permissive Intervention .......................................................................................................... 13

III.    This Court Should Consider This Motion On An Expedited Basis ................................ 14

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All Coast, LLC v. Shore Offshore Servs.*,
  2023 WL 4993360 (E.D. La. Jan. 25, 2023)....................................................5, 7, 14

*Ceres Gulf v. Cooper*,
  957 F.2d 1199 (5th Cir. 1992) ...........................................................................11

*Cmty. Fin. Servs. Assoc. of Am., Ltd. v. CFPB*,
  51 F.4th 616 (5th Cir. 2022) ..................................................................... *passim*

*Deus v. Allstate Ins. Co.*,
  15 F.3d 506 (5th Cir. 1994) ...............................................................................13

*Edwards v. City of Houston*,
  78 F.3d 983 (5th Cir. 1996) .......................................................................9, 10, 12

*Hamilton v. First Am. Title Co.*,
  2008 WL 3876038 (N.D. Tex. Aug. 15, 2008)...................................................14

*Hancock v. Chi. Title Ins. Co.*,
  2008 WL 4344620 (N.D. Tex. Sept. 23, 2008)..................................................14

*Harris v. City of Balch Springs*,
  33 F. Supp. 3d 730 (N.D. Tex. 2014) ................................................................14

*Hodnett v. Smurfit-Stone Container Enters., Inc.*,
  2010 WL 3522497 (W.D. La. Sept. 2, 2010).....................................................14

*John Doe No. 1 v. Glickman*,
  256 F.3d 371 (5th Cir. 2001) ........................................................................7, 8, 9

*La Union del Pueblo Entero v. Abbott*,
  29 F.4th 299 (5th Cir. 2022) ..............................................................................11

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*,
  884 F.2d 185 (5th Cir. 1989) .............................................................................13

*Miller v. Vilsack*,
  2022 WL 851782 (5th Cir. Mar. 22, 2022)..........................................................7

*Piambino v. Bailey*,
  610 F.2d 1306 (5th Cir. 1980) .............................................................................9

*Sierra Club v. Espy*,
　　18 F.3d 1202 (5th Cir. 1994) ........................................................ *passim*

*Stallworth v. Monsanto Co.*,
　　558 F.2d 257 (5th Cir. 1977) ............................................................8, 9

*Sussman v. Fin. Guards, L.L.C.*,
　　2017 WL 11672895 (E.D. La. Nov. 6, 2017) ................................13, 14

*Texas v. United States*,
　　805 F.3d 653 (5th Cir. 2015) ............................................................7, 9

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n*,
　　834 F.3d 562 (5th Cir. 2016) ......................................................8, 9, 10

**Statutes and Rules**

12 U.S.C. § 2001 ...........................................................................................2

12 U.S.C. § 5497 ...........................................................................................6

12 U.S.C. § 5511 ...........................................................................................3

15 U.S.C. § 1691c-2 .....................................................................................4

**Regulations**

86 Fed. Reg. 56,356 (Oct. 8, 2021) ............................................................4

88 Fed. Reg. 35,150 (May 31, 2023) ...............................................1, 3, 6, 7

**Other Authorities**

Pub. L. No. 111-203, 124 Stat. 1376 (2010) ..............................................3

U.S. Const. art. I, § 9, cl. 7 ..........................................................................6

The Farm Credit Council (the "Council"), Texas Farm Credit ("TFC"), and Capital Farm Credit ("CFC") (collectively, the "Farm Credit Intervenors"), pursuant to Federal Rule of Civil Procedure 24, hereby submit this Unopposed Emergency Motion For Leave To Intervene And Brief In Support, and state as follows:

