IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| TEXAS BANKERS ASSOCIATION, *et al.*,<br><br>                  Plaintiffs,<br><br>    v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*,<br><br>                  Defendants. | Case No. 7:23-cv-00144 |

**DEFENDANTS' OPPOSITION TO INTERVENORS' MOTION
FOR PRELIMINARY INJUNCTION**

The Court should deny the motion for a preliminary injunction filed by XL Funding, LLC D/B/A Axle Funding ("Axle") and the Equipment Leasing and Finance Association ("ELFA") (collectively, "ELFA Intervenors"), ECF No. 54. In the alternative, the Court should deny ELFA Intervenors' requests to order relief as to non-parties and to broaden the conduct covered by the preliminary injunction.

    **1. Intervenors have not met their burden to show that they are entitled to the extraordinary relief they seek.**

The Bureau again recognizes that the Court recently adjudicated a similar request for preliminary relief and concluded that the original Plaintiffs in this action had met their burden to show that such relief was warranted. *See* ECF No. 25; *see generally Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (describing four-factor test for preliminary relief). The Bureau respectfully submits, however, that ELFA Intervenors have not done so and, in particular, have not provided specific evidence of compliance costs that they are required to incur now, as opposed to years down the road. *See, e.g., Texas v. Biden*, No. 3:21-cv-309, 2022 WL 18436750, at *1 (S.D. Tex. Oct. 20, 2022) (To show irreparable harm, the party must

demonstrate "that the injury is *imminent*.") (emphasis added) (quoting *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986)). For the same reasons that the Court should deny the pending motion of the first set of intervenors for a preliminary injunction, ECF No. 44, the Court should deny this motion.[1]

Like some of the individual bank and credit union intervenors, Axle appears to be a "Tier 3" institution that will not be required to begin complying with the Small Business Lending Rule for well over two years, on January 1, 2026. *See* Aff. of Edward Tremblay ¶ 4, ECF No. 54-1 ("Tremblay Aff.") (estimating that Axle will originate more than 100 covered credit transactions in 2023).

Yet Axle says nothing to establish what if any expenses it is actually required to incur at this time. And it specifically seeks to rely on costs it will not incur until 2026 and even later. Tremblay Aff. ¶ 8 (citing total cost to come into compliance by 2026 as well as costs of actually complying with the Rule); *see also* ELFA Mot. at 7 (again citing ongoing costs to comply with the Rule, which for Axle would not begin until January 2026). Such costs do not establish an entitlement to extraordinary relief in 2023. Similarly, ELFA offers the conclusory "understand[ing]"—supported by no specific evidence—that some of its member institutions have taken "similar measures" as Axle "and incurred costs associated with the same." Decl. of Andrew Fishburn ¶ 6, ECF No. 54-2 ("Fishburn Decl."). It does not, however, establish what

---

[1] The U.S. District Court for the Eastern District of Kentucky recently enjoined the Bureau "from enforcing the Small Business Lending Rule until the Supreme Court issues an opinion ruling that the funding structure of the CFPB is constitutional." *The Monticello Banking Co. v. CFPB*, No. 6:23-cv-00148, 2023 WL 5983829, at *3 (E.D. Ky. Sept. 14, 2023). That order does not appear to moot the requests for relief by intervenors in this case, since intervenors seek not only an injunction against enforcement of the Rule but also to stay and toll their future deadlines for compliance. As explained below, ELFA intervenors have not demonstrated that they are entitled to such relief.

2

expenses any such institutions were actually required to incur now. While ELFA vaguely asserts that "many" of its more than 100 member institutions who will be covered by the Rule "are going to be subject to the first compliance deadline," Fishburn Decl. ¶ 8, ELFA does not specifically identify any member institution or establish with specific evidence any particular expense that such member is required to incur at this time.[2]

In addition, the Bureau respectfully disagrees with the Court's prior conclusion that "the balance of harms and public interest favor a stay." ECF No. 25 at 15. The copious evidence before the Bureau when it issued the Rule, and that the Bureau described at length in the preamble to the Rule, supports the Bureau's view that the Rule as well as the statutory requirements it implements will produce significant benefits for small businesses, the communities they serve, and lenders. *See, e.g.*, 88 Fed. Reg. at 35503-07; *contra* ELFA Mot. at 10 (alleging that no evidence supports the Bureau's arguments on this factor). The public interest does not favor further delay to those requirements taking effect. Moreover, as the Bureau has shown, ELFA Intervenors' requested delay would postpone compliance not only with the Rule but with the statutory requirements that the Rule implements, requirements that no party to this case has suggested (or could suggest) are invalid. *Cf. Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) ("When a statute is enjoined,

