UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| TEXAS BANKERS ASSOCIATION, *et al.* § § § *Plaintiffs*, § § v. § § CONSUMER FINANCIAL PROTECTION § BUREAU, *et al*. § § *Defendants*. § | Case No. 7:23-cv-00144 |

**XL FUNDING, LLC D/B/A AXLE FUNDING, LLC AND EQUIPMENT LEASING AND FINANCE ASSOCIATION'S REPLY IN SUPPORT OF <u>EMERGENCY MOTION FOR PRELIMINARY INJUNCTION</u>**

TO THE HONORABLE CHIEF UNITED STATES DISTRICT JUDGE:

XL FUNDING, LLC d/b/a Axle Funding, LLC ("Axle") and the Equipment Leasing and Finance Association ("ELFA," collectively with Axle, the "ELFA Intervenors") file this Reply in Support of Emergency Motion for Preliminary Injunction, and in support thereof would respectfully show the Court as follows:

<u>INTRODUCTION</u>

1.   Through Defendants' Opposition to Intervenors' Motion for Preliminary Injunction [Doc. # 60) (the "Opposition"), the Consumer Financial Protection Bureau and Rohit Chopra, in his official capacity as Director of the Consumer Financial Protection Bureau (collectively, the "CFPB") oppose the ELFA Intervenors' request for entry of a preliminary injunction stemming from the Fifth Circuit's ruling in *Community Financial Services Ass'n of Am., Ltd. V. CFPB*, 51 F. 4th 616 (5th Cir. 2022), cert granted, 215 L. Ed. 2d 104, 143 S. Ct. 978 (2023). In doing so, the CFPB overlooks the specific evidence provided by the ELFA Intervenors

XL FUNDING, LLC D/B/A AXLE FUNDING, LLC AND
EQUIPMENT LEASING AND FINANCE ASSOCIATION'S
REPLY IN SUPPORT OF EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

PAGE 1

in support of their Emergency Motion for Preliminary Injunction [Doc. # 54] (the "Motion"), its own undeniable knowledge, and the root of the constitutional violation identified by the Fifth Circuit. Such efforts are misguided and provide further support for entry of the injunction requested by the ELFA Intervenors.

## ARGUMENTS AND AUTHORITIES

**A.  The ELFA Intervenors have Shown they are Entitled to Injunctive Relief.**

2. To obtain a preliminary injunction, a movant must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) the threatened injury outweighs any harm that will result if the injunction does not issue; and (4) an injunction is in the public interest. *State v. Biden*, No. 23-30445, 2023 WL 5821788, at *12 (5th Cir. Sept. 8, 2023) (citing *Atchafalaya Basinkeeper v. U.S. Army Corps of Eng'rs*, 894 F.3d 692, 696 (5th Cir. 2010)).  The ELFA Intervenors meet each of the foregoing elements; however, the CFPB urges the Court to deny injunctive relief, citing the ELFA Intervenors alleged failure to: (1) provide specific evidence of immediate compliance costs; and (2) establish that the balance of harms and public interest favor the requested injunctive relief. Opposition at 1–4.

   i.  <u>The ELFA Intervenors have provided ample evidence of irreparable harm.</u>

3. While conceding *Community Financial* applies and, by extension, that the ELFA Intervenors have thereby established a likelihood of success on the merits, the CFPB argues that neither Axle nor ELFA have provided "specific evidence" of current, irreparable harm. Opposition at 1–2. Yet, the ELFA Intervenors have presented evidence and in fact it is the CFPB that provides no evidence to contradict the support submitted by the ELFA Intervenors.

