# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# MCALLEN DIVISION

| | |
|---|---|
| TEXAS BANKERS ASSOCIATION; RIO BANK, MCALLEN, TEXAS; AMERICAN BANKERS ASSOCIATION, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>)<br>) Case No. 7:23-cv-00144 |
| CONSUMER FINANCIAL PROTECTION BUREAU and ROHIT CHOPRA, in his official capacity as Director of the Consumer Financial Protection Bureau, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## THE FARM CREDIT INTERVENORS' EMERGENCY MOTION FOR
## PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

EVIDENCE ............................................................................................................................ 2

FARM CREDIT INTERVENORS AND THEIR INTERESTS ................................................... 2

RELEVANT BACKGROUND ................................................................................................ 4

ARGUMENT AND AUTHORITIES ....................................................................................... 8

I.   The Farm Credit Intervenors Are Entitled To A Preliminary Injunction Enjoining The CFPB From Implementing The Final Rule Against TFC, CFC, And All Of The Council's Members .................................................................................................. 8

     A.   The Farm Credit Intervenors Are Likely To Succeed On The Merits Of Their Constitutional Claim, As This Court Has Already Held .............................. 8

     B.   The Council's Members, Including TFC, CFC, And All Other Farm Credit System Institutions, Will Be Irreparably Harmed Absent An Injunction .............. 9

     C.   The Balance Of The Equities Favors An Injunction, And Granting An Injunction Serves The Public Interest ................................................................... 14

II.  This Court Should Consider This Motion On An Expedited Basis ................................ 14

CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*All Coast, LLC v. Shore Offshore Servs.*,
  2023 WL 4993360 (E.D. La. Jan. 25, 2023) ......................................................... 6, 14

*Awad v. Ziriax*,
  670 F.3d 1111 (10th Cir. 2012) ................................................................................ 14

*BST Holdings, LLC v. OSHA*,
  17 F.4th 604 (5th Cir. 2021) ..................................................................................... 14

*CFPB v. Cmty. Fin. Servs. Ass'n of Am.*,
  No. 22-448 (U.S. Nov. 14, 2022) ................................................................................ 5

*Cmty. Fin. Servs. Ass'n of Am. Ltd. v. CFPB*,
  51 F.4th 616 (5th Cir. 2022) ............................................................................. *passim*

*Harris v. City of Balch Springs*,
  22 F. Supp. 3d 730 (N.D. Tex. 2014) ....................................................................... 14

*Hodnett v. Smurfit-Stone Container Enters., Inc.*,
  2010 WL 3522497 (W.D. La. Sept. 2, 2010) ........................................................... 15

*Jackson Women's Health Org. v. Currier*,
  760 F.3d 448 (5th Cir. 2014) .................................................................................... 14

*Louisiana v. Becerra*,
  20 F.4th 260 (5th Cir. 2021) ....................................................................................... 8

*Moore v. Brown*,
  868 F.3d 398 (5th Cir. 2017) ...................................................................................... 8

*Opulent Life Church v. City of Holly Springs, Miss.*,
  697 F.3d 279 (5th Cir. 2012) ...................................................................................... 8

*Rest. L. Ctr. v. U.S. Dep't of Lab.*,
  66 F.4th 593 (5th Cir. 2023) ................................................................................. 9, 10

*Texas v. EPA*,
  829 F.3d 405 (5th Cir. 2016) .................................................................................... 10

*Texas v. United States*,
  809 F.3d 134 (5th Cir. 2015) ........................................................................ 8, 10, 14

*Wages & White Lion Invs., LLC v. FDA*,
    16 F.4th 1130 (5th Cir. 2021) ..............................................................................10

*Winter v. Nat. Res. Def. Council*,
    555 U.S. 7 (2008) ....................................................................................................8

**Statutes and Rules**

12 U.S.C. § 2001 ..............................................................................................................3

12 U.S.C. § 5497 ..............................................................................................................5

12 U.S.C. § 5511 ..............................................................................................................4

12 U.S.C. § 5517 ..............................................................................................................3

15 U.S.C. § 1691c ............................................................................................................3

15 U.S.C. § 1691c-2 .........................................................................................................4

