# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| TEXAS BANKERS ASSOCIATION; RIO BANK, MCALLEN, TEXAS; AMERICAN BANKERS ASSOCIATION, <br><br> Plaintiffs, <br><br> v. <br><br> CONSUMER FINANCIAL PROTECTION BUREAU and ROHIT CHOPRA, in his official capacity as Director of the Consumer Financial Protection Bureau, <br><br> Defendants. | Case No. 7:23-cv-00144 |

### DECLARATION OF ROBERT P. BOONE, III

I, Robert P. Boone, III, hereby declare as follows:

1. The statements below are based on my personal knowledge.

2. I am the Senior Vice President for Regulatory Affairs & General Counsel at the Farm Credit Council (the "Council"). I have been at the Council for approximately 14 years. In my role as Senior Vice President for Regulatory Affairs & General Counsel, I lead the Council's efforts to achieve a regulatory environment favorable to Farm Credit's mission of supporting the credit needs of rural communities and agriculture, as well as conduct the Council's legal affairs.

3. The Council is the national trade association representing the institutions of the Farm Credit System (the "System"), a nationwide network of customer-owned financial institutions with a specific mission to provide credit and other support to rural communities and agriculture. The Council therefore has members located across the country, including in the Southern District of Texas.

1

4. Farm Credit institutions do not receive any government funding and instead raise funds by selling debt securities on the nation's money markets through the Federal Farm Credit Banks Funding Corporation (the "Funding Corporation"). After the Funding Corporation issues debt securities on behalf of all System-institutions, the System's four regional wholesale banks—AgFirst, AgriBank, CoBank, and Farm Credit Bank of Texas—then fund the System's 67 individual associations, with each Farm Credit regional wholesale bank funding the associations in its particular district. The individual associations, in turn, make loans to support farmers, ranchers, and rural agribusinesses. One Farm Credit institution, CoBank, is unique: it effectively functions both as the Farm Credit Bank for associations in its district, and as another association in that it makes loans to retail borrowers.

5. In my position at the Council, I have had discussions with many of the Council's members to understand how they are impacted by the Consumer Financial Protection Bureau's ("CFPB") Final Rule as set forth in *Small Business Lending Under the Equal Credit Opportunity Act (Regulation B)*, 88 Fed. Reg. 35,150 (May 31, 2023) (the "Final Rule"). I have also discussed with Council members the substantial compliance costs that they will incur to implement the Rule.

6. The vast majority of Farm Credit institutions are covered under the Final Rule. Further, the Final Rule covers almost every single loan that Farm Credit lenders originate. Because of the cooperative structure of the Farm Credit System, the costs each Farm Credit institution incurs in complying with the Final Rule will be shared by every Farm Credit institution.

7. It is my understanding that the Final Rule requires financial institutions to begin collecting data by specific dates, which dates depend upon the number of qualifying small business loans the institution originated in 2022 and will originate in 2023. "Tier 1" institutions, that is, institutions that originate least 2,500 small business loans per year, must begin collecting data by

2

October 1, 2024. "Tier 2" institutions, that is, institutions that originate between 500 and 2,500 small business loans per year, must begin collecting data by April 1, 2025. And "Tier 3" institutions, that is, institutions that originate at least 100 but fewer than 500 small business loans per year, must begin collecting data by January 1, 2026. Members of the Council fall into each of these three Tiers.

8. I have been informed that on July 31, 2023, this Court enjoined the CFPB from enforcing the Final Rule against the original plaintiffs in this action—the American Bankers Association ("ABA"), the Texas Bankers Association ("TBA") and Rio Bank—and against members of the ABA and TBA.

9. On August 10, 2023, the Council, on behalf of its members, submitted a letter to the Honorable Rohit Chopra, Director of the CFPB, requesting that the CFPB voluntarily stay implementation of the Final Rule for *all* covered financial institutions—not just the ABA, TBA, and their members—pending the U.S. Supreme Court's decision in *Community Financial Services Association of America, Ltd. v. CFPB*, No. 22-448 (U.S. Feb. 27, 2023).

10. Two weeks later, the CFPB denied the Council's request by letter dated August 24, 2023.

11. Members of the Council have incurred and will continue to incur substantial costs and burdens in preparing to implement the Final Rule. These costs and burdens will have a significant impact on and result in irreparable harm to the Council's members.

12. For example, as stated in the Declaration of Paul Kohls, Compeer Financial, a representative Tier 1 Farm Credit lender, reports that it has already begun its efforts to comply with the Final Rule, including by analyzing the Final Rule and identifying staff to begin assessing how Compeer will operationalize the Final's data collection and reporting requirements. In 2023,

Compeer anticipates expending as much as $100,000 in outside counsel, consultant, and technology expenses related to the Final Rule, as well as at least 500 staff hours. Beyond this year, Compeer projects expending up to an additional $400,000 as well as 1,500 staff hours in its efforts to ensure that it is capable of complying with the Final Rule by the Tier 1 compliance date

13. As stated in the Declaration of Wesley D. Sutton, Capital Farm Credit, a representative Tier 2 Farm Credit lender, reports that it will incur substantial compliance costs in 2023, including more than 200 staff hours spent analyzing and operationalizing the Final Rule's data collection and reporting requirements. Capital Farm Credit anticipates expending several hundred additional staff hours to ensure compliance with the Final Rule by the Tier 2 compliance date. In addition, Capital Farm Credit projects to expend funds for outside consulting and for tool and software licensing.

14. As stated in the Declaration of Lori V. Graham, Texas Farm Credit, a representative Tier 3 lender, reports that it will incur significant compliance costs in 2023, including costs relating to researching the Final Rule and identifying and working with vendors to determine how best to implement the Final's data collection and reporting requirements. Texas Farm Credit expects to spend roughly $10,000 on these compliance efforts in 2023. It will then continue to incur compliance costs, including costs relating to its third-party technology vendors and staff training. As it continues its compliance efforts, Texas Farm Credit expects to incur approximately an additional $75,000 in staff time and $20,000 in outside consulting and software licensing by the Tier 3 compliance date. Because the Council's members are not covered by the preliminary injunction issued in this case, which currently applies only to the ABA, TBA and their members, the Council's members will (absent an injunction that applies to them) be forced to continue incurring costs to meet the Final Rule's compliance deadlines. By contrast, members of the

ABA—which include some of the country's largest banks—will have their compliance deadlines extended to compensate for the length of the stay. To take an example, Tier 1 Farm Credit lenders will be required to implement the Final Rule in October of 2024, whereas Tier 1 ABA members will have many more months to comply. In light of the substantial costs that the Council's members will incur in complying with the Final Rule, the Council's members will be placed at an unjustified disadvantage as compared to the ABA and TBA banks with which they compete in the agricultural-credit market.

15. These compliance costs and burdens are representative of the compliance costs and burdens other Council members in Tiers 1, 2, and 3 are incurring and will incur to comply with the Final Rule.

16. In addition to these representative direct costs, at least some of the Council's members will incur indirect costs as cooperative owners of the Farm Credit Bank of Texas, which provides technology services to certain Farm Credit associations.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _____September 8, 2023_____     _____
                                         Robert P. Boone, III
                                         Senior Vice President of Regulatory Affairs
                                         & General Counsel
                                         Farm Credit Council

5