# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| TEXAS BANKERS ASSOCIATION; RIO BANK, MCALLEN, TEXAS; AMERICAN BANKERS ASSOCIATION, <br><br> Plaintiffs, <br><br> v. <br><br> CONSUMER FINANCIAL PROTECTION BUREAU and ROHIT CHOPRA, in his official capacity as Director of the Consumer Financial Protection Bureau, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) Case No. 7:23-cv-00144 ) ) ) ) ) ) ) ) |

## DECLARATION OF WESLEY D. SUTTON

I, Wesley D. Sutton, hereby declare as follows:

1. The statements below are based on my personal knowledge. I am the General Counsel at Capital Farm Credit ("CFC") and have served in that role for the past 5 years. I oversee the legal and compliance functions for CFC and in performing my job responsibilities, I have familiarized myself with the data collection, reporting, and other requirements that will be imposed on CFC in complying with the Final Rule issued by the Consumer Financial Protection Bureau ("CFPB") set forth in the *Small Business Lending Under the Equal Credit Opportunity Act (Regulation B)*, 88 Fed. Reg. 35,150 (May 31, 2023) (the "Final Rule").

2. CFC is headquartered in Bryan, Texas and chartered to serve 192 counties across Texas, including the area that encompasses the Southern District of Texas. More specifically, CFC is a Farm Credit association that provides loans to support rural farmers, ranchers, and agribusinesses.

1

3. CFC is a member of the Farm Credit Council (the "Council") but is not a member of the American Bankers Association ("ABA") or the Texas Bankers Association ("TBA").

4. CFC does not have readily accessible information regarding which of its covered credit transactions were originated to small businesses prior to October 1, 2023. As such, CFC will use a reasonable method to estimate its covered originations for both 2022 and 2023.

5. Based on our estimates, CFC believes that we have a sufficient number of covered credit transactions to be included in Compliance Tier 2 under the Final Rule and, absent a stay, CFC is conservatively preparing for a compliance date that correlates to Tier 2 institutions. Absent any contravening information, CFC estimates that it will begin data collection on April 1, 2025 – if not sooner.

6. CFC has already started its efforts to comply with the Final Rule by dedicating compliance team members to study the requirements and application of the Final Rule, its accompanying commentary and policy statement issued by CFPB. We are working with our technology vendor at the Farm Credit Bank of Texas ("FCBT") to ascertain the ability to collect the required data elements and be prepared to properly report that information.

7. During the balance of this year, 2023, CFC will continue to incur substantial costs and burdens to comply with the Final Rule, including over 200 hours of internal staff time allocated to this effort. These hours include development of operational processes and procedures, data collection and reporting, training and compliance documentation. We are also working to implement a contract with an outside compliance vendor that can provide resources and expertise to supplement our internal staff.

8. In order to comply with the Final Rule by our compliance date of April 1, 2025, CFC expects to incur several hundred hours of internal staff time allocated to this effort. In

addition, we expect to expend funds for outside consulting and/or licensing of tools or software. We also are aware that FCBT, as our primary technology vendor, has already commenced its efforts to comply with the Final Rule, and has expended a material number of hours in collaboration with its affiliated associations to estimate compliance timeframes; identifying and reviewing systems impacted; analysis of the technical requirements necessary to update impacted systems; and meeting with and engaging outside technology vendors to implement information collection.

9. We also are aware that FCBT, as our primary technology vendor, has already commenced its efforts to comply with the Final Rule, and has expended a material number of hours in collaboration with its affiliated associations to estimate compliance timeframes; identifying and reviewing systems impacted; analysis of the technical requirements necessary to update impacted systems and meeting with and engaging outside technology vendors to implement information collection.

10. The above costs will be significant to CFC, and I understand that CFC will not be able to recover these costs, either in whole or in large part.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 9/8/23

Wesley D. Sutton
General Counsel, Capital Farm Credit

3