Case 7:23-cv-00144 Document 69 Filed on 10/26/23 in TXSD Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
October 26, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| TEXAS BANKERS ASSOCIATION, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 7:23-CV-00144 |
| CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*, | § § § § | |
| Defendants. | § § | |

**ORDER GRANTING INTERVENORS' MOTIONS FOR PRELIMINARY INJUNCTION**

**I.    Introduction**

Plaintiffs Texas Bankers Association (TBA), Rio Bank, and American Bankers Association (ABA) initiated this action for declaratory and injunctive relief against Defendants Consumer Financial Protection Bureau (Bureau) and Rohit Chopra, in his official capacity as Director of the Bureau, seeking to set aside the Bureau's final rule that imposes new small business lending requirements on covered financial institutions, in light of the Fifth Circuit's recent decision vacating another of the Bureau's rules after finding the agency's funding structure unconstitutional. (Dkt. Nos. 1, 12); *see* Final Rule, Small Business Lending Under the Equal Credit Opportunity Act, 88 Fed. Reg. 35,150 (effective Aug. 23, 2023); *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022) (invalidating 2017 Payday Lending Rule), *cert. granted*, 143 S. Ct. 978, 215 L. Ed. 2d 104 (2023).  Having granted in part and denied in part Plaintiffs' motion for preliminary injunction,[1] and having then granted unopposed motions by various other covered financial institutions to intervene,[2] the Court now has before it the following

---

[1] (Dkt. No. 25).

[2] (Dkt. Nos. 34, 38, 50, 66).

requests for relief: (1) Community Bankers of America (ICBA), Independent Bankers Association of Texas (IBTA), and Texas First Bank's (collectively, Community Bank Intervenors) Motion for Preliminary Injunction (Dkt. No. 44); (2) Credit Union National Association (CUNA), Cornerstone Credit Union League (Cornerstone), and Rally Credit Union's (Rally) (collectively, Credit Union Intervenors) Joinder to Community Bank Intervenors' Motion (Dkt. No. 45); and (3) Axle Funding, LLC (Axle) and Equipment Leasing and Finance Association's (ELFA) (collectively, ELFA Intervenors) Motion for Preliminary Injunction (Dkt. No. 54).[3] Intervenors seek the relief requested and obtained by Plaintiffs—a preliminary injunction staying Defendants' implementation and enforcement of the final rule pending the U.S. Supreme Court's review of the Fifth Circuit's decision in *Community Financial Services*—as well as the relief sought by Plaintiffs and denied by the Court, i.e., an injunction that extends nationwide to all financial institutions covered by the final rule. Upon consideration of the Motions and the parties' responsive briefing and evidence,[4] in light of the relevant law, the Court will grant the full scope of relief requested for the following reasons.

## II.     Analysis

### A.     Whether Preliminary Injunction Should Extend to Intervenors

With respect to the four requirements to obtain a preliminary injunction, addressed by the Court in its prior order now incorporated in its entirety herein,[5] Defendants concede that Intervenors share Plaintiffs' ability to show a likelihood of success on the merits given *Community Financial Services*, which binds this Court absent reversal by the Supreme Court. (Dkt. No. 46 at p. 3; Dkt. No. 60 at p. 4; *see* Dkt. No. 25 at pp. 8, 12). Defendants contest, though, each set of

---

[3] The Court also has before it a similar motion filed by the fourth set of parties most recently allowed to intervene—Farm Credit Council, Texas Farm Credit, and Capital Farm Credit (Farm Credit Intervenors)—but that motion is not yet ripe for ruling, and in any event, is mooted by the Court's extension of preliminary injunctive relief to all covered financial institutions. *See* (Dkt. Nos. 66, 68).

[4] (Dkt. Nos. 46-48, 60, 61).

[5] (Dkt. No. 25).

Intervenors' ability to show a substantial threat of irreparable injury if an injunction does not issue, taking the position that Intervenors "have not provided specific evidence of compliance costs that they are required to incur now, as opposed to years down the road." (Dkt. No. 46 at p. 1; Dkt. No. 60 at p. 1). This argument fails to persuade, for two reasons. First, the Court has already rejected it, since "the Fifth Circuit has accepted projected compliance costs as constituting irreparable harm." (Dkt. No. 25 at p. 14) (citing *Texas v. EPA*, 829 F.3d 405, 433-44 (5th Cir. 2016)). Second, each set of Intervenors has provided evidence, by way of sworn declarations, not only of the costs Intervenors expect to incur in complying with the final rule, but also of compliance costs already incurred. (Dkt. No. 44, Exhs. 1-3; Dkt. No. 45, Exhs. A-C; Dkt. No. 54, Exhs. A, B). As with Plaintiffs, such costs are likely unrecoverable and "more than de minimus," and support a showing of irreparable harm. *See* (Dkt. No. 25 at pp. 13-14).

The final two prongs of the preliminary injunction analysis, which require a balancing of harms and consideration of the public interest, "merge when the Government is the opposing party." (Dkt. No. 25 at p. 9); *Nken v. Holder*, 556 U.S. 418, 435 (2009). And where, as here, the irreparable harm prong has already been satisfied, the government as non-movant "would need to present powerful evidence of harm to its interests to prevent [the movant] from meeting this requirement." (Dkt. No. 25 at p. 15); *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 297 (5th Cir. 2012). In response to Plaintiffs' original motion, Defendants presented no such evidence; without more, their argument that greater harm would result from delay in enforcing the final rule and its intended benefits for small businesses failed to tip the balance in their favor. (Dkt. No. 25 at p. 15). Defendants now expound upon this argument, asserting that "copious evidence" detailed in the preamble to the rule "supports the Bureau's view that the Rule as well as the statutory requirements it implements will produce significant benefits to small

businesses, the community, and lenders,"[6] and that "[t]he public interest does not favor further delay to those requirements taking effect." (Dkt. No. 46 at p. 3; Dkt. No. 60 at p. 3). But again, precedent binding on this Court has essentially invalidated the rule regardless of its purported benefits, and the public interest is served, not harmed, "by maintaining our constitutional structure" pending Supreme Court review. (Dkt. No. 44 at p. 14; Dkt. No. 47 at p. 4; Dkt. No. 54 at p. 14; Dkt. No. 61 at p. 4); *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (also observing that "[a]ny interest [an agency] may claim in enforcing an unlawful (and likely unconstitutional) [regulation] is illegitimate"); *see also Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022) (quoting *State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021)) ("[T]here is generally no public interest in the perpetuation of unlawful agency action."). To the extent Defendants complain of harm related to delay in effectuating the underlying statute itself, that argument also fails to persuade given the lack of urgency thus far demonstrated—the rule implements statutory changes made 13 years earlier, and creates tiered compliance deadlines beginning October 1, 2024[7]—and that the requested stay extends only to the rule itself. (Dkt. No. 44 at pp. 5, 14; Dkt. No. 47 at pp. 4-5; Dkt. No. 61 at p. 5). Intervenors, like Plaintiffs, have shown their entitlement to preliminary injunctive relief.

B.     **Whether Preliminary Injunction Should Extend Nationwide**

In moving for the relief denied to Plaintiffs—a preliminary injunction covering not only Plaintiffs and Intervenors, but all covered financial institutions throughout the United States—Intervenors suggest that changed circumstances and additional considerations warrant a different result. (Dkt. No. 44 at pp. 15-16; Dkt. No. 47 at pp. 5-6; Dkt. No. 48 at p. 4; Dkt. No. 54 at pp. 14-15; Dkt. No. 61 at pp. 5-6). In denying nationwide relief, the Court utilized the guidance

---

[6] Multiple lenders, though, have initiated and joined this suit to complain of the burden imposed on them by the rule, and this prong of the preliminary injunction analysis presupposes a balance of *harms*. *See* (Dkt. No. 61 at pp. 4-5).
[7] *See* 88 Fed. Reg. at 35,150 (implementing 15 U.S.C. § 1691c-2) (effective July 21, 2010).

supplied by *Louisiana v. Becerra*, 20 F.3d 260 (5th Cir. 2021), in which the Fifth Circuit identified two circumstances that would justify a nationwide injunction (a constitutional command for uniform laws and concern that patchwork rulings would undermine an injunction limited to certain jurisdictions) and two of the more generic reasons that would not (the nationwide scope of a mandate and the generalized need for uniformity, without more). (Dkt. No. 25 at pp. 15-16) (citing *Becerra*, 20 F.3d at 264). In the Court's view, Plaintiffs' argument that a limited injunction would result in unequal enforcement of an invalid agency rule and lead to more confusion fell within the latter. (Dkt. No. 25 at pp. 15-16). But after the intervention of multiple, additional parties and consideration of the parties' ensuing briefing on the soundness of that ruling, the Court can now say with more assurance that the former is at play. Although no constitutional command for uniformity exists, there exists a statutory command for uniformity with constitutional implications. As Defendants observe, most laws have some general application, which alone does not justify nationwide relief. (Dkt. No. 46 at p. 4; Dkt. No. 60 at p. 4). But the Court agrees with Intervenors that the statute underlying the final rule does more; its very purpose is the equal application of lending laws to all credit applicants to avoid disparate outcomes, and it presumes uniform application to all covered financial institutions absent exemption by the Bureau. (Dkt. No. 44 at pp. 15-16; Dkt. No. 47 at p. 5; Dkt. No. 54 at pp. 14-15); *see* 15 U.S.C. § 1691c-2(a), (g)(2). To judicially exempt the parties to this case, but not others, from the Bureau's final rule both undermines the statute—what Defendants want to avoid—and leaves non-exempted lenders subject to the discretion of an agency whose very ability to act is a matter of constitutional concern pending resolution on a nationwide scale. This is not, as in *Becerra*, a scenario where many other entities on equal footing "may well have accepted and even endorsed the…rule," counseling in favor of judicial restraint; rather, Plaintiffs and Intervenors represent a wide swath of trade associations and their members, such that a limited injunction risks omitting those non-member

and/or smaller financial institutions less able to challenge the rule, and more likely to suffer harm should they continue to incur compliance costs that prove unnecessary and unrecoverable. (Dkt. No. 44 at p. 16; Dkt. No. 47 at p. 6; *see also* Dkt. No. 48 at p. 4; Dkt. No. 54 at p. 15; Dkt. No. 61 at pp. 5-6); *Becerra*, 20 F.4th at 263.[8] To date, patchwork rulings have not occurred—another district court has granted substantively identical preliminary injunctive relief to various Kentucky-based plaintiffs[9]—but the danger of the same and of patchwork enforcement by the Bureau, all with statutory and constitutional implications, remains. To limit the injunction would be to undermine the goals of preventing inequality in lending and harm to the constitutional structure pending U.S. Supreme Court review of the question at issue. Taken as a whole, the circumstances of this case justify extending preliminary injunctive relief to all financial institutions covered by the final rule.

C.   **Defendants' Challenge to Broadening Conduct Covered by Injunction**

Defendants raise an additional issue for resolution by the Court, in that they complain that Intervenors now seek to immediately cease all implementation or enforcement of the final rule, without limitation. (Dkt. No. 44-4; Dkt. No. 46 at p. 4; Dkt. No. 54-3; Dkt. No. 60 at p. 5).[10] According to Defendants, the absence of any such limitation impermissibly broadens the conduct covered by the Court's original injunction, since it "would seem to bar the Bureau from, for example, answering a regulatory inquiry from a covered bank or publishing guidance materials on its website." (Dkt. No. 46 at pp. 5-6). Each set of Intervenors responds that they do not seek to prohibit this conduct; rather, they ask for what the Court granted in its original injunction: protection from the requirements of the final rule pending the Supreme Court's decision in

---

[8] Defendants make no effort to argue otherwise.
[9] *See* (Dkt. No. 61 at p. 4); *Monticello Banking Co. v. CFPB*, 2023 WL 5983829, at *3 (E.D. Ky. Sept. 14, 2023).
[10] The Court's original injunction ordered Defendants to "immediately cease all implementation or enforcement of the Final Rule against Plaintiffs and their members." (Dkt. No. 25 at p. 16) (emphasis added).

*Community Financial Services*, albeit on a nationwide scale. (Dkt. No. 47 at pp. 6-7; Dkt. No. 48 at p. 4; Dkt. No. 61 at p. 6). To dispel any confusion, the Court's injunction will utilize and amend the original limiting language by ordering that Defendants cease implementation and enforcement of the final rule *against* Plaintiffs and their members, Intervenors and their members, and all covered financial institutions. Answering an inquiry or publishing guidance materials does not qualify as conduct taken against any financial institution, and does not fall within the conduct proscribed.

### III.  Conclusion

For the foregoing reasons, the Court hereby **ORDERS** that Intervenors' Motions for Preliminary Injunction are **GRANTED**.

Accordingly, the Court **ORDERS** that Defendants are preliminarily enjoined from implementing and enforcing the Final Rule, Small Business Lending Under the Equal Credit Opportunity Act, 88 Fed. Reg. 35,150 (effective Aug. 23, 2023), against Plaintiffs and their members, Intervenors and their members, and all covered financial institutions pending the Supreme Court's reversal of *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 978, 215 L. Ed. 2d 104 (2023), a trial on the merits of this action, or until further order of this Court. Defendants shall immediately cease all implementation or enforcement of the final rule against Plaintiffs and their members, Intervenors and their members, and all covered financial institutions.

The Court further **ORDERS** that all deadlines for compliance with the requirements of the final rule are stayed for Plaintiffs and their members, Intervenors and their members, and all covered financial institutions until after the Supreme Court's final decision in *Community Financial Services*. In the event of a reversal in that case, Defendants are **ORDERED** to extend Plaintiffs and their members, Intervenors and their members, and all covered financial institutions'

deadlines for compliance with the requirements of the final rule to compensate for the period stayed.

The Court also **ORDERS** that no security bond shall be required under Federal Rule of Civil Procedure 65(c).

SO ORDERED October 26, 2023, at McAllen, Texas.

*[signature: Randy Crane]*

Randy Crane
Chief United States District Judge