**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | |
|---|---|
| TEXAS BANKERS ASSOCIATION;<br>RIO BANK, MCALLEN, TEXAS; and<br>AMERICAN BANKERS ASSOCIATION<br><br>                                    *Plaintiffs*,<br><br>v.<br><br>CONSUMER FINANCIAL PROTECTION<br>BUREAU; and ROHIT CHOPRA, in his official<br>capacity as Director of the Consumer Financial<br>Protection Bureau,<br><br>                                    *Defendants*. | Case No: 7:23-cv-00144 |

**PLAINTIFFS'/INTERVENORS' MOTION TO**
**SUPPLEMENT THE ADMINISTRATIVE RECORD**

Pursuant to Local Civil Rule 7.1, Plaintiffs/Intervenors respectfully request that the Court

supplement the Administrative Record with the document: Dan Brown & Kathleen Ryan, *The true*

*cost of too much data*, ABA Banking Journal (Feb. 26, 2024), *available at*

https://bankingjournal.aba.com/2024/02/the-true-cost-of-too-much-data/.

As set forth in the accompanying Memorandum in Support of Plaintiffs'/Intervenors'

Motion to Supplement the Administrative Record, good cause exists to grant this Motion. The

Consumer Financial Protection Bureau (CFPB) failed to undertake a comprehensive cost survey

for its Final Rule promulgated pursuant to § 1071 of the Dodd-Frank Act or allow the regulated

community time to provide this information during the notice-and-comment period. This, in turn,

led the CFPB to drastically underestimate the costs of the Final Rule and its effects on the regulated

community, despite warnings from even another federal agency. The Supplement submitted here

explains the results of a survey done by the American Bankers Association (ABA) to assess the

true costs (both implementation and ongoing) of the Final Rule. This background material highlights the CFPB's failure to consider all of the relevant factors in implementing its Final Rule and thus meets the criteria for supplementing the record. *See Medina County Environment Action Association v. Surface Transportation Board*, 602 F.3d 687 (5th Cir. 2010); *La Union del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 141 F. Supp. 3d 681, 694 (S.D. Tex. 2015).

Plaintiffs/Intervenors request that this Court grant the Motion to Supplement the Administrative Record and supplement the record with the attached Supplement containing the ABA Cost Survey Results.

February 29, 2024

Respectfully submitted,

*/s/ John C. Sullivan*

John C. Sullivan
Attorney-in-Charge
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

James J. Butera*
Ryan Israel*
**MEEKS, BUTERA & ISRAEL PLLC**
2020 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 795-9714
jbutera@meeksbi.com
risrael@meeksbi.com

Thomas Pinder*
Andrew Doersam*
**AMERICAN BANKERS ASSOCIATION**
1333 New Hampshire Avenue, NW
Washington, DC 20036
tpinder@aba.com
adoersam@aba.com

*Counsel for Plaintiffs Texas Bankers Association, Rio Bank, and American Bankers Association*

*\* admitted pro hac vice*

*/s/ James Bowen*
James Bowen
Elbert Lin
Erica Nicole Peterson
Jennifer Lauren Clyde
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, TX 75202
Telephone: (214) 468-3309
Facsimile: (214) 880-0011
jbowen@huntonak.com

*Counsel for Intervenors Texas First Bank,
Independent Bankers Association of Texas,
and Independent Community Bankers of
America*

*/s/ Misha Tseytlin*
Misha Tseytlin
Joseph J. Reilly
**TROUTMAN PEPPER HAMILTON SANDERS
LLP**
401 9th Street NW, Suite 1000
Washington, DC 20004
Telephone: (202) 274-2908
joseph.reilly@troutman.com

Daniel Gordon Gurwitz
**ATLAS HALL RODRIGUEZ LLP**
818 West Pecan Boulevard
McAllen, TX 78501
Telephone: (956) 682-5501
dgurwitz@atlashall.com

*Counsel for Intervenors Texas Farm Credit,
Farm Credit Council, and Capital Farm
Credit*

*/s/ Owen Colin Babcock*
Alan Bartlett Padfield
Kelsey Nicole Linendoll
Owen Colin Babcock
**PADFIELD & STOUT LLP**
421 West Third Street, Suite 910
Fort Worth, TX 76102
Telephone: (817) 338-1616
Facsimile: (817) 338-1610
obabcock@padfieldstout.com

*Counsel for Intervenors XL Funding, LLC,
and Equipment Leasing and Finance
Association*

*/s/ Sarah J. Auchterlonie*
Sarah J. Auchterlonie
**BROWNSTEIN HYATT FARBER SCHRECK,
LLP**
675 15th Street, Suite 2900
Denver, CO 80202
Telephone: (602) 362-0034
Facsimile: (303) 223-1111
sja@bhfs.com

*Counsel for Intervenors Rally Credit Union,
Credit Union National Association, and
Cornerstone Credit Union League*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | |
|---|---|
| TEXAS BANKERS ASSOCIATION;<br>RIO BANK, MCALLEN, TEXAS; and<br>AMERICAN BANKERS ASSOCIATION<br><br>                                        *Plaintiffs*,<br><br>v.<br><br>CONSUMER FINANCIAL PROTECTION<br>BUREAU; and ROHIT CHOPRA, in his official<br>capacity as Director of the Consumer Financial<br>Protection Bureau,<br><br>                                        *Defendants*. | Case No: 7:23-cv-00144 |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS'/INTERVENORS' MOTION TO
SUPPLEMENT THE ADMINISTRATIVE RECORD**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION AND BACKGROUND ....................................................................... 1

ARGUMENT ..................................................................................................................... 5

      SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD IS APPROPRIATE
      BECAUSE THE BACKGROUND INFORMATION PROVIDED BY THE ABA
      SURVEY DEMONSTRATES THE CFPB'S FAILURE TO CONSIDER ALL
      RELEVANT FACTORS .............................................................................................. 5

CONCLUSION ................................................................................................................ 10

CERTIFICATE OF CONFERENCE ............................................................................... 13

CERTIFICATE OF SERVICE ......................................................................................... 13

CERTIFICATE OF COMPLIANCE ............................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Cnty. of Suffolk v. Sec'ry of Interior*,
  562 F.2d 1368 (2d Cir. 1977) ................................................................................. 6

*Daikin Applied Ams Inc. v. Env't Prot. Agency*,
  39 F.4th 701 (D.C. Cir. 2022) ............................................................................... 6

*Davis Mountains Trans-Pecos Heritage Ass'n v. U.S. Air Force*,
  249 F. Supp. 2d 763 (N.D. Tex. 2003), *vacated sub nom. Davis Mountains Trans-Pecos*
  *Heritage Ass'n. v. Fed. Aviation Admin.*, 116 F. App'x 3 (5th Cir. 2004) .................... 5, 6, 7, 9

*Fla. Power & Light Co. v. Lorion*,
  470 U.S. 729, 744 (1985) ..................................................................................... 10

*Gulf Coast Rod Reel & Gun Club, Inc. v. U.S. Army Corps of Eng'rs*,
  No. 3:13-CV-126, 2015 WL 1883522 (S.D. Tex. Apr. 20, 2015) ......................................... 5, 6

*Independent Turtle Farmers of Louisiana, Inc. v. United States*,
  703 F. Supp. 2d 604 (W.D. La. 2010) ..................................................................... 8, 9

*La Union del Pueblo Entero v. Fed. Emergency Mgmt. Agency*,
  141 F. Supp. 3d 681 (S.D. Tex. 2015) ..................................................................... 6, 9

*Medina County Environment Action Association v. Surface Transportation Board*,
  602 F.3d 687 (5th Cir. 2010) ............................................................................... 6, 7

*Sierra Club v. Peterson*,
  185 F.3d 349 (5th Cir. 1999) ............................................................................... 9

*Texas v. Biden*,
  No. 2:21-CV-067-Z, 2021 WL 4552547 (N.D. Tex. July 19, 2021) ......................................... 7

*Texas v. United States*,
  524 F.Supp.3d 598, 656 (S.D. Tex. 2021) ................................................................. 9

**Statutes**

§ 1071 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ................. 1

12 U.S.C. § 5512(b)(2)(A) ..................................................................................... 1, 9

15 U.S.C. § 634b(3) ........................................................................................... 3

5 U.S.C. § 706 (Administrative Procedure Act) .............................................................. 5

**Other Authorities**

Dan Brown and Kathleen Ryan, *The true cost of too much data*, ABA Banking Journal
    (Feb. 26, 2024), *available at* https://bankingjournal.aba.com/2024/02/the-true-cost-of-too-
    much-data/ ................................................................................................................................... 4

**INTRODUCTION AND BACKGROUND**

This case concerns a challenge to the Consumer Financial Protection Bureau's (CFPB's) Final Rule implementing § 1071 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010.  If it is allowed to go into effect, the Final Rule will impose significant data collection and reporting obligations on commercial lenders who extend credit to small businesses, including obligations to collect detailed information regarding the terms of small business loans, the small business that is applying for credit, and the race, ethnicity, sex, and sexual orientation of the business's owners.  The CFPB is demanding the collection and reporting of some of this information pursuant to an express Congressional directive, but is imposing the most burdensome data collection obligations pursuant to a supposed grant of discretionary rulemaking authority.

Plaintiffs allege that the CFPB has exceeded the scope of this authority.  In the alternative, Plaintiffs allege that the CFPB has exercised its discretionary authority in an arbitrary and capricious manner and, relatedly, that it has exercised this authority based on a fundamentally flawed assessment of the costs and benefits of the Final Rule.  Accordingly, a central question in this case—perhaps the central question—is whether the CFPB fairly and appropriately carried out its statutory obligation to consider the costs that its vast expansion of § 1071's data collection obligations would impose on lenders, costs that even CFPB acknowledges will be passed along to the small businesses § 1071 was enacted to assist.  *See* 12 U.S.C. § 5512(b)(2)(A).

It did not.  And while Plaintiffs believe the existing administrative record demonstrates the CFPB's failure to properly estimate or consider the costs the Final Rule would impose, the record is not complete.  During the rulemaking process, the CFPB declined to afford Plaintiffs, their members, and other small business lenders an adequate opportunity to: (1) comprehend the compliance obligations the rule would impose; (2) estimate either the one-time implementation

costs or the on-going costs compliance associated with those obligations would impose; and (3) gather and submit this information before the comment deadline closed, a short 90 days after the proposed rule was published in the Federal Register.

In fact, soon after publication of the proposed rule, Plaintiffs American Bankers Association (ABA), Texas Bankers Association, Independent Community Bankers of America, and Credit Union National Association—along with other groups representing essentially the entire small business lending community—submitted a comment letter imploring the CFPB to extend the comment deadline by 45 days in order to avoid the "risk that the Bureau will make policy decisions based on flawed or incomplete information." AR.014369. Plaintiffs pointed out that "[c]ommunity banks and credit unions do not have staff that can read and respond to the notice within the 90-days provided. Yet accurately measuring anticipated costs and identifying less burdensome alternatives is critical to finalizing a carefully calibrated rule that will help preserve relationship banking." AR.014370.[1]

Plaintiffs ended the letter by stating plainly the consequences of the CFPB's failure to grant the reasonable request for an additional 45 days to comment on a rule that the Bureau had over a dozen years to develop: "*The current comment deadline will preclude the development of a sufficiently broad and complete factual record necessary to support effective policy action* in an area that will have significant consequences for small businesses, small banks and credit unions, and the U.S. economy." *Id.* (emphasis added).

The Small Business Administration (SBA) Office of Advocacy—the entity within the Federal government specifically directed by Congress to "measure the direct costs and other effects

---

[1] "AR." cites are to the Administrative Record prepared by the CFPB. A Joint Appendix is being prepared by the parties cataloguing all documents from the Administrative Record cited in their respective briefs.

of government regulation on small businesses" and to "make legislative and nonlegislative proposals for eliminating excessive or unnecessary regulations of small businesses," 15 U.S.C. § 634b(3)—soon followed suit. AR.14407–08. The Office of Advocacy pointed out that "[t]he small entities that will be required to comply with the regulation are in the best position to provide the CFPB with information about the potential costs associated with the proposal," and reminded the CFPB that "[t]his information is crucial for determining the economic impact of the rule and for considering less costly alternatives." AR.014407. It expressed support for Plaintiffs' requested extension of the comment deadline, in part, based on concerns expressed to it by small entities that "the 90-day comment period is inadequate considering the length and density of the proposed rule" and would not provide "enough time for small financial institutions to collect the information requested and provide meaningful comments." AR.014408. This request for an extension was repeated when the SBA Office of Advocacy submitted its comments on the Final Rule, AR.018386, where it was also noted that the stakeholders had indicated that the CFPB's cost estimates were too low, but that trade associations representing small financial institutions could provide "authoritative information about the costs associated with the NPRM." AR.018388 & n.10.

These requests were ignored. The CFPB refused to extend the comment deadline, and—as predicted—adopted a Final Rule that failed to "accurately measur[e] anticipated costs," at least in part, because it was not based on "a sufficiently broad and complete factual record." *See* AR.014370.

Despite the CFPB's refusal to allow small business lenders the opportunity to develop comprehensive cost estimates during the rulemaking process, the ABA recently conducted a survey of members regarding the costs of complying with the Final Rule. The results of that comprehensive survey demonstrate how woefully inadequate the CFPB's estimates were and call

into question the agency's motive for denying small business lenders the opportunity to provide this information before imposing the Final Rule's massive costs.  *See* Dan Brown and Kathleen Ryan, *The true cost of too much data*, ABA Banking Journal (Feb. 26, 2024), *available at* https://bankingjournal.aba.com/2024/02/the-true-cost-of-too-much-data/.  As set forth in Exhibit 1 (declaration of Kathleen Ryan attesting to the ABA Cost Survey Results) and the Supplement, the one-time implementation costs to the banking industry alone (*i.e.*, not including credit unions) are expected to be over $6.8 *billion*, orders of magnitude larger than the CFPB's estimate of between $147 and $159 *million*.  SAR.6.[2]  Similarly, the ABA's Cost Survey suggests that ongoing compliance costs to banks alone will be as much as $1.9 *billion* per year, multiples of the CFPB's estimate of between $297 and $313 *million* for banks and credit unions.  SAR.7.  Figure A presents graphically (and to actual scale) the magnitude of the CFPB's underestimation just in the depository institution sector alone.

### FIGURE A



IMPLEMENTATION                    ONGOING COMPLIANCE

After asking lenders in a limited survey to calculate only implementation costs and only those based on the 13 statutory data points, the CFPB assumed that the additional start-up costs for expanding to 81 data points would be negligible (since lenders were already going to have to

---

[2] "SAR" cites are to the Supplemental Administrative Record, offered here in the Supplement attached to this Motion.

collect 13 data points) and that the additional ongoing cost of the Final Rule would only be $10,000,000 per year. AR.000631. The recent survey data, however, indicates the ongoing costs for collecting 81 data points will add around $1,600,000,000 each year *on top of* what collecting 13 data points would have cost (and that is just for banks). Plaintiffs now seek to supplement the Administrative Record with this more comprehensive picture of the costs.

ARGUMENT

**Supplementation Of The Administrative Record Is Appropriate Because The Background Information Provided By The ABA Survey Demonstrates The CFPB's Failure To Consider All Relevant Factors.**

The information in the ABA Cost Survey Results helps answer a central question in this case and—but for the CFPB's refusal to extend the comment deadline—would have already been part of the administrative record in this case. In such circumstances, Fifth Circuit precedent provides Plaintiffs with a remedy. The Motion to Supplement the Administrative Record with the document in the attached Supplement should be granted.

Review of final agency action under the Administrative Procedure Act is based on the "whole record." 5 U.S.C. § 706. And when the "whole record" is straightforward, courts will simply adjudicate claims based on the record compiled by the agency defendant. Courts recognize circumstances, however, where the agency's record is insufficient and that it is appropriate in such cases to permit "the introduction of extra-record evidence to enable effective judicial review.*" Gulf Coast Rod Reel & Gun Club, Inc. v. U.S. Army Corps of Eng'rs*, No. 3:13-CV-126, 2015 WL 1883522, at *1 (S.D. Tex. Apr. 20, 2015).

There are a range of circumstances indicating when supplementation of the record is necessary. These are referred to as the "*Davis Mountains*" factors and include:

(1) when agency action is not adequately explained in the record before the court;
(2) *when looking to determine whether the agency considered all relevant factors*;
(3) when a record is incomplete; (4) when a case is so complex that a court needs

5

more evidence to enable it to understand the issues; (5) *when evidence arising after the agency action shows whether the decision was correct or not*; (6) in certain [National Environmental Policy Act (NEPA)] cases; (7) in preliminary injunction cases; and (8) when an agency acts in bad faith.

*La Union del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 141 F. Supp. 3d 681, 694 (S.D. Tex. 2015) (citing cases) (emphases added).[3]

In *Medina County Environment Action Association v. Surface Transportation Board*, 602 F.3d 687 (5th Cir. 2010), the Fifth Circuit also articulated three broader circumstances that could justify supplementation of the administrative record with extra-record evidence: "(1) the agency deliberately or negligently excluded documents that may have been adverse to its decision, . . . (2) the district court needed to supplement the record with 'background information' in order to determine whether the agency considered all of the relevant factors, or (3) the agency failed to explain administrative action so as to frustrate judicial review." *Id.* at 706 (ellipsis in original). Courts have subsequently recognized that there is little "practical distinction between the eight exceptions listed in *Davis Mountains* and the three listed in *Medina*," and that *Medina* did not affect a "sea change in this circuit's law on extra-record evidence." *Gulf Coast*, 2015 WL 1883522, at *3.

However described, the ultimate test is whether "an adequate record can . . . only be determined 'by looking outside the [AR] to see what the agency may have ignored.'" *Davis Mountains*, 249 F. Supp. 2d at 776 (quoting *Cnty. of Suffolk v. Sec'ry of Interior*, 562 F.2d 1368, 1384 (2d Cir. 1977)) (alteration in original). Courts outside the Fifth Circuit are in accord. The D.C. Circuit recently recognized that it is appropriate to consider of extra-record evidence if

---

[3] The *Davis Mountains* factors derive from *Davis Mountains Trans-Pecos Heritage Ass'n v. U.S. Air Force*, 249 F. Supp. 2d 763, 776 (N.D. Tex. 2003), *vacated sub nom. Davis Mountains Trans-Pecos Heritage Ass'n. v. Fed. Aviation Admin*., 116 F. App'x 3 (5th Cir. 2004).

"background information is needed to determine whether the agency considered all the relevant factors, or if the agency affirmatively excludes relevant evidence." *Daikin Applied Ams Inc. v. Env't Prot. Agency*, 39 F.4th 701, 716–17 (D.C. Cir. 2022) (cleaned up). When an agency intentionally sidesteps a problem and shields itself from data that would contradict its conclusion(s), courts should allow the record to be supplemented with information from the regulated community. *Texas v. Biden*, No. 2:21-CV-067-Z, 2021 WL 4552547, at *1–2 (N.D. Tex. July 19, 2021) (recognizing that "[t]he only means for 'ignored' factors to come before the Court is for Plaintiffs to supplement the record").

Those circumstances are met here. The Administrative Record should be supplemented under either *Davis Mountains* or *Medina* because of the background information that was ignored by the CFPB that demonstrates the Bureau's failure to consider all of the relevant factors. After all, the Bureau only ever conducted a single survey to quantify the costs of compliance, and that one survey: (1) was a year prior to the Notice of Proposed Rulemaking that first introduced the 81 data points required to be collected under the new rule; (2) only asked the institutions surveyed to consider the cost of collecting the 13 data points set out in the Act; and (3) only asked financial institutions to consider the "One-Time" costs associated with starting to collect that information and not ongoing costs. *See* AR.000023; AR.000444. Even assuming the survey sample was representative of lenders—and there are several good reasons to think that it wasn't—the information conveyed to the Bureau was based on 13 data points that were qualitatively different from the 81 in the Final Rule. The new information required by the CFPB's Final Rule involves far more intrusive and time-consuming inquiries than the 13 points for which Congress asked. As a result of this fundamental flaw in its survey, the CFPB severely underestimated the cost the bloated Final Rule would impose on lenders.

7

Because the Bureau deliberately chose not to conduct a survey of the real costs for the Final Rule, the CFPB was forced to use its flawed cost estimate for the ongoing costs based on a separate rule concerning data collection in a fundamentally different lending market. *See* AR.000347. Worse, the CFPB did this in the face of industry and even the SBA Office of Advocacy telling the Bureau that the enormous costs associated with the expanded set of data points would drive lenders from the market and increase the price of credit for small businesses that Congress wanted to help through the Act. AR.018385. And at the same time, the CFPB also refused to extend the notice and comment period to allow the regulated community more time to conduct such an analysis of its own. All this counsels in favor of supplementing the Administrative Record.

The district court's decision in *Independent Turtle Farmers of Louisiana, Inc.* (ITFL) *v. United States*, 703 F. Supp. 2d 604 (W.D. La. 2010), is instructive. There, the Food and Drug Administration (FDA) denied the ITFL's petition to lift an FDA ban on the sale of viable turtle eggs and live turtles with a shell of less than four inches in length. *Id.* at 609. The FDA's decision that there existed "reasonable grounds" to maintain the ban was based on its view that the ban was necessary to prevent the spread of communicable diseases, in particular salmonellosis. *Id.* at 607. In the subsequent challenge, the ITFL moved the court to supplement the administrative record with four articles postdating the FDA's decision discussing the costs of maintaining the ban and demonstrating that, in fact, the spread of salmonella in turtles subject to the ban could be contained through other techniques. *Id.* at 611–12. ITFL argued the administrative record did not contain scientific or other background information sufficient to allow the FDA, and by extension the court, to determine whether the FDA decision to maintain the ban was arbitrary or capricious. *Id.* The court agreed, finding that the publications showed that the FDA did not adequately explain its action in the administrative record supplied to the court and supplementing the administrative

record with the four articles. *Id.* at 612. Like the publications in *Independent Turtle Farmers*, consideration of the ABA Cost Survey in the Supplement here will assist the Court by providing background information relevant to the Court's review the adequacy of the CFPB's actions.

The CFPB has an obligation to consider the costs its rules will impose on the regulated community, in particular the small community banks and diverse financial institutions that will be disproportionately harmed by this rule. 12 U.S.C. § 5512(b)(2)(A)(ii). By refusing to extend the comment deadline, however, the CFPB precluded the development of an adequate record regarding these costs. Just as agencies cannot evade their obligations under NEPA by deliberately ignoring or excluding comparative evidence that bears on the environmental impacts of an agency action, *Sierra Club v. Peterson*, 185 F.3d 349, 370 (5th Cir. 1999), the CFPB cannot dodge its obligation to consider the costs that a rulemaking will impose on banks by arbitrarily limiting lenders' ability to present evidence regarding those costs during the rulemaking process. Thus, as the *Davis Mountains* factors show, this case provides an instance where supplementation is appropriate. *See La Union del Pueblo*, 141 F. Supp. 3d at 694. And as those factors further confirm, it is of no moment that this evidence arose after the agency action at issue. *Id.* (noting "evidence arising after the agency action [that] shows whether the decision was correct or not" can be used to supplement the record); *see Independent Turtle Farmers*, 703 F. Supp. at 611–12.

*          *          *

The CFPB cannot provide a logical rationale for disregarding the warnings of the industry, academics, state regulators, and another agency of the Federal government regarding the costs of implementing its Final Rule. Though the CFPB has no expertise with knowing what these costs are, the Bureau evidently expects a reviewing court to take its word for it that it adequately considered the costs of the Final Rule. This is not the law. *See Texas v. United States*,

9

524 F.Supp.3d 598, 656 (S.D. Tex. 2021) (requiring a "cogent" explanation of agency decisions). But because there is no data for these costs in the record, and because the CFPB intentionally decided to forego a survey that would reveal those costs, supplementing the Administrative Record is appropriate here.  The ABA's survey results go straight to the primary issue that infects every part of the CFPB's 900+ page rule, and the Bureau should not be allowed to hide behind a misleading survey issued when the regulated community believed it was only facing the 13 statutorily-mandated data points and not the CFPB's expanded Final Rule.

CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court supplement the administrative record with the ABA Cost Survey Results in the Supplement or, in the alternative, remand the matter to the agency to consider the ABA Cost Survey Results in the first instance.[4]

---

[4] *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

February 29, 2024                          Respectfully submitted.

                                           /s/ John C. Sullivan
                                           John C. Sullivan
                                           Attorney-in-Charge
                                           Texas Bar No. 24083920
                                           **S|L LAW PLLC**
                                           610 Uptown Boulevard, Suite 2000
                                           Cedar Hill, TX 75104
                                           Telephone: (469) 523-1351
                                           Facsimile: (469) 613-0891
                                           john.sullivan@the-sl-lawfirm.com

                                           James J. Butera*
                                           Ryan Israel*
                                           **MEEKS, BUTERA & ISRAEL PLLC**
                                           2020 Pennsylvania Avenue, NW
                                           Washington, DC 20006
                                           Telephone: (202) 795-9714
                                           jbutera@meeksbi.com
                                           risrael@meeksbi.com

                                           Thomas Pinder*
                                           Andrew Doersam*
                                           **AMERICAN BANKERS ASSOCIATION**
                                           1333 New Hampshire Avenue, NW
                                           Washington, DC 20036
                                           tpinder@aba.com
                                           adoersam@aba.com

                                           *Counsel for Plaintiffs Texas Bankers
                                           Association, Rio Bank, and American
                                           Bankers Association*

                                           *\* admitted pro hac vice*

*/s/ James Bowen*
James Bowen
Elbert Lin
Erica Nicole Peterson
Jennifer Lauren Clyde
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, TX 75202
Telephone: (214) 468-3309
Facsimile: (214) 880-0011
jbowen@huntonak.com


*Counsel for Intervenors Texas First Bank,*
*Independent Bankers Association of Texas,*
*and Independent Community Bankers of*
*America*


*/s/ Misha Tseytlin*
Misha Tseytlin
Joseph J. Reilly
**TROUTMAN PEPPER HAMILTON SANDERS**
**LLP**
401 9th Street NW, Suite 1000
Washington, DC 20004
Telephone: (202) 274-2908
joseph.reilly@troutman.com

Daniel Gordon Gurwitz
**ATLAS HALL RODRIGUEZ LLP**
818 West Pecan Boulevard
McAllen, TX 78501
Telephone: (956) 682-5501
dgurwitz@atlashall.com


*Counsel for Intervenors Texas Farm Credit,*
*Farm Credit Council, and Capital Farm*
*Credit*

*/s/ Owen Colin Babcock*
Alan Bartlett Padfield
Kelsey Nicole Linendoll
Owen Colin Babcock
**PADFIELD & STOUT LLP**
421 West Third Street, Suite 910
Fort Worth, TX 76102
Telephone: (817) 338-1616
Facsimile: (817) 338-1610
obabcock@padfieldstout.com


*Counsel for Intervenors XL Funding, LLC,*
*and Equipment Leasing and Finance*
*Association*


*/s/ Sarah J. Auchterlonie*
Sarah J. Auchterlonie
**BROWNSTEIN HYATT FARBER SCHRECK,**
**LLP**
675 15th Street, Suite 2900
Denver, CO 80202
Telephone: (602) 362-0034
Facsimile: (303) 223-1111
sja@bhfs.com


*Counsel for Intervenors Rally Credit Union,*
*Credit Union National Association, and*
*Cornerstone Credit Union League*

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that I conferred with Kevin Friedl, Senior Counsel for the CFPB, by phone and email regarding this Motion.  Defendants are opposed to the relief sought in this Motion.

*/s/ John C. Sullivan*
John C. Sullivan

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing has been filed on February 29, 2024, via the CM/ECF system and via email courtesy copy to Counsel for Defendants.

*/s/ John C. Sullivan*
John C. Sullivan

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

This document was prepared using Microsoft Word 365, 2022 Version.  It is written in Times New Roman typeface using 12-point font.  The Motion to Supplement the Administrative Record contains 253 words and the Memorandum in Support of Plaintiffs'/Intervenors' Motion to Supplement the Administrative Record contains 3081 words.

*/s/ John C. Sullivan*
John C. Sullivan

*Counsel for Plaintiffs*

13