## INTRODUCTION

In March of 2023, Defendants the Consumer Financial Protection Bureau and Rohit Chopra, in his official capacity as Director (collectively, the "CFPB") issued a final rule (the "Final Rule") under Section 1071 of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), which amends Regulation B governing small business lending under the Equal Credit Opportunity Act ("ECOA"). *Small Business Lending Under the Equal Credit Opportunity Act (Regulation B)*, 88 Fed. Reg. 35,150 (May 31, 2023). The Council's members, including TFC and CFC, provide credit or support the provision of credit to the nation's rural agricultural businesses. The Final Rule imposes substantial burdens on agricultural lenders and the institutions that support them, including by requiring covered lenders to gather and report on 81 separate data points relevant to small business credit applications. Indeed, the Council's members suffer disproportionately from the Final Rule's burdens as compared to other financial institutions, given that the vast majority of the loans that the Council's members provide go to small businesses—such as farmers, ranchers, and agribusinesses—and are covered by the Final Rule. The Council's members, including TFC and CFC, are now incurring and will continue to incur significant costs to ensure compliance with the Final Rule. In light of these burdens, and in view of the Court's recent order staying implementation of the Final Rule as only to the original Plaintiffs in this action, the Farm Credit Intervenors seek leave to intervene to vindicate their interest in enjoining implementation of the Final Rule as it relates to the Council's members.

This Court should allow the Farm Credit Intervenors to intervene as Plaintiffs in this matter, *which request no party opposes*. The Farm Credit Intervenors are entitled to intervene as a matter of right, as they have filed a timely motion seeking to protect the interest of the Council's members, including TFC and CFC, in enjoining implementation of the Final Rule, which interest will be impaired absent intervention and is not adequately protected by the existing parties in this case. Alternatively, the Farm Credit Intervenors respectfully request that the Court grant them permissive intervention, as the questions of law underlying the Farm Credit Intervenors' claims are substantially identical to those underlying the existing parties' claims, and the Farm Credit Intervenors' involvement as a party in this matter will not prejudice the existing parties at all.[1]

## FARM CREDIT INTERVENORS AND THEIR INTERESTS

***Farm Credit Council.*** The Council is the national trade association for the institutions of the Farm Credit System, a nationwide network of customer-owned financial institutions with a specific mission to support rural communities and agriculture. Congress designed the Farm Credit System "to accomplish the objective of improving the income and well-being of American farmers and ranchers by furnishing sound, adequate, and constructive credit and closely related services to them, their cooperatives, and to selected farm-related businesses necessary for efficient farm operations." 12 U.S.C. § 2001(a). As of September 1, 2023, the Farm Credit System included four banks and 67 associations. Together, these institutions provide roughly 45% of all agricultural lending in the United States. Each Farm Credit institution is structured as a cooperative, meaning that each Farm Credit institution is owned by its customers, namely, the farmers, ranchers, farmer-owned cooperatives, and other rural businesses that the Farm Credit System serves. The Council's

---

[1] The Farm Credit Intervenors submit with this Motion a Proposed Complaint In Intervention, attached hereto as Exhibit 1, and a Proposed Emergency Motion For Preliminary Injunction And Brief In Support, attached hereto as Exhibit 2.

members are currently incurring and will continue to incur substantial costs in ensuring that the Farm Credit System is capable of complying with the Final Rule.

**Capital Farm Credit.** CFC is a Farm Credit association and Council member that provides loans to support rural farmers, ranchers, and agribusinesses. CFC is a covered financial institution under the Final Rule, and expects to be a "Tier 2" institution, meaning that CFC's current deadline for beginning data collection pursuant to the Final Rule is April 1, 2025. CFC is currently incurring costs to comply with the Final Rule, including costs related to researching the Final Rule and working with its vendor on collection and reporting methods. CFC projects that it will devote several hundred hours of staff time to its compliance efforts and will expend material sums relating to the Final Rule for outside consulting and/or software or tool licensing.

**Texas Farm Credit.** TFC is a Farm Credit association and Council member that provides loans to support rural farmers, ranchers, and agribusinesses. TFC is a covered financial institution under the Final Rule, and expects to be a "Tier 3" institution, meaning that TFC's current deadline for beginning data collection pursuant to the Final Rule is January 1, 2026. TFC is now incurring costs to comply with the Final Rule, including costs associated with researching the Final Rule's requirements and applications and exploring options regarding the best methods of meeting the Final Rule's data collection and reporting requirements. TFC projects that it will continue incurring similar and substantial compliance costs, including roughly $75,000 in internal staff time and $20,000 in outside consulting and/or licensing.

## RELEVANT BACKGROUND

In 2010, Congress passed Title X of the Dodd-Frank Act and, in so doing, established the CFPB, Pub. L. No. 111-203, 124 Stat. 1376 (2010), which agency has broad statutory authority to regulate individuals and entities that provide financial products and services, *see* 12 U.S.C. § 5511(a). The Dodd-Frank Act contains numerous provisions intended to promote the CFPB's

implementation of fair lending laws.  As relevant here, Section 1071 of the Dodd-Frank Act added a new Section 704B to ECOA that requires banks and other small business lenders to report on a limited universe of data points from credit applications by small businesses, including, for instance, "the number of the application and the date on which the application was received" and "the type and purpose of the loan or other credit being applied for."  15 U.S.C. § 1691c-2(e)(2).  The new ECOA provision then authorizes the CFPB to impose additional reporting requirements that "would aid in fulfilling the purposes of this section."  *Id.* § 1691c-2(e)(2)(H).

On September 1, 2021, the CFPB issued a proposed rule purporting to implement Section 1071 of the Dodd-Frank Act, which significantly expanded the Dodd-Frank Act's short list of enumerated data points.  86 Fed. Reg. 56,356 (Oct. 8, 2021).  Several interested parties, including the Council, submitted comments to the CFPB critiquing the proposed rule as overbroad.  In its comment, the Council detailed the significant costs and burdens the Final Rule would impose on the Council's members, the Farm Credit institutions, in particular.  *See* Ex.3.  Specifically, the Council explained that the proposed rule would cover a larger proportion of Farm Credit lenders than any other category of lenders identified in that rule, given that (1) Farm Credit lenders are statutorily structured primarily to offer agricultural-purpose credit, considered "business credit" under the proposed rule, and (2) the vast majority of Farm Credit borrowers are "small businesses" under the proposed rule's definition of that term.  *Id.* at 3–4.

The Council further explained that agricultural credit is unique within the broader category of "business credit," and that the proposed rule failed to account for the material differences between agricultural credit and business-purpose credit.  *Id.* at 4.  The proposed rule defined "small business" as any business with a "gross annual revenue . . . for its preceding fiscal year [of] $5 million or less."  Reg. B. Proposed § 1002.106(b).  But, as the Council noted, that $5 million

4

threshold was vastly too high as applied to the farming community, and would cover close to *all* farmers who borrow from Farm Credit institutions, rather than those farming enterprises that are actually "small." Ex.3 at 4–6. To that end, the Council urged that in the Farm Credit System, the CFPB's definition of "small business" should align with the FCA's well-settled definition of "small farmer" as a "farmer, rancher, or producer or harvester of aquatic products who normally generates less than \$250,000 in annual gross sales of agricultural or aquatic products." FCA, Bookletter BL-040 (REVISED) at 2 (Aug. 10, 2007).[2] As the Council explained, aligning those definitions would still result in the rule covering roughly 50% of Farm Credit System loans. Ex.3 at 6.

On October 19, 2022, while the proposed rule was still pending, the Fifth Circuit issued its decision in *Community Financial Services Association of America, Ltd. v. CFPB*, 51 F.4th 616, (5th Cir. 2022) ("*Community Financial*"), holding that the CFPB's funding structure violates the U.S. Constitution's Appropriations Clause and the constitutional separation of powers, *id.* at 642. The Fifth Circuit further determined that there was a "linear nexus" between the CFPB's unconstitutional funding structure and the CFPB rule challenged there (namely, the Payday Lending Rule), given that the CFPB relied upon its unlawfully unappropriated funds to promulgate the rule. *Id.* at 643. Thus, the court concluded that the remedy for this constitutional violation was to "rewind[ ]" the CFPB's unlawful action and set aside the challenged rule. *Id.* (quoting *Collins v. Yellen*, 141 S. Ct. 1761, 1801 (2021) (Kagan, J., concurring)). A few months later, on February 27, 2023, the U.S. Supreme Court granted the CFPB's petition for a writ of certiorari to address whether the Fifth Circuit "erred in holding that the statute providing funding to the Consumer Financial Protection Bureau, 12 U.S.C. § 5497, violates the Appropriations Clause, U.S. Const.

---

[2] Available at https://ww3.fca.gov/readingrm/Handbook/_layouts/15/WopiFrame.aspx?sourcedoc={788991C0-7E8B-43AC-ADB4-55C500B85A94}&file=BL-040%20REVISED.docx&action=default

art. I, § 9, cl. 7, and in vacating a regulation promulgated at a time when the CFPB was receiving such funding." Petition for Writ of Certiorari at I, *CFPB v. Cmty. Fin. Servs. Ass'n of Am.*, No. 22-448 (U.S. Nov. 14, 2022). The Court is scheduled to hear oral argument on this case on October 3, 2023.

Despite the Fifth Circuit's decision and the U.S. Supreme Court's grant of certiorari, the CFPB issued the Final Rule on March 30, 2023. 88 Fed. Reg. 35,150. The original Plaintiffs— Texas Bankers Association ("TBA"), Rio Bank, McAllen, Texas ("Rio Bank"), and American Bankers Association ("ABA")—then filed this suit challenging the Final Rule on constitutional and statutory grounds and seeking preliminary and permanent injunctive relief. Dkt.12.

Upon considering the original Plaintiffs' preliminary injunction motion, this Court, on July 31, 2023, entered an order granting an injunction and enjoining the CFPB from implementing and enforcing the Final Rule against the original Plaintiffs and their members pending the Supreme Court's *Community Financial* decision. The Court held that the original Plaintiffs were likely to succeed on the merits of their claim that the Final Rule is invalid because it was promulgated through the CFPB's unconstitutional funding structure, in light of the Fifth Circuit's binding decision saying as much. Dkt.25 at 12 (citing *Community Financial*, 51 F.4th at 643). It also determined that the original Plaintiffs faced a substantial threat of irreparable harm, given the unrecoverable compliance costs they were projected to sustain absent injunctive relief. *Id.* at 13–14. Finally, the Court concluded that the equities and public interest also favored injunctive relief, as the CFPB failed to offer any evidence suggesting that a brief stay of the Final Rule would cause the public any harm. *Id.* at 15. Although the Court concluded that every stay factor weighed in favor of relief, it declined to issue a nationwide injunction and instead tailored its injunctive remedy solely to the original parties in the case. *Id.* at 15–16.

Shortly thereafter, on August 10, 2023, the Council, on behalf of the Farm Credit System generally, delivered a letter to the Honorable Rohit Chopra, Director of the CFPB, asking that the CFPB voluntarily stay the Final Rule as to all covered financial institutions pending the Supreme Court's *Community Financial* decision, including as to the Council's members. Ex.4. The CFPB denied the Council's request via letter dated August 24, 2023, Ex.5, and the Final Rule became effective on August 29, 2023, 88 Fed. Reg. 35,150.

## ARGUMENT

### I.    The Farm Credit Intervenors Are Entitled To Intervene As Of Right In This Action

Under Federal Rule of Civil Procedure 24(a)(2), a non-party is entitled to intervene in a lawsuit as a matter of right if: (1) its motion is timely; (2) it has an interest relating to the property or transaction that forms the basis of the controversy in the litigation; (3) it is so situated that disposing of the litigation may as a practical matter impair or impede its ability to protect its interest; and (4) its interest is not adequately represented by existing parties. *John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001). Courts "liberally construe[ ]" this test and permit "intervention where no one would be hurt and the greater justice could be attained." *Texas v. United States*, 805 F.3d 653, 656–57 (5th Cir. 2015) (citation omitted). Put another way, the test for mandatory intervention is "a flexible one, which focuses on the particular facts and circumstances" and is "measured by a practical rather than technical yardstick." *Miller v. Vilsack*, 2022 WL 851782, at *2 (5th Cir. Mar. 22, 2022) (citing *Entergy Gulf States La., L.L.C. v. EPA*, 817 F.3d 198, 203 (5th Cir. 2016)).

### A.    The Farm Credit Intervenors' Motion Is Timely

Courts assess timeliness by looking first to "[t]he length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994);

*Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977). The date on which the proposed intervenor "became aware of the pendency of the action" is immaterial. *Espy*, 18 F.3d at 1206. The relevant question is when the proposed intervenor first learned that the existing parties to the litigation would not adequately protect its interests. *See id.* ("When the agency announced on June 24, 1993, that it would apply the preliminary injunction to all timber sales (not merely the nine sales challenged by the plaintiffs), movants became aware that the Forest Service would not protect their interests."). Thereafter, courts assess the "prejudice" that the existing parties will suffer if intervention is granted, and that the movant will suffer if intervention is denied. *Id.* at 1205; *Stallworth*, 558 F.2d at 264–66; *see Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n*, 834 F.3d 562, 565–66 (5th Cir. 2016). The inquiry is "contextual," and "absolute measures of timeliness should be ignored." *Espy*, 18 F.3d at 1205 (citation omitted).

Here, the Farm Credit Intervenors' intervention motion is timely. The Farm Credit Intervenors filed their intervention motion only 15 days after the CFPB notified the Council that it would not voluntarily grant the Council's request to extend this Court's stay to all covered financial institutions, including the Council's members, *Glickman*, 256 F.3d at 377; *Stallworth*, 558 F.2d at 264–66, which request was a reasonable effort to avoid litigation. Once the CFPB confirmed that it would not be offering the Farm Credit System any relief, the Farm Credit Intervenors timely submitted these intervention papers. *See Espy*, 18 F.3d at 1206. Not until the CFPB denied the Council's request for a stay did it become apparent that the Farm Credit Intervenors would need to participate in this case to protect themselves from suffering further compliance costs associated with the Final Rule. *See id.*; *Glickman*, 256 F.3d at 377. Thus, this Motion, filed shortly after the Farm Credit Intervenors learned of their need to participate in this

case, is timely. *See Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996) (37 and 47 days, respectively, was timely); *Glickman*, 256 F.3d at 377 (one month was timely).

Further, the existing parties and intervening parties will suffer no prejudice from the Farm Credit Intervenors' intervention, whereas the Council's members, including TFC and CFC, suffer substantial prejudice absent relief. *Stallworth*, 558 F.2d at 265. This case is still in its early stages, and the intervening parties' preliminary injunction motions remain pending on the docket. *See Espy*, 18 F.3d at 1206; *see also Wal-Mart Stores, Inc.*, 834 F.3d at 565–66. Indeed, Intervenors XL Funding, LLC and the Equipment Leasing and Finance Association filed their preliminary injunction mere days ago, on August 31, 2023, *see* Dkt.54, and Defendants have yet to file a response. By contrast, and as explained further below, *see infra* pp.9–11, the costs of complying with the Final Rule are burdening and will continue to burden the Council's members, including TFC and CFC, if the Farm Credit Intervenors are not granted leave to intervene in this action to advance their interest in enjoining implementation of the Final Rule.

### B.    The Farm Credit Intervenors Have A Strong Interest In The Litigation

The second mandatory intervention factor asks whether the proposed intervenor has "an 'interest' in the subject matter of the action." *Espy*, 18 F.3d at 1207 (citation omitted). A proposed intervenor satisfies this prong if its interests or the interests of its members are "direct, substantial, [and] legally protectable." *Id.*; *Texas*, 805 F.3d at 657; *Piambino v. Bailey*, 610 F.2d 1306, 1321 (5th Cir. 1980).

Here, each of the Farm Credit Intervenors has a "direct" and "substantial" legal interest in this litigation, and so meet the second prong of the mandatory intervention test. The Council has a strong interest in obtaining relief from the Final Rule for its members—that is, the Farm Credit institutions—the vast majority of which of are covered financial institutions and are not members of the ABA or TBA, and so are not protected by the Court's preliminary injunction order. The

Final Rule covers every single Farm Credit System lender, as well as nearly all of each Farm Credit System lender's loans. As such, the Farm Credit System is currently expending and projects to expend substantial financial resources in ensuring each of its covered institutions is capable of complying with the Final Rule. The Council thus has a "direct" and "substantial" interest in seeking relief from the Final Rule on behalf of its members, the Farm Credit institutions, most of which must comply with the Final Rule and all of which will share in the costs of ensuring compliance with the Final Rule. *Edwards*, 78 F.3d at 989 & n.4 (groups representing the interests of their members, namely, "white, female, and Asian–American police officers" and "members of the Houston airport and parks police agencies," had interest in employment discrimination action); *Wal-Mart Stores, Inc.*, 834 F.3d at 569 (trade association had legally protectable interest in defending regulatory scheme); *Espy*, 18 F.3d at 1207 (timber trade associations had interest in existing timber contracts threatened by proposed agency regulation).

Similarly, CFC and TFC have concrete and substantial interests in this litigation, which interests are indicative of those shared by the Council's members more generally. CFC originated a sufficient number of loans that would likely qualify as "covered credit transactions" for "small businesses" in 2022 and 2023 to be subject to the Final Rule's "Tier 2" compliance deadline of April 1, 2025. TFC, in turn, originated a sufficient number of loans to likely be subject to the Final Rule's "Tier 3" compliance deadline of January 1, 2026. CFC and TFC are already incurring costs to ensure that they will be able to comply with these deadlines, including costs associated with dedicating staff time to analyzing and understanding the Final Rule's extensive requirements. They expect, moreover, to continue incurring significant costs over the next several months and years, as they continue their efforts to, among other things, train staff to gather, analyze, and submit the required data, and work with vendors and outside consultants. The Farm Credit Intervenors

have a strong interest in protecting themselves from these compliance costs and obtaining relief from complying with the Final Rule, including a judgment declaring that the Final Rule is unenforceable.

### C. Denial Of The Farm Credit Intervenors' Motion To Intervene Would Impede Their Ability To Protect Their Rights And Interests

The third element of the mandatory intervention test requires a movant to show that disposition of the action may, as a practical matter, impede the movant's ability to protect its interests. *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 307 (5th Cir. 2022).

Here, this Court's denial of the Farm Credit Intervenors' Motion will substantially impair their interests because the outcome of the Farm Credit Intervenors' intervention in this litigation would change the compliance obligations for the Council's members, including TFC, CFC, and the Farm Credit institutions. *See Espy*, 18 F.2d at 1207 ("The issue of whether the NFMA bars even-aged logging affects the movants and, because of the precedential effect of the district court's decision, an adverse resolution of the action would impair their ability to protect their interest."). Further, and as explained, the Farm Credit Intervenors have a substantial interest in enjoining the Final Rule's implementation with respect to the Council's members, including TFC and CFC, to protect the Farm Credit System from incurring the substantial costs of complying with the Final Rule, *see supra* pp.9–10, which interest will be impaired absent intervention.

### D. The Existing Parties Do Not Adequately Represent The Farm Credit Intervenors' Interests

For the final mandatory intervention factor, courts assess whether the existing parties adequately represent the movant's interests. *Edwards*, 78 F.3d at 1005. The movant bears only a "minimal" burden of showing that "representation 'may be' inadequate." *Espy*, 18 F.3d at 1207 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). Courts will presume that a movant's interests are adequately represented where, first, an existing party is a

governmental body or officer charged by law with representing the movant's interests, or, second, the movant has the same ultimate objective as an existing party. *Edwards*, 78 F.3d at 1005.

As an initial matter, the presumption of adequate representation does not apply here. None of the existing parties to the litigation are charged by law with representing the Farm Credit Intervenors' interests. *See id.* And although there is some overlap between the existing Plaintiffs' and the Farm Credit Intervenors' objectives—in that all of these entities seek a determination that the Final Rule is unenforceable—the Farm Credit Intervenors' ultimate objective is distinct: they seek their own injunction staying implementation of the Final Rule as to the Council's members, including TFC, CFC, and the Farm Credit institutions.

Regardless, the Farm Credit Intervenors meet their "minimal" burden of showing that the existing parties cannot adequately represent their interests. *See id.* TFC, CFC, and the vast majority of the Farm Credit institutions are not members of the ABA or TBA, so the preliminary injunction entered by the Court in this case does not apply to them. The Court has already denied the original Plaintiffs' request for a nationwide injunction, Dkt.25, and the existing Plaintiffs cannot seek a preliminary injunction on the Farm Credit Intervenors' behalf. Further, given the nature of the Farm Credit System, the Council and its members suffer unique challenges associated with the Final Rule. As noted above, Farm Credit System lenders provide loans almost exclusively to small, rural businesses, meaning that the Farm Credit System is disproportionately affected by the Final Rule's burdensome reporting and disclosure requirements. *See Espy*, 18 F.3d at 1207–08 (adequacy element met where the proposed intervenors' interests did not strictly align with those of the existing parties). Accordingly, the Farm Credit Intervenors are the only entities that can adequately represent their interests and the interests of the Farm Credit System.

## II.   Alternatively, The Farm Credit Intervenors Should Be Granted Permissive Intervention

If the Court determines that the Farm Credit Intervenors are not entitled to intervene as of right, the Farm Credit Intervenors respectfully ask that the Court grant them permissive intervention.  Rule 24(b)(2) allows for permission intervention when the movant's application is timely, its claim and the main action share common questions of law or fact, and intervention will not unduly delay the litigation or prejudice adjudication of the existing parties' rights.  *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989).  Further, given that the goal of permissive intervention is to "prevent multiple lawsuits where common questions of law or fact are involved," *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 525 (5th Cir. 1994) (citation omitted), the court should also "consider whether permissive intervention will achieve judicial economy," *Sussman v. Fin. Guards, L.L.C.*, 2017 WL 11672895, at *3 (E.D. La. Nov. 6, 2017) (citation omitted).

The Farm Credit Intervenors meet each of these factors here.  First, the Farm Credit Intervenors' Motion is timely filed, for the reasons explained above.  *See supra* Section I.A.  Second, the Farm Credit Intervenors' claims present substantially the same questions of law as the claims asserted by the original Plaintiffs, including the claim that the Final Rule is unconstitutional per the Fifth Circuit's decision in *Community Financial*.  *See* Ex.1 (Farm Credit Intervenors' Proposed Complaint).  Third, intervention will not unduly delay or otherwise prejudice the existing parties, where the case is still in its early stages and several preliminary injunction motions filed by intervening parties remain pending before the Court.  *See supra* Section I.A.  And, finally, interests of judicial economy also support permissive intervention.  If the Court does not permit the Farm Credit Intervenors to intervene in this case, they will be forced to file a separate—but largely identical—federal action for injunctive relief in order to protect the Council's members,

including TFC, CFC, and the Farm Credit institutions generally, from incurring the substantial costs associated with ensuring the Farm Credit System is capable of complying with the Final Rule. *Sussman*, 2017 WL 11672895, at *3; *Hamilton v. First Am. Title Co.*, 2008 WL 3876038, at *5 (N.D. Tex. Aug. 15, 2008) ("For all parties to the suit and for the sake of judicial economy, the most efficient result is to grant the motion to intervene."). Accordingly, "permitting intervention" will "discourage duplicative litigation," which fact also supports a grant of the Farm Credit Intervenors' Motion. *Hancock v. Chi. Title Ins. Co.*, 2008 WL 4344620, at *3 (N.D. Tex. Sept. 23, 2008).

### III.     This Court Should Consider This Motion On An Expedited Basis

Finally, the Farm Credit Intervenors respectfully request that the Court consider their Unopposed Emergency Motion To Intervene on an expedited basis. Courts have "inherent authority" to ensure the "orderly and expeditious disposition of cases" on their dockets, *Harris v. City of Balch Springs*, 33 F. Supp. 3d 730, 733–34 (N.D. Tex. 2014) (quoting *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995)), and courts regularly grant requests to expedite motion practice where doing so serves the interests of justice, *see, e.g.*, *All Coast, LLC v. Shore Offshore Servs.*, 2023 WL 4993360, at *1–2 (E.D. La. Jan. 25, 2023) (granting request to expedite consideration of motion to compel deposition); *Hodnett v. Smurfit-Stone Container Enters., Inc.*, 2010 WL 3522497, at *1 (W.D. La. Sept. 2, 2010) (granting request to expedite consideration of motion for a protective order). This Court's local rules, moreover, expressly provide for expedited motion practice, *see* Judge Crane's Court Procedures VII(3).

Expedited consideration is appropriate here, where the Council's members, including TFC, CFC, and the Farm Credit institutions, are currently incurring unrecoverable costs to ensure that all covered institutions are capable of complying with the Final Rule by the relevant compliance deadlines. The Final Rule has already gone into effect, and the CFPB has advised the Council that

it will not be voluntarily extending this Court's narrow preliminary injunction order to all institutions covered under the Final Rule pending the Supreme Court's *Community Financial* decision, including to the Council's members. That means the Farm Credit System is now engaged in compliance efforts and stands to incur thousands upon thousands in expenses associated with those efforts, all while other institutions have been granted injunctive relief. Further, no original or intervening party will be prejudiced if this Court considers the Farm Credit Intervenors' intervention motion on an expedited basis, as all parties have expressly confirmed that they do not oppose the Farm Credit Intervenors' intervention in this case.

## **CONCLUSION**

For the foregoing reasons, the Farm Credit Intervenors respectfully request that this Court grant their request to intervene as of right in this action under Rule 24(a)(2) or, alternatively, grant them permissive intervention under Rule 24(b). The Farm Credit Intervenors request, further, that the Court consider their Unopposed Emergency Motion To Intervene on an expedited basis.

Dated: September 8, 2023

Respectfully submitted,

*/s/ Daniel G. Gurwitz*
Daniel G. Gurwitz
State Bar No. 00787608
Southern Dist. ID No. 16895
Email: dgurwitz@atlashall.com

Attorney in charge for Farm Credit Council,
Texas Farm Credit, and Capital Farm Credit

OF COUNSEL:
Atlas, Hall & Rodriguez, LLP
818 Pecan Blvd.
P.O. Box 3725
McAllen, Texas 78501/ 78502-3725
Tel: 956-682-5501
Fax: 956-686-6109

Misha Tseytlin (pending *pro hac vice*)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(312) 759-5947
misha.tseytlin@troutman.com

Joseph J. Reilly (pending *pro hac vice*)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
401 9th Street NW, Suite 1000
Washington, DC 20004
(202) 274-2908
joseph.reilly@troutman.com

## **CERTIFICATE OF CONFERENCE**

I hereby certify that on September 6–8, 2023, counsel for Proposed Intervenor-Plaintiffs Farm Credit Council, Texas Farm Credit, and Capital Farm Credit conferred with counsel for each of the existing Plaintiffs and counsel for Defendants.  Each advised they are unopposed to the Farm Credit Intervenors' motion for leave to intervene.

*/s/ Daniel G. Gurwitz*
Daniel G. Gurwitz

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2023, the foregoing was served upon all parties through their respective counsel of record via the Court's electronic filing system.

*/s/ Daniel G. Gurwitz*
Daniel G. Gurwitz