---

[2] ELFA Intervenors argue that "projected compliance costs are sufficient to establish irreparable harm," citing *Texas v. EPA*, 829 F.3d 405, 433-34 (5th Cir. 2016), and suggest that this means they are not required to establish that their projected costs are imminent. ECF No. 54 at 9. As the Bureau has explained (and ELFA Intervenors simply ignore), the petitioners in that case established through specific evidence that "the regulated companies *will have to begin [incurring these costs] almost immediately*" "[b]ecause plant emission controls take several years to install." *Texas v. EPA*, 829 F.3d at 433 (emphasis added); *see also, e.g.*, Pet'rs' Exs. at 74 (¶ 31), *Texas v. EPA*, No. 16-60118 (Doc. 141) (declaration explaining why compliance costs were imminent). ELFA Intervenors have not made a similar showing.

3

the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws."). ELFA Intervenors offer no response.

Like the original Plaintiffs, ELFA Intervenors' argument that they are likely to succeed on the merits turns entirely on the counterintuitive claim that Congress violated the Appropriations Clause when it passed a statute appropriating money for the Bureau's operations. As before, the Bureau recognizes that the Court is bound by the Fifth Circuit's ruling on this issue in *Community Financial Services Ass'n of America, Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022), *cert. granted*, No. 22-448 (Feb. 27, 2023), but maintains that *CFSA* was wrongly decided. In any event, merely establishing a likelihood of success on the merits is not enough, on its own, to justify preliminary relief. *See, e.g.*, *Winter*, 555 U.S. at 21-24.

## 2. The Court correctly limited the scope of its preliminary relief.

The original Plaintiffs requested a universal injunction that would apply beyond the parties to this case. The Court correctly determined that a more limited injunction was appropriate and stayed the Rule only with respect to Plaintiffs and their members.

Although ELFA Intervenors (and the prior set of intervenors) now ask the Court to reconsider that ruling, they provide no compelling reason to do so. Intervenors extrapolate from the Fifth Circuit's discussion of a "constitutional uniformity principle" in immigration law, *see Louisiana v. Becerra*, 20 F.4th 260, 264 (5th Cir. 2021), a more general "uniformity principle" embedded in Section 1071 of the Dodd-Frank Act. ECF No. 44 at 11-12. But ELFA Intervenors fail to identify anything unique about Section 1071 in this regard; most laws have some general application, including the rule that was at issue in *Becerra* and that the Fifth Circuit nonetheless concluded should be enjoined as to certain covered entities but not others. *Becerra*, 20 F.4th at 263-64. While ELFA Intervenors also claim that the fact they have intervened as parties in this

4

case shows that preliminary relief should be extended to non-parties, ECF No. 54 at 10, that simply does not follow. As before, "[p]rinciples of judicial restraint" counsel against granting relief to non-parties. *Becerra*, 20 F.4th at 263.

### 3. The Court should deny Intervenors' request to broaden the conduct covered by the preliminary injunction.

Like the first set of intervenors, ELFA Intervenors include a request in their proposed order that would command Defendants to "immediately cease *all* implementation or enforcement of the Final Rule." ECF No. 54-3 at 2 (emphasis added). In prior briefing, the Bureau pointed out that this relief would sweep in more conduct than the Court's existing order and was neither necessary nor appropriate to address the intervenors' alleged injuries. ECF No. 46 at 4-6. The Bureau further noted that the intervenors had made no effort to show that the Court's existing order should be broadened in the way they appeared to be proposing—and, indeed, that they had not even mentioned this relief in their motion. In response, those intervenors expressly disclaimed any request for an order barring "*all* implementation" of the Rule, explaining instead that they simply wanted "the same preliminary relief the Court awarded to the original Plaintiffs" (and that did not include this language). ECF No. 48 at 4; *accord* ECF No. 47 at 5-6.

Seemingly oblivious to all of this, ELFA Intervenors include the very same language in their proposed order that the first set of intervenors declined to defend. Like the previous intervenors, ELFA Intervenors do not try to explain why this broader relief would be warranted. As the Bureau has explained, it is not. The Court should deny ELFA Intervenors' request.

Dated:  September 21, 2023　　　　　　　　Respectfully submitted,

Seth Frotman
  *General Counsel*

Steven Y. Bressler
  *Deputy General Counsel*

Christopher Deal
  *Assistant General Counsel*

<u>*/s/ Kevin E. Friedl*</u>
Kevin E. Friedl (NY #5240080)
Attorney-in-Charge
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
(202) 435-9268
kevin.friedl@cfpb.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been filed on September 21, 2023 and served on all parties via the CM/ECF system.

/s/ Kevin E. Friedl
Kevin E. Friedl