XL FUNDING, LLC D/B/A AXLE FUNDING, LLC AND
EQUIPMENT LEASING AND FINANCE ASSOCIATION'S
REPLY IN SUPPORT OF EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

PAGE 2

4. In support of the Motion, the Vice President of Collection/Compliance of Axle, Edward Tremblay, testified that, as of August 30, 2023, Axle had "incurred almost $10,000.00 in preparing to comply with the Final Rule." *See* Aff. Of Edward Tremblay ¶8, Doc. # 54-1 ("Axle Aff."). Further, Mr. Tremblay affirmed that Axle anticipates it will incur an additional $180,000.00 by its projected compliance date and will be forced to hire at least one employee to ensure compliance. *Id*. ELFA provides similar support, affirming that many of its member financial institutions must meet the first compliance deadline of October 2024 and have taken measures similar to Axle and incurred costs associated with the same. *See* Decl. of Andrew Fishburn ¶6, Doc. # 54-2 ("ELFA Decl.").

5. The CFPB ignores the ELFA Intervenors evidence and its own projections. *See* Opposition at 1–3. The CFPB estimated—without justification and based upon the original 13 datapoints—that a "Type A" financial institution will incur start-up costs of $59,400.00, plus ongoing costs of $83.00 for every application received. 88 Fed. Reg. 35510. It cannot now claim, in the face of its "projections" and the ELFA Intervenors' evidence, that the support offered by the ELFA Intervenors is insufficient to justify an award of injunctive relief. Given the extensive pages of rules and guidance promulgated by the CFPB, even covered financial institutions with a January 1, 2026 compliance date have no choice but to immediately take measures to ensure compliance, beginning with deciphering such "guidance."

6. Regardless, the Court has already rejected a similar argument. In the Order Granting In-Part and Denying In-Part Plaintiffs' Motion for Preliminary Injunction [Doc. #25] (the "Injunction"), the Court opined that the "projected compliance costs," if more than *de minimis*, constitute irreparable harm. Injunction at 14. The costs *actually* incurred by Axle and other member institutions of ELFA are more than *de minimis*, as are the substantial projected

XL FUNDING, LLC D/B/A AXLE FUNDING, LLC AND
EQUIPMENT LEASING AND FINANCE ASSOCIATION'S
REPLY IN SUPPORT OF EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

PAGE 3

costs each will incur in preparing for compliance with the rule improperly promulgated by the CFPB.

    ii. <u>The balance of equities favors a stay.</u>

    7.    Acknowledging that the Court has already found that the balance of harms and public interest favor a stay, the CFPB makes another attempt to re-frame the analysis, citing its own flawed projections to argue that Rule "will produce significant benefits for small businesses, the communities they serve, and ***lenders***." Opposition at 3 (emphasis added).

    8.    Once a court has "concluded that [the movant's] harm is irreparable . . . [the nonmovant] would need to present powerful evidence of harm to its interests to prevent [the movant] from meeting this requirement." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 297 (5th Cir. 2012). "'[T]here is generally no public interest in the perpetuation of unlawful agency action.'" *La. v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022) (quoting *State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021)); *see also BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021).

    9.    Assuming, *arguendo*, the Rule somehow overcomes the unlawful nature of the CFPB's structure and the public's lack of interest in the perpetuation of unlawful agency action under *Community Financial*, the evidence before the Court supports the Court's initial determination that the balance of harms favors a stay. *See* Injunction at 15.

    10.    Two different courts sitting in jurisdictions across the country from one another have found an injunction necessary. See Injunction*; see also The Monticello Banking Co. v. CFPB*, No. 6:23-cv-00148, 2023 WL 5983829, at *3 (E.D. Ky. Sept. 14, 2023) (the "Kentucky Suit"). In this case alone, five different lenders and nine separate associations spanning various industries have appeared to oppose the Rule, submitting eleven affidavits and declarations

voicing their concerns. This, in addition to the countless other associations and institutions across the country combatting (or contemplating combatting, if necessary) implementation of the Rule, which the CFPB waited 13 years to enact.

11.     The CFPB has offered no evidence in response, other than a vague citation to its own self-promulgated guidance and determinations based upon unspecified, "copious evidence."[1] Opposition at 3. Such support does not reach the level of "powerful evidence," nor should it sway the Court from its prior ruling.[2]

**B.  A Nationwide Injunction is Needed Now, More than Ever.**

12.     Contrary to the CFPB's assertions, the ELFA Intervenors, and each of the institutions and associations intervening in this action and the Kentucky Suit, have demonstrated that nationwide relief is not only appropriate, but necessary.

13.     The CFPB first argues there is nothing unique about Section 1071's uniformity principle and that many laws have "some general application." Opposition at 4. However, absent a nationwide injunction or every "covered financial institution" intervening individually or through an association, there will be no uniformity in the Rule, leaving countless financial institutions in a state of limbo. Meanwhile, the Rule itself abolishes true uniformity by limiting the application based upon size and trade of the covered institution. the need for uniformity does not come solely from the fact that the Rule has nationwide scope. Limiting the scope to the parties in this case will only magnify the lack of uniformity and result in further litigation on a clear issue

---

[1] It bears noting that, to the extent the CFPB contends it maintains "copious evidence" to support the alleged benefits of the Rule, it must also have actual knowledge of the identity of ELFA member associations subject to the October 2024 compliance date.

[2] The CFPB also contends extension of the injunction would postpone compliance with the statutory requirements the Rule implements; however, no such request has yet been made.

that will be determined within an established timeframe—the constitutionality of the CFPB's funding structure.

14. The CFPB then argues that the ELFA Intervenors' mere intervention is insufficient to justify a nationwide injunction. However, the fact remains that, as explained in the Motion, the Injunction, in its current form, changes the playing field, disproportionately favoring larger banks over smaller institutions based upon size, trade membership, and industry. Motion at ¶ 28. The CFPB neither denies this fact nor offers evidence to the contrary.

**C. The Request for a Stay of Implementation and Enforcement is Implied and Necessary.**

15. Finally, the CFPB raises the same non-issue concerning the breadth of the requested injunctive relief as it raised in opposition to prior intervenors. Specifically, the CFPB claims the ELFA Intervenors' proposed order expands the scope of the Injunction by requiring the CFPB to cease all implementation or enforcement of the Rule. Opposition at 5. A reading of the proposed order, in conjunction with Motion, reveals that the cited "expansion" is merely included as part of the request for a nationwide injunction, which is identical to what the original Plaintiffs ultimately sought. Should the Court deny the ELFA Intervenors' request for a nationwide injunction, it follows that the provision would be appropriately limited to the Axle and the member institutions of ELFA.

16. Like their predecessor-intervenors, the ELFA Intervenors simply urge the Court to find that no covered entity should be forced to comply with the Rule and, should compliance become necessary, the deadlines be extended day-for-day while the injunction is in effect.

**REQUEST FOR RELIEF**

For those reasons and those set forth in the Motion, the ELFA Intervenors respectfully request that the Court grant the Motion. The ELFA Intervenors further request that the Court grant

XL FUNDING, LLC D/B/A AXLE FUNDING, LLC AND
EQUIPMENT LEASING AND FINANCE ASSOCIATION'S
REPLY IN SUPPORT OF EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

PAGE 6

the ELFA Intervenors such other and further relief to which they may show themselves justly entitled.

Dated: September 27, 2023

Respectfully Submitted,

PADFIELD & STOUT, LLP
420 Throckmorton Street, Ste. 1210
Fort Worth, TX 76102
817-338-1616 – Telephone
817-338-1610 – Facsimile

/s/ *Alan B. Padfield*
Alan B. Padfield
State Bar I.D. #00784712
abp@padfieldstout.com
Owen C. Babcock
State Bar I.D. #24104585
obabcock@padfieldstout.com
Kelsey N. Linendoll
State Bar I.D. #24120975
klinendoll@padfieldstout.com

*Attorneys for ELFA Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2023, the foregoing was served upon each appearing party through their respective counsel of record via the Court's electronic filing system.

*/s/ Owen C. Babcock*
Owen C. Babcock

XL FUNDING, LLC D/B/A AXLE FUNDING, LLC AND
EQUIPMENT LEASING AND FINANCE ASSOCIATION'S
REPLY IN SUPPORT OF EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

PAGE 7