**Regulations**

86 Fed. Reg. 56,356 (Oct. 8, 2021) ..................................................................................4

88 Fed. Reg. 35,150 (May 31, 2023) ................................................................................1

**Other Authorities**

Pub. L. No. 111-203, 124 Stat. 1376 (2010) ....................................................................4

U.S. Const. art. I, § 9, cl. 7 ...........................................................................................5, 9

The Farm Credit Council (the "Council"), Texas Farm Credit ("TFC"), and Capital Farm Credit ("CFC") (collectively, the "Farm Credit Intervenors"), pursuant to Federal Rule of Civil Procedure 65, hereby submit this Motion For Preliminary Injunction And Brief In Support, and state as follows:

**INTRODUCTION**

On July 31, 2023, this Court entered its Order Granting In-Part And Denying In-Part Plaintiffs' Motion For Preliminary Injunction (the "Injunction Order"), Dkt.25, barring the Consumer Financial Protection Bureau and its Director, Rohit Chopra (collectively, the "CFPB") from implementing the final rule (the "Final Rule") issued on March 30, 2023, *Small Business Lending Under the Equal Credit Opportunity Act (Regulation B)*, 88 Fed. Reg. 35,150 (May 31, 2023), as against the original Plaintiffs in this case: the American Bankers Association ("ABA"), the Texas Bankers Association ("TBA"), Rio Bank, McAllen, Texas ("Rio Bank"), and their members. The Final Rule amended Regulation B governing small business lending under the Equal Credit Opportunity Act ("ECOA"), to implement certain small-business lender reporting requirements contained in Section 1071 of the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act"). The Council's members, including TFC and CFC, are incurring and will continue to incur costs in their efforts to ensure compliance with the Final Rule by their respective compliance dates. Although the Council, on behalf of its members, asked the CFPB to stay the Final Rule as to all covered financial institutions following this Court's Injunction Order, including as to the Council's members, the CFPB recently denied the Council's request. Thus, the Farm Credit Intervenors file this Motion requesting a preliminary injunction extending to the Council's members, on largely the same grounds asserted by the original Plaintiffs.

Each of the preliminary injunction factors favors injunctive relief. The Farm Credit Intervenors have substantial likelihood of succeeding on the merits of their constitutional claim,

as this case is directly governed by binding precedent from the U.S. Court of Appeals for the Fifth Circuit, as this Court has already held. Dkt.25 at 12 (citing *Cmty. Fin. Servs. Ass'n of Am. Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 978 (2023) ("*Community Financial*")). The Council's members, including TFC and CFC, will, moreover, be irreparably harmed absent an injunction. Indeed, the Council's members are disproportionately affected by the Final Rule, as nearly all of the loans they originate to farmers, ranchers, and agribusinesses fall within the Final Rule's terms. As such, the Council's members project to incur substantial compliance costs and hundreds of hours in staff time to ensure compliance with the Final Rule, costs that they will never be able to recover, even if they succeed in this lawsuit. Finally, the balance of the equities favors granting injunctive relief to the Council's members, which injunction will serve the public interest.

## EVIDENCE

In support of this Motion, the Farm Credit Intervenors rely upon and incorporate the Declaration of Robert P. Boone, III, attached hereto as Exhibit A, the Declaration of Wesley D. Sutton, attached hereto as Exhibit B, the Declaration of Lori V. Graham, attached hereto as Exhibit C, the Declaration of Paul Kohls, attached hereto as Exhibit D, and the Declaration of Amie Pala, attached hereto as Exhibit E.

## FARM CREDIT INTERVENORS AND THEIR INTERESTS

*Farm Credit Council.* The Council is the national trade association for the institutions of the Farm Credit System, a nationwide network of customer-owned financial institutions with a specific mission to support rural communities and agriculture. Over 100 years ago, Congress designed the Farm Credit System "to accomplish the objective of improving the income and well-being of American farmers and ranchers by furnishing sound, adequate, and constructive credit and closely related services to them, their cooperatives, and to selected farm-related businesses

necessary for efficient farm operations." 12 U.S.C. § 2001(a). As of September 1, 2023, the Farm Credit System included four banks and 67 associations, which together provide roughly 45% of all agricultural lending in the United States. Each Farm Credit institution is structured as a cooperative, and is owned by its customers.

The Farm Credit System is supervised and examined by the Farm Credit Administration ("FCA"), an independent federal financial regulatory agency, based upon the Farm Credit Act of 1971, as amended, and regulations issued by that agency. With respect to Farm Credit institutions, the FCA examines and enforces compliance with consumer-finance laws, including the Final Rule. Accordingly, although Farm Credit lenders must comply with the Final Rule, the FCA, and not the CFPB, will be the agency responsible for examining Farm Credit lenders for compliance with the Final Rule and bringing any administrative enforcement actions.[1]

The Council seeks preliminary injunctive relief on behalf of each of its members, which are currently incurring and will continue to incur substantial costs in ensuring that the Farm Credit System is capable of complying with the Final Rule.

***Capital Farm Credit.*** CFC is a Farm Credit System association and Council member that provides loans to support rural farmers, ranchers, and agribusinesses. CFC is a covered financial

---

[1] ECOA specifically provides that with respect to Farm Credit institutions, compliance with ECOA and rules issued thereunder "shall be enforced under … [t]he Farm Credit Act [12 U.S.C. § 2001 et seq.], by the Farm Credit Administration." 15 U.S.C. § 1691c(a)(6). Similarly, the Consumer Financial Protection Act ("CFPA"), which created the CFPB, provides that "[t]he Bureau shall have no authority to exercise any power to enforce [the CFPA] with respect to a person regulated by the Farm Credit Administration." 12 U.S.C. § 5517(k)(1).

The CFPA also provides that "[n]o provision of [the CFPA] shall be construed as altering, amending, or affecting the authority of the Farm Credit Administration to adopt rules, initiate enforcement proceedings, or take any other action with respect to a person regulated by the Farm Credit Administration." *Id.* Separately, in a section describing the CFPB's authority to supervise certain other nondepository institutions, the CFPA provides that "[n]o provision of [the CFPA] may be construed as modifying, limiting, or otherwise affecting the authority of the Farm Credit Administration." *Id.* § 5514(f).

institution under the Final Rule, and expects to be a "Tier 2" institution, meaning that CFC's current deadline for beginning data collection pursuant to the Final Rule is April 1, 2025.

***Texas Farm Credit.*** TFC is a Farm Credit association and Council member that provides loans to support rural farmers, ranchers, and agribusinesses. TFC is a covered financial institution under the Final Rule, and expects to be a "Tier 3" institution, meaning that TFC's current deadline for beginning data collection pursuant to the Final Rule is January 1, 2026.

## RELEVANT BACKGROUND[2]

In 2010, Congress passed Title X of the Dodd-Frank Act and, in so doing, established the CFPB, Pub. L. No. 111-203, 124 Stat. 1376 (2010), which agency has broad statutory authority to regulate individuals and entities that provide financial products and services, *see* 12 U.S.C. § 5511(a). The Dodd-Frank Act contains numerous provisions intended to promote the CFPB's implementation of fair lending laws. As relevant here, Section 1071 of the Dodd-Frank Act added a new Section 704B to ECOA that requires banks and other small business lenders to report on a limited universe of data points from credit applications by small businesses, including, for instance, "the number of the application and the date on which the application was received" and "the type and purpose of the loan or other credit being applied for." 15 U.S.C. § 1691c-2(e)(2). The new ECOA provision then authorizes the CFPB to impose additional reporting requirements that "would aid in fulfilling the purposes of this section." *Id.* § 1691c-2(e)(2)(H).

On September 1, 2021, the CFPB published a proposed rule purporting to implement Section 1071 of the Dodd-Frank Act, which significantly expanded the Dodd-Frank Act's short list of enumerated data points. 86 Fed. Reg. 56,356 (Oct. 8, 2021). Several interested parties,

---

[2] To avoid duplicative briefing, the Farm Credit Intervenors recite substantially the same Relevant Background in the Brief In Support Of Emergency Motion To Intervene and Brief In Support Of Emergency Motion For Preliminary Injunction.

4

including the Council, submitted comments to the CFPB critiquing the proposed rule as overbroad. In its comment, the Council detailed the significant costs and burdens the Final Rule would impose on the Council's members, in particular, as opposed to other financial institutions. *See generally* Ex.F.

On October 19, 2022, while the proposed rule was still pending, the Fifth Circuit issued its decision in *Community Financial*, holding that the CFPB's funding structure violates the U.S. Constitution's Appropriations Clause and the constitutional separation of powers. 51 F.4th at 642. The Fifth Circuit further determined that there was a "linear nexus" between the CFPB's unconstitutional funding structure and the CFPB rule challenged there (namely, the Payday Lending Rule), given that the CFPB relied upon its unlawfully unappropriated funds to promulgate the rule. *Id.* at 643. Thus, the court concluded that the remedy for this constitutional violation was to "rewind[ ]" the CFPB's unlawful action and set aside the challenged rule. *Id.* (quoting *Collins v. Yellen*, 141 S. Ct. 1761, 1801 (2021) (Kagan, J., concurring)). A few months later, on February 27, 2023, the U.S. Supreme Court granted the CFPB's petition for a writ of certiorari to address whether the Fifth Circuit "erred in holding that the statute providing funding to the Consumer Financial Protection Bureau, 12 U.S.C. § 5497, violates the Appropriations Clause, U.S. Const. art. I, § 9, cl. 7, and in vacating a regulation promulgated at a time when the CFPB was receiving such funding." Petition for Writ of Certiorari at I, *CFPB v. Cmty. Fin. Servs. Ass'n of Am.*, No. 22-448 (U.S. Nov. 14, 2022). The Court is scheduled to hear oral argument on this case on October 3, 2023.

Despite the Fifth Circuit's decision and the U.S. Supreme Court's grant of certiorari, the CFPB issued the Final Rule on March 30, 2023. 88 Fed. Reg. 35,150. The original Plaintiffs—Texas Bankers Association ("TBA"), Rio Bank, McAllen, Texas ("Rio Bank"), and American

5

Bankers Association ("ABA")—then filed this suit challenging the Final Rule on constitutional and statutory grounds and seeking preliminary and permanent injunctive relief. Dkt.12.

Upon considering the original Plaintiffs' preliminary injunction motion, this Court, on July 31, 2023, entered the Injunction Order and enjoined the CFPB from implementing and enforcing the Final Rule against the original Plaintiffs and their members pending the Supreme Court's *Community Financial* decision. The Court held that the original Plaintiffs were likely to succeed on the merits of their claim that the Final Rule is invalid because it was promulgated through the CFPB's unconstitutional funding structure, in light of the Fifth Circuit's binding decision saying as much. Dkt.25 at 12 (citing *Community Financial*, 51 F.4th at 643). It also determined that the original Plaintiffs faced a substantial threat of irreparable harm, given the unrecoverable compliance costs they were projected to sustain absent injunctive relief. *Id.* at 13–14. Finally, this Court concluded that the equities and public interest also favored injunctive relief, as the CFPB failed to offer any evidence suggesting that a brief stay of the Final Rule would cause the public any harm. *Id.* at 15. Although this Court concluded that every stay factor weighed in favor of relief, it declined to issue a nationwide injunction and instead tailored its injunctive remedy solely to the original parties in the case. *Id.* at 15–16.

Shortly thereafter, on August 10, 2023, the Council, on behalf of its members, the Farm Credit institutions, delivered a letter to the Honorable Rohit Chopra, Director of the CFPB, asking that the CFPB voluntarily stay the Final Rule as to *all* covered financial institutions pending the Supreme Court's *Community Financial* decision, including as to the Council's members. Ex.G. The CFPB denied the Council's request via letter dated August 24, 2023, Ex.H, and the Final Rule became effective on August 29, 2023, 88 Fed. Reg. 35,150.

The Council's members have incurred and will continue to incur significant costs in ensuring compliance with the Final Rule. TFC, an exemplary "Tier 3" lender, expects to spend many staff hours and $10,000 in 2023 alone in analyzing the Final Rule's requirements and engaging with its vendors to assess the best methods for complying with those requirements. Ex.C ¶ 7. Prior to its compliance date of January 1, 2026, TFC projects expending approximately $75,000 in staff time and $20,000 in costs associated with outside consulting and software licensing to ensure that it is capable of complying with the Final Rule. Ex.C ¶ 9. CFC, an exemplary "Tier 2" lender, projects greater compliance costs: during 2023 alone, it expects to devote over 200 hours of staff time to develop operational procedures, data collection and reporting, and training documentation relating to the Final Rule. Ex.B ¶ 7. Before its compliance date of April 1, 2025, CFC expects to spend several hundred more hours of staff time, as well as funds relating to outside counseling and software licensing. Ex.B ¶ 8.

Other Council members will suffer similar harms over the next several months and years, as they work toward their respective compliance dates. For instance, Farm Credit association Compeer Financial ("Compeer"), an exemplary "Tier 1" lender, expects to expend as much as $100,000 during the balance of 2023 in outside counsel, consultant, and technology expenses relating to the Final Rule. Ex.D ¶ 6. These costs are projected to grow substantially in 2024, as Compeer projects spending roughly $400,000 and 1500 hours of staff time to, among other things, build or purchase new technology and provide the necessary training for its staff members by its compliance date of October 1, 2024. *Id.* ¶ 7. Another Farm Credit institution, the Farm Credit Bank of Texas ("FCBT"), has similarly expended and will continue to expend substantial staff hours working with affiliated Farm Credit institutions to estimate compliance timeframes, identify

7

and analyze the systems affected by the Final Rule, and engage with outside technology vendors to prepare for data collection. Ex.E ¶¶ 8–9.

## ARGUMENT AND AUTHORITIES

I. **The Farm Credit Intervenors Are Entitled To A Preliminary Injunction Enjoining The CFPB From Implementing The Final Rule Against TFC, CFC, And All Of The Council's Members**

A movant is entitled to a preliminary injunction upon showing: (1) a substantial likelihood of success on the merits of its claim; (2) a substantial threat that the movant or its members will suffer irreparable harm absent relief; (3) that the movant's threatened injury outweighs any threatened harm to the party to be enjoined; and (4) that granting the preliminary injunction will not disserve the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Moore v. Brown*, 868 F.3d 398, 402–03 (5th Cir. 2017). The "most significant" of these factors are the movant's likelihood of success on the merits and threat of irreparable harm. *Louisiana v. Becerra*, 20 F.4th 260, 262 (5th Cir. 2021). Further, the third and fourth prongs of this inquiry "merge" where, as here, "the Government is the opposing party." *Texas v. United States*, 809 F.3d 134, 187 n.204 (5th Cir. 2015). When the moving party shows that it is likely to suffer irreparable harm, the Government must "present powerful evidence of harm to its interests to prevent" the movant from meeting the public interest prong. *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 297 (5th Cir. 2012).

### A. The Farm Credit Intervenors Are Likely To Succeed On The Merits Of Their Constitutional Claim, As This Court Has Already Held

The Farm Credit Intervenors are likely to success on the merits of their constitutional claim that the Final Rule was promulgated in violation of the U.S. Constitution's Appropriations Clause. As this Court has already held, this constitutional claim is governed by binding Fifth Circuit precedent. Dkt.25 at 12 (citing *Community Financial*, 51 F.4th at 643). In *Community Financial*,

the Fifth Circuit expressly held that the CFPB's funding structure violates the Appropriations Clause, U.S. const. art. I, § 9, cl. 7, and that CFPB rules promulgated using unconstitutionally unappropriated funds—such as the Payday Lending Rule at issue in that case—are unconstitutional. 51 F.4th at 643. The Fifth Circuit concluded that the only remedy for this constitutional violation was to "rewind[ ]" the CFPB's action and vacate the challenged rule. *Id.* (quoting *Collins*, 141 S. Ct. at 1801 (Kagan, J., concurring)). Applying that holding to the Final Rule here, this Court determined that the original Plaintiffs were likely to succeed on the merits of their constitutional claim, given that the Final Rule was, like the Payday Lending Rule, promulgated using unconstitutionally unappropriated funds. Dkt.25 at 12. For that same reason, the Farm Credit Intervenors are likely to succeed on the merits of their constitutional claim.[3]

**B.     The Council's Members, Including TFC, CFC, And All Other Farm Credit System Institutions, Will Be Irreparably Harmed Absent An Injunction**

This Court's Injunction Order does not protect TFC, CFC, or the vast majority of the Council's members, who will suffer irreparable harm absent injunctive relief, as the Council's members continue to incur substantial costs in their efforts to comply with the Final Rule that cannot be recouped.

As this Court has recognized, Dkt.25 at 13–14, "the nonrecoverable costs of complying with a putatively invalid regulation typically constitute irreparable harm," *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023); *see id.* ("Even purely economic costs may count as irreparable harm where they cannot be recovered in the ordinary course of litigation" (citation and quotation marks omitted)). Indeed, "a regulation later held invalid almost *always* produces

---

[3] In their Proposed Complaint, the Farm Credit Intervenors also raise claims that the Final Rule exceeds the CFPB's statutory authority and is arbitrary and capricious in various other respects under the Administrative Procedure Act, 5 U.S.C. § 706. The Farm Credit Intervenors do not rely upon those claims at this time, in light of the Fifth Circuit's binding decision directly governing their constitutional claim, *see Community Financial*, 51 F.4th at 643, but intend to fully brief all of their claims when appropriate, if necessary.

the irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220–21 (1994) (Scalia, J., concurring in part and in the judgment)). That is so because "federal agencies generally enjoy sovereign immunity for any monetary damages." *Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021). Unrecoverable compliance costs need only be "more than de minimis," as the primary inquiry is "not so much the magnitude but the irreparability." *Rest. L. Ctr.*, 66 F.4th at 597, 600 (quoting *Texas*, 829 F.3d at 433–34). Further, projected compliance costs also constitute irreparable harm. *Texas*, 829 F.3d at 433–34 ("compliance with the Final Rule [at issue] would impose $2 billion" in unrecoverable costs "on power companies, businesses, and consumers," establishing irreparable harm); *see* Dkt.25 at 14.

For these reasons, in ruling on the original Plaintiffs' preliminary injunction motion, this Court properly concluded that the compliance costs the original Plaintiffs and their members would suffer with respect to the Final Rule constituted irreparable harm. Dkt.25 at 13–14. Specifically, this Court highlighted the costs and burdens the original Plaintiffs and their members would incur hiring new staff and updating and/or purchasing operating software. *Id.* The Court explained that those institutions would need to expend thousands of dollars relating to the Final Rule prior to their compliance dates, which costs the original Plaintiffs and their members would be unable to recover in the event they prevail in the litigation. *Id.* at 13. Further, and as this Court noted, the CFPB itself has acknowledged that "it expects the costs of compliance with the Final Rule to be passed on to small business credit borrowers in the form of higher interest rates and fees." *Id.* at 13 (citation omitted). It did not matter whether certain institutions would suffer compliance costs "*now*." *Id.* at 14. That the original Plaintiffs and their members projected incurring significant

10

and unrecoverable costs over the coming months and years to comply with the Final Rule was sufficient to establish irreparable harm and support their request for injunctive relief. *Id.*

That same result should obtain here, where the Council's members must undertake substantially similar actions over the next several months to ensure compliance with the Final Rule and will suffer substantially similar—indeed, potentially greater—compliance costs absent injunctive relief. The vast majority of the Farm Credit institutions are covered financial institutions under the Final Rule. Ex.A ¶ 6. Further, the Final Rule covers nearly all of each Farm Credit lender's loans. *Id.* As such, the Farm Credit institutions are currently expending and project to expend substantial financial resources in ensuring that all Farm Credit lenders are capable of complying with the Final Rule, costs that are shared by every Farm Credit institution, regardless of whether that institution is covered under the Final Rule. *Id.*; *see* Ex.E ¶ 7.

The evidence submitted with this Motion details the costs for the Council's members of complying with the Final Rule. *See* Ex.A (Declaration of Robbie Boone, III); Ex.B (Declaration of Wesley D. Sutton); Ex.C (Declaration of Lori V. Graham); Ex.D (Declaration of Paul Kohls); Ex.E (Declaration of Amie Pala). The Final Rule will require the Council's members, many of which are rural associations with limited staff and resources, to devote a greater proportion of their resources to gathering, analyzing, and reporting the data that they must collect under the Final Rule. *See* Ex.B ¶¶ 6–8; Ex.C ¶¶ 7–9; Ex.D ¶¶ 5–7; Ex.E ¶¶ 8–9. Given the complexity of the Final Rule, many of the Council's members are already starting their efforts to ensure compliance. Farm Credit institutions are, among other things, analyzing the Final Rule's technical requirements; identifying affected systems; assessing the technical requirements necessary to update affected systems; working with outside technology vendors to implement the Final Rule's data collection requirements; updating their reporting applications and templates; revising their

internal procedures; licensing new computer software systems; and managing the privacy protections needed to safeguard the large amount of additional data that the Farm Credit institutions will now need to collect and report pursuant to the Final Rule. Ex.E ¶¶ 8–9; *see* Ex.B ¶¶ 6–8; Ex.C ¶¶ 7–9; Ex.D ¶ 8–9.

The Council's members also project that they will incur imminent, substantial staff time and thousands upon thousands of dollars in complying with the Final Rule, which costs are representative of the costs each of the Council's members will incur, *see* Ex.A ¶ 15, depending upon the member's compliance Tier:

***Tier 1.*** Farm Credit institution Compeer is an exemplary "Tier 1" lender, with a likely compliance date of October 1, 2024. Ex.D ¶ 4. Compeer has already begun incurring costs to comply with the Final Rule, including in analyzing how it will operationalize the Final Rule's data collection and reporting requirements. *Id.* ¶ 5. In 2023, Compeer projects spending 500 or more hours of staff time and roughly $100,000 in compliance costs to assemble an internal compliance team and evaluate the technology tools that Compeer will utilize to comply with the Final Rule. *Id.* ¶ 6. To successfully meet its anticipated compliance date, Compeer expects to expend an additional 1500 staff hours and as much as $400,000 in additional compliance costs arising from, among other things, Compeer's efforts to update its policies and procedures; build or purchase new technology to assist with its data collection and reporting efforts; and train hundreds of new team members regarding the Final Rule. *Id.* ¶ 7. These compliance costs are representative of other Tier 1 Council members' costs. Ex.A ¶ 15.

***Tier 2.*** Intervenor-Plaintiff and Farm Credit institution CFC is an exemplary "Tier 2" lender, with a likely compliance date of April 1, 2025. Ex.B ¶ 5. CFC has also already begun its efforts to comply with the Final Rule, and is incurring costs associated with these compliance

efforts. *Id.* ¶¶ 6–7. Its staff is currently analyzing the Final Rule's requirements, and engaging with CFC's technology vendor as well as outside compliance vendors to prepare for CFC's compliance deadline. *Id.* ¶ 6. CFC is also incurring costs to develop operational procedures and prepare documentation relating to the Final Rule, including training and compliance documentation. *Id.* ¶ 7. CFC anticipates expending several hundred hours of staff time in these efforts, and expects to incur costs associated with hiring outside consultants and licensing the tools and software necessary to comply with the Final Rule. *Id.* ¶ 8. These compliance costs are representative of other Tier 2 Council members' costs. Ex.A ¶ 15.

   ***Tier 3.*** Intervenor-Plaintiff and Farm Credit institution TFC is an exemplary "Tier 3" lender, with a likely compliance date of January 1, 2026. Ex.C ¶ 5. TFC, too, has already begun its compliance efforts, including by dedicating staff members to analyze the Final Rule's requirements and explore with TFC's vendors the various options for ensuring TFC is capable of collecting and reporting the large amount of data required under the Final Rule. *Id.* ¶ 7. Indeed, TFC has already incurred compliance costs with respect to its third-party technology vendors, *id.* ¶ 8, and anticipates spending roughly $10,000 on its compliance efforts this year, *id.* ¶ 7. To ensure it is capable of meeting its compliance deadline, TFC anticipates expending anywhere between an additional 300 and 400 hours of staff time at a cost of roughly $75,000, as well as over $20,000 in additional expenses relating to outside consulting and tool and third-party software licensing. *Id.* ¶ 9. These compliance costs are representative of other Tier 3 Council members' costs. Ex.A ¶ 15.

   These material compliance costs are representative of the compliance costs that the Council's members have incurred and will continue to incur to ensure that Farm Credit lenders are capable of meeting their respective compliance deadlines under the Final Rule, *id.*, and will not be

13

recoverable in the event the Farm Credit Intervenors succeed on their claims in this litigation, Dkt.25 at 13–14 (citing *Texas*, 829 F.3d at 434 n.41; *Wages & White Lion*, 16 F.4th at 1142). Accordingly, these costs constitute irreparable harm. *Id.*

### C. The Balance Of The Equities Favors An Injunction, And Granting An Injunction Serves The Public Interest

Finally, the public interest favors enjoining the Final Rule as to the Council's members, including TFC and CFC. *See Texas*, 809 F.3d at 187 n.204. As the Court recognized in issuing the Injunction Order, the CFPB and the public have no interest in enforcing an invalid rule. *See BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021). Rather, the public interest is "served by maintaining our constitutional structure." Dkt.25 at 15; *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014) (an injunction does not "disserve the public interest" where the injunction "will prevent constitutional deprivations"); *see also Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights."). The CFPB cannot show that a brief stay of the Final Rule during this litigation or, at minimum, pending the Supreme Court's decision in *Community Financial* would result in any harm to the public interest, especially given that 13 years have transpired since Congress enacted the Dodd-Frank Act.

### II. This Court Should Consider This Motion On An Expedited Basis

Courts have "inherent authority" to ensure the "orderly and expeditious disposition of cases" on their dockets, *Harris v. City of Balch Springs*, 22 F. Supp. 3d 730, 733–34 (N.D. Tex. 2014) (quoting *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995)), which authority is reflected in this Court's local rules, *see* S.D. Tex. Loc. R. 7.8 (the court "may in its discretion . . . shorten or extend time periods"). To that end, courts routinely grant requests to expedite motion practice when doing so serves the interests of justice. *See, e.g.*, *All Coast, LLC v. Shore Offshore*

14

*Servs.*, 2023 WL 4993360, at *1–2 (E.D. La. Jan. 25, 2023) (granting request to expedite consideration of motion to compel deposition); *Hodnett v. Smurfit-Stone Container Enters., Inc.*, 2010 WL 3522497, at *1 (W.D. La. Sept. 2, 2010) (granting request to expedite consideration of motion for a protective order).

As explained above, the Farm Credit System is suffering ongoing and irreparable harm. Further, this Motion presents only issues that this Court, after full briefing, has already considered and ruled upon. Accordingly, the Farm Credit Intervenors respectfully request that this Court order a condensed briefing schedule on the Farm Credit Intervenors' Motion as this Court deems appropriate.

## CONCLUSION

For the foregoing reasons, the Farm Credit Intervenors respectfully request that this Court (a) grant this Motion; (b) enter a preliminary injunction prohibiting CFPB from implementing the Final Rule against the CFC, TFC, and the Council's members; staying all deadlines for the CFC, TFC, and the Council's members to comply with the requirements of the Final Rule until after the Supreme Court's final decision in *Community Financial*; and, in the event of a reversal in *Community Financial*, extending all deadlines for compliance with the Final Rule for CFC, TFC, and the Council's members to compensate for the period stayed; and (c) grant such other relief as this Court deems just and proper.

Dated: September 8, 2023

Respectfully submitted,

*/s/ Daniel G. Gurwitz*
Daniel G. Gurwitz
State Bar No. 00787608
Southern Dist. ID No. 16895
Email: dgurwitz@atlashall.com

Attorney in charge for Farm Credit Council,
Texas Farm Credit, and Capital Farm Credit

15

OF COUNSEL:
Atlas, Hall & Rodriguez, LLP
818 Pecan Blvd.
P.O. Box 3725
McAllen, Texas 78501/ 78502-3725
Tel: 956-682-5501
Fax: 956-682-6109

Misha Tseytlin (pending *pro hac vice*)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(312) 759-5947
misha.tseytlin@troutman.com

Joseph J. Reilly (pending *pro hac vice*)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
401 9th Street NW, Suite 1000
Washington, DC 20004
(202) 274-2908
joseph.reilly@troutman.com