**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| TEXAS BANKERS ASSOCIATION; RIO BANK, MCALLEN, TEXAS; and AMERICAN BANKERS ASSOCIATION, | ) ) ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 7:23-cv-00144 |
| CONSUMER FINANCIAL PROTECTION BUREAU and ROHIT CHOPRA, in his official capacity as Director of the Consumer Financial Protection Bureau, | ) ) ) ) ) | |
| | ) | |
| *Defendants*. | ) | |

**INTERVENOR-PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS AND
BRIEF IN SUPPORT**

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF THE ARGUMENT ..................................................... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................................. 2

APPLICABLE LEGAL STANDARD ..................................................................................... 7

ARGUMENT AND LEGAL AUTHORITIES........................................................................... 7

CONCLUSION....................................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CFPB v. All American Check Cashing, Inc.*,
  33 F.4th 218 (5th Cir. 2022) .................................................................................. 12

*CFPB v. CFSA*,
  601 U.S. 416 (2024) ................................................................................... *passim*

*CFSA v. CFPB*,
  51 F.4th 616 (5th Cir. 2022) .......................................................................... *passim*

*Christensen v. Harris Cnty.*,
  529 U.S. 576 (2000) ..................................................................................... 8, 10

*Collins v. Yellen*,
  594 U.S. 220 (2021) ............................................................................... 3, 12, 16

*Corning Glass Works v. Brennan*,
  417 U.S. 188 (1974) ................................................................................. 8, 9, 10

*De Treville v. United States*,
  445 F.2d 1306 (4th Cir. 1971) ........................................................................... 11

*Edwards v. Douglas*,
  269 U.S. 204 (1925) ........................................................................................... 11

*Est. of Cowart v. Nicklos Drilling Co.*,
  505 U.S. 469 (1992) ............................................................................................. 8

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
  313 F.3d 305 (5th Cir. 2002) ............................................................................... 7

*Helvering v. Ohio Leather Co.*,
  317 U.S. 102 (1942) ........................................................................................... 11

*Hercules Gasoline Co. v. Commissioner*,
  326 U.S. 425 (1945) ........................................................................................... 11

*Huawei Techs. USA, Inc. v. FCC*,
  2 F.4th 421 (5th Cir. 2021) .................................................................................. 8

*In re England*,
  153 F.3d 232 (5th Cir. 1998) ......................................................................... 8, 10

*Inhance Techs., L.L.C. v. U.S. Env't Prot. Agency*,
    96 F.4th 888 (5th Cir. 2024)................................................................................8

*King v. Burwell*,
    576 U.S. 473 (2015) .......................................................................................8

*Lucia v. SEC*,
    585 U.S. 237 (2018) .....................................................................................12

*McCarthy v. Bronson*,
    500 U.S. 136 (1991) .......................................................................................8

*Mississippi v. Louisiana*,
    506 U.S. 73 (1992) .........................................................................................8

*NLRB v. Noel Canning*,
    573 U.S. 513 (2014) .....................................................................................12

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997) .......................................................................................8

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020) .....................................................................................12

*United States v. McIntosh*,
    833 F.3d 1163 (9th Cir. 2016) .....................................................................12

**Constitutional Provisions**

U.S. Const. art. I.............................................................................................3

**Statutes And Rules**

12 U.S.C. § 289 ...........................................................................................13

12 U.S.C. § 342 ...........................................................................................13

12 U.S.C. § 5497 ...................................................................................*passim*

12 U.S.C. § 5511 .............................................................................................2

15 U.S.C. § 1691c-2 ..................................................................................1, 3

31 U.S.C. § 1341 ...........................................................................................12

31 U.S.C. § 1342 .....................................................................................12, 13

Fed. R. Civ. P. 12 .......................................................................................1, 7

**Regulations**

12 C.F.R. § 1002 ................................................................................. 1, 6, 16

86 Fed. Reg. 56356 (Oct. 8, 2021)............................................................ 3

88 Fed. Reg. 35150 (May 31, 2023) ......................................................... 1

88 Fed. Reg. 35165 (July 12, 2024).......................................................... 1

89 Fed. Reg. § 55024 ................................................................................ 6

89 Fed. Reg. 55024 (July 3, 2024)..................................................... 1, 16

**Other Authorities**

American Heritage Dictionary .................................................................. 9

Bd. of Governors of the Fed. Rsrv. Sys., Federal Reserve Balance Sheet
     Developments (May 2023)............................................................... 14

Bd. of Governors of the Fed. Rsrv. Sys., *Federal Reserve Banks Combined
     Quarterly Financial Report* (Mar. 31, 2024) ...................... 5, 7, 11, 15

Bd. of Governors of the Fed. Rsrv. Sys., *Federal Reserve Board announces
     preliminary financial information for the Federal Reserve Banks' income
     and expenses in 2023* (Jan. 12, 2024)........................................ 6, 14

BSFT Accounting Manual ...................................................................... 10

CFPB, *Financial Report of the CFPB* (Nov. 15, 2023)............................ 15

CFPB, *Financial Report Of The Consumer Financial Protection Bureau*
     (Nov. 15, 2022) ............................................................................. 14

CFPB, *Funds transfer requests*............................................................... 15

CFPB, Small Business Lending under the Equal Credit Opportunity Act
     (Regulation B) (Mar. 30, 2023)........................................................ 4

Cong. Research Serv., *Why Is The Federal Reserve Operating At A Loss*
     (Jan. 23, 2023)............................................................................... 14

Encyclopedia of Banking and Finance (10th ed. 1994)............................. 9

Fed. Rsrv. Bank of St. Louis, *Liabilities and Capital: Liabilities: Earnings
     Remittances Due to the U.S. Treasury: Wednesday Level* .............. 6, 13

Fed. Rsrv. Sys., *Federal Reserve System Audited Annual Financial Statements* (Mar. 26, 2024) ................................................................................................ 10

Federal Reserve Form H.4.1 ................................................................................ 11

Gov't Accountability Off., *Antideficiency Act Resources* ............................... 13

Letter from Ricardo A. Aguilera, Div. Dir. and Chief Fin. Off., Bd. of Governors of the Fed. Rsrv. Sys., to Dana James, Acting Chief Fin. Off., CFPB (Oct. 19, 2022) ........................................................................................ 6

Letter from Rohit Chopa, Director, CFPB, to Jerome Powell, Chair, Bd. of Governors of Fed. Rsrv. Sys. (Oct. 14, 2022) ................................................. 6, 15

Merriam-Webster ................................................................................................. 9

Miguel Faria e Castro, Samuel Jordan-Wood, *The Fed's Remittances to the Treasury: Explaining the 'Deferred Asset'*, Fed. Rsrv. Bank of St. Louis (Nov. 21, 2023) ............................................................................................. 5, 13

Nasdaq, *Glossary of Stock Market Terms* ....................................................... 10

Oxford Dictionary of Accounting (4th ed. 2010) .............................................. 9

SEC, *Beginners' Guide to Financial Statements* (Jan. 12, 2014) .................... 10

SEC, Compliance and Disclosure Interpretations ........................................... 10

Stanley I. Langbein, *Federal Income Taxation of Banks & Financial Institutions* (2024) ............................................................................................................... 9

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Intervenor-Plaintiffs the Farm Credit Council (the "Council"), Texas Farm Credit ("TFC"), and Capital Farm Credit ("CFC") (collectively, the "Farm Credit Intervenors") file this Motion for Judgment on the Pleadings and Brief in Support pursuant to Federal Rule of Civil Procedure 12(c).

Congress instructed the Consumer Financial Protection Bureau ("CFPB") to establish a rule mandating that financial institutions disclose a limited set of data points for loan applications submitted by small businesses. *See* Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No.111-203, § 1071 (codified at 15 U.S.C. § 1691c-2) ("Section 1071").  In Section 1071, Congress specified that lenders compile and disclose basic information regarding small business credit applications to the CFPB.  15 U.S.C. § 1691c-2(a).  CFPB published the Final Rule implementing Section 1071 in the Federal Register on May 31, 2023, and it went into effect on August 29, 2023.  88 Fed. Reg. 35150, 35150 (May 31, 2023) (codified as 12 C.F.R. § 1002 (2023) ("Final Rule")).  The CFPB then modified the rule on July 3, 2024, 89 Fed. Reg. 55024 (July 3, 2024) (to be codified at 12 C.F.R. § 1002).  Members of the Council are subject to the Final Rule, *see* 88 Fed. Reg. 35150, 35544 (codified at 12 C.F.R. § 1002.106(b)(1)); 88 Fed. Reg. 35165 (July 12, 2024), and must undertake significant and costly efforts to comply with its burdensome reporting requirements.

While the Final Rule is arbitrary and capricious for the reasons Plaintiffs and Intervenors have explained, the Final Rule is unconstitutional and unlawful in another respect—one that only became relevant after the U.S. Supreme Court reversed *Community Financial Services Association of America., Ltd. ("CFSA") v. CFPB*, 51 F.4th 616 (5th Cir. 2022) in its *CFPB v. CFSA*, 601 U.S. 416 (2024) decision and explained the conditions under which the CFPB can constitutionally operate under the Appropriations Clause.  In particular, the Supreme Court explained that the CFPB's only constitutional funding comes from 12 U.S.C. § 5497, which "authorizes the [CFPB]

to draw public funds from a particular source—'the combined earnings of the Federal Reserve System.'" *CFSA*, 601 U.S. at 418 (citation omitted). "Earnings" under both its plain meaning and technical definitions, and as used by courts, means "profits." *Infra* 8–10. The structures and financial statements of the Federal Reserve and CFPB also indicate that such "earnings" must mean "profit." *Infra* 10–11. However, judicially noticeable and undisputable public records show that the Federal Reserve System lacked any "earnings" to transfer to the CFPB before and during its promulgation of the Final Rule on May 31, 2023 and the subsequent modification of the Final Rule on June 25, 2024 because the Federal Reserve's expenses have exceeded its revenue since September 2022. *Infra* 5–6, 13–16. As a backup mechanism, Congress provided that the CFPB could ask Congress for appropriations should the Federal Reserve have no "combined earnings" to fund the CFPB, but the CFPB did not ask Congress for funding. 12 U.S.C. § 5497(e)(1)(A). Without any constitutionally appropriated funding with which to act, the CFPB promulgated and modified the Final Rule unlawfully, and so the proper remedy is invalidation of the CFPB's unlawful actions and vacatur of the Final Rule. *Infra* 12–16.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

In 2010, Congress enacted Title X of the Dodd-Frank Act and, in so doing, established the CFPB, Pub. L. No. 111-203, an agency possessing broad statutory authority to regulate individuals and entities that provide financial products and services, *see* 12 U.S.C. § 5511(a). Congress structured the CFPB's funding method to provide that the CFPB's funding come only from the Federal Reserve's "combined earnings." 12 U.S.C. § 5497(a)(1). If the Federal Reserve has no "combined earnings" with which to fund the CFPB, Congress requires the CFPB to return to

---

[1] Farm Credit Intervenors reproduce this Factual Background and Procedural in their accompanying *Motion to Amend Complaint in Intervention*, No. 7:23-cv-00144 (S.D. Tex., Aug. 2, 2024).

2

Congress to ask for lawful appropriations to continue its operations.  12 U.S.C. § 5497(e)(1)(A).

The Dodd-Frank Act contains numerous provisions intended to promote the CFPB's

implementation of fair lending laws, including Section 1071.  Section 1071 added a new Section

704B to the Equal Credit Opportunity Act ("ECOA"), requiring banks and other small business

lenders to report on a limited universe of data points from small business credit applications,

including, for instance, "the number of the application and the date on which the application was

received" and "the type and purpose of the loan or other credit being applied for."  15 U.S.C.

§ 1691c-2(e)(2)(A)–(B).  The new ECOA provision also grants the CFPB authority to require

additional reporting obligations that "would aid in fulfilling the purposes of this section."  *Id.*

§ 1691c-2(e)(2)(H).

The CFPB published a proposed rule on September 1, 2021.  86 Fed. Reg. 56356 (Oct. 8,

2021).  On October 19, 2022, while the proposed rule was still pending, the Fifth Circuit issued its

decision in *CFSA*, holding that the CFPB's funding structure violates the U.S. Constitution's

Appropriations Clause and separation of powers, 51 F.4th at 642; U.S. Const. art. I, § 9, cl. 7.  The

Fifth Circuit then held that the remedy for this constitutional violation was to "rewind[ ]" the

CFPB's unlawfully funded rule.  51 F.4th at 643 (quoting *Collins v. Yellen*, 594 U.S. 220, 273–74

(2021) (Kagan, J., concurring)).  A few months later, the U.S. Supreme Court granted the CFPB's

petition for a writ of certiorari to address the question of whether the CFPB's funding structure

violated the Appropriations Clause, U.S. Const. art. I, § 9, cl. 7.

Despite the Fifth Circuit's decision and the then-pending U.S. Supreme Court's grant of

certiorari, the CFPB published a version of the Final Rule on its website March 30, 2023, indicating

an intent to officially publish the Final Rule in the Federal Register at a later date.  *See* CFPB,

Small Business Lending under the Equal Credit Opportunity Act (Regulation B) (Mar. 30, 2023).[2]

The original Plaintiffs—Texas Bankers Association; Rio Bank, McAllen, Texas; and American

Bankers Association—then filed this suit challenging the Final Rule on constitutional and statutory

grounds and seeking preliminary and permanent injunctive relief.  Dkt.12.  On July 31, 2023, this

Court entered its Order Granting In-Part And Denying In-Part Plaintiffs' Motion For Preliminary

Injunction, Dkt.25, barring the CFPB from implementing the Final Rule.  Subsequently, other

Intervenor-Plaintiffs filed motions for preliminary injunction to extend the motion to themselves

and other financial institutions.  *See* Dkts.44, 45, 54, 55.  This Court granted those motions to

intervene.  On October 26, 2023, the Court issued its Order Granting Intervenors' Motions For

Preliminary Injunction, granting injunctive relief to all Intervenor-Plaintiffs and covered financial

institutions, which preliminary injunction was to last until the Supreme Court's reversal of *CFSA*,

51 F.4th 616, in *CFSA*, 601 U.S. 416.  Dkt.69 at 7–8.

All Plaintiffs and Plaintiff-Intervenors collectively filed a Motion for Summary Judgment

on March 1, 2024.  Dkt.79.  They argued that summary judgment was appropriate because, *inter
alia*, the CFPB exceeded its statutory authority by imposing additional data requirements in the

Final Rule, *id*. at 10–22, that the Final Rule is arbitrary and capricious because the CFPB failed to

adequately consider the real-world costs it imposed on the banking community, *id*. at 22–26, and

that the CFPB's cost/benefit analysis of the Final Rule was arbitrary and capricious, *id*. at 26–35.

That motion and a cross-motion by the CFPB were fully briefed as of June 7, 2024.  Dkt.100.

The Supreme Court issued its opinion in *CFSA* on May 16, 2024.  601 U.S. 416.  There,

the Supreme Court decided that CFPB's funding mechanism complied with the Appropriations

---

[2] Available at https://www.consumerfinance.gov/rules-policy/final-rules/small-business-lending-under-the-equal-credit-opportunity-act-regulation-b/ (all websites last visited on August 2, 2024).

Clause. *Id.* at 420–21. Specifically, the Supreme Court held that the CFPB's funding complied with Appropriations Clause only because the Federal Reserve's "combined earnings" transferred to the CFPB are also subject to the Appropriations Clause. *Id.* at 425, 435, 441. The Appropriations Clause governs the CFPB's funds because the "money [is] otherwise destined for the general fund of the Treasury." *Id.* at 425.

But the Federal Reserve has lacked "combined earnings" to transfer to the CFPB since September 2022, when the Federal Reserve first ceased "earnings" transfers to the Treasury. *See* Miguel Faria e Castro, Samuel Jordan-Wood, *The Fed's Remittances to the Treasury: Explaining the 'Deferred Asset'*, Fed. Rsrv. Bank of St. Louis (Nov. 21, 2023) ("beginning in September 2022, remittances due [to the Treasury] became negative")[3]; *see generally* Bd. of Governors of the Fed. Rsrv. Sys., *Federal Reserve Banks Combined Quarterly Financial Report* 2, 25 (Mar. 31, 2024) (hereinafter "March 2024 Financial Statement").[4]



---

[3] Available at https://www.stlouisfed.org/on-the-economy/2023/nov/fed-remittances-treasury-explaining-deferred-asset.
[4] Available at https://www.federalreserve.gov/aboutthefed/files/quarterly-report-20240517.pdf.

Bd. of Governors of the Fed. Rsrv. Sys., *Federal Reserve Board announces preliminary financial information for the Federal Reserve Banks' income and expenses in 2023* (Jan. 12, 2024).[5]  The Federal Reserve made its last transfer to the Treasury on August 31, 2023.  *See* Fed. Rsrv. Bank of St. Louis, *Liabilities and Capital: Liabilities: Earnings Remittances Due to the U.S. Treasury: Wednesday Level.*[6]  Without "combined earnings," the CFPB had only one method to fund itself: by entreating Congress for regular Appropriations.  12 U.S.C. § 5497(e)(1)(A).  The CFPB did not do so; instead, it has continued funding itself with monies from the Federal Reserve that are not "combined earnings," beginning with a $315,700,000 transfer to the CFPB in October 2022.  Letter from Rohit Chopa, Director, CFPB, to Jerome Powell, Chair, Bd. of Governors of Fed. Rsrv. Sys. (Oct. 14, 2022)[7]; Letter from Ricardo A. Aguilera, Div. Dir. and Chief Fin. Off., Bd. of Governors of the Fed. Rsrv. Sys., to Dana James, Acting Chief Fin. Off., CFPB (Oct. 19, 2022).[8]

After the Supreme Court's *CFSA* decision, the CFPB modified the Final Rule on July 3, 2024, through issuance of an interim final rule, 89 Fed. Reg. § 55024 (July 3, 2024) (to be codified at 12 C.F.R. § 1002).  While the CFPB pursued the Final Rule's modification, it relied upon the Federal Reserve's unappropriated funds—not from its "combined earnings" since it had lacked combined earnings since September 2022—to promulgate the interim rule, just as it had when it issued the Final Rule to begin with.

---

[5] Available at https://www.federalreserve.gov/newsevents/pressreleases/other20240112a.htm.
[6] Available at https://fred.stlouisfed.org/series/RESPPLLOPNWW.
[7] Available at https://files.consumerfinance.gov/f/documents/cfpb_funds-transfer-request_fy 2023-q1.pdf.
[8] Available at https://files.consumerfinance.gov/f/documents/cfpb_transfer-of-funds-fy2023-q1.pdf.

## APPLICABLE LEGAL STANDARD

"A motion brought pursuant to" Fed. R. Civ. P. 12(c) "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 312 (5th Cir. 2002) (citation omitted).[9]  The Court must construe pleadings "liberally," and a "judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Id.* (citation omitted).

## ARGUMENT AND LEGAL AUTHORITIES

This Court should grant this Motion because the CFPB lacks constitutionally appropriated funds under the Supreme Court's decision in *CFSA*, rendering it unable to constitutionally or lawfully promulgate, modify, or enforce the Final Rule.

A.  The CFPB's funding mechanism is unique and provides that the CFPB's funding can come only from the Federal Reserve's "combined earnings."  12 U.S.C. § 5497(a)(1).  The Supreme Court in *CFSA* held that the CFPB's funding structure complies with the Appropriations Clause because the CFPB's funds are effectively "drawn from the Treasury" as appropriated funds. 601 U.S. at 425 (citation omitted).  In other words, under *CFSA*, the Federal Reserve's surplus funds—the "combined earnings" under 12 U.S.C. § 5497(a))—are the only constitutionally authorized appropriations available to fund the CFPB's operations, 601 U.S. at 425.  But the Federal Reserve has had no "earnings" since September 2022.  *See generally* March 2024 Financial Statement, *supra*.  Should this unique funding mechanism fail due to the lack of combined

---

[9] A Rule 12(c) motion is normally filed after the opposing party's answer when the pleadings are closed, *see* Fed. Rule Civ. Proc. 12(c), but the Farm Credit Intervenors are making this Motion quickly pursuant to the discussion during the July 29, 2024 conference with the Court.  Likewise, the Farm Credit Intervenors do not oppose CFPB submitting its opposition and answer at the same time.

earnings, Congress provided that the CFPB could request appropriations under the normal appropriation methods, *see id*. 12 U.S.C. § 5497(e), but the CFPB has not done so. Since the CFPB lacked constitutionally appropriated funds to issue, modify or enforce the Final Rule, the Final Rule (as now modified) should be vacated.

1. Courts must start with the plain language when interpreting a statute. *Robinson v. Shell Oil Co*., 519 U.S. 337, 340 (1997); *King v. Burwell*, 576 U.S. 473, 475 (2015) (citation omitted); *Inhance Techs., L.L.C. v. U.S. Env't Prot. Agency*, 96 F.4th 888, 893 (5th Cir. 2024) (citation omitted). A court can determine a statute's plain meaning by referencing the statutory "language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341 (citing *Est. of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 477 (1992); *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991)); *see also King*, 576 U.S. at 474. Dictionaries are also a source of the plain meaning of a statute's language, *see Mississippi v. Louisiana*, 506 U.S. 73, 78 (1992), and where a statute includes language with an established legal meaning, courts presume that Congress intended for the language to take on its established meaning, *In re England*, 153 F.3d 232, 235 (5th Cir. 1998). Furthermore, "where Congress has used technical words or terms of art, it is proper to explain them by reference to the art or science to which they are appropriate." *Corning Glass Works v. Brennan*, 417 U.S. 188, 201 (1974) (citation omitted) (alterations in original); *see also Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 441 (5th Cir. 2021). The Court will also find persuasive, "[i]nterpretations such as those in opinion letters[,] . . . policy statements, agency manuals, and enforcement guidelines." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (citation omitted).

2. Under the plain text of 12 U.S.C. § 5497 and the Supreme Court's ruling in *CFSA*, the CFPB is constitutionally funded by the Federal Reserve's transfer of "combined earnings" to the

CFPB.  12 U.S.C. § 5497(a)(1); *CFSA*, 601 U.S. at 425, 435.  Only from these combined earnings "shall [the Federal Reserve] pay the expenses of the Bureau in carrying out its duties and responsibilities."  12 U.S.C. § 5497(c)(1); *CFSA*, 601 U.S. at 418.  In turn, under the clear statutory text, "combined earnings" mean the Federal Reserve System's profits, *infra* 9–11, and that the CFPB must receive these combined earnings to constitutionally and lawfully carry on operations.

"Earnings" is regularly defined as "the net income or profit of a business," in dictionaries, including dedicated financial dictionaries and accounting dictionaries.  *See Earnings*, Oxford Dictionary of Accounting (4th ed. 2010); *accord Earnings*, Encyclopedia of Banking and Finance (10th ed. 1994) (defining "earnings" as "[p]rofits; net income.").  "[E]arnings and profits basically are increased by all items of income . . . and reduced by all expenses . . . and all distributions," Stanley I. Langbein, *Federal Income Taxation of Banks & Financial Institutions* § 13:33 (2024). The American Heritage Dictionary additionally provides that "earnings" are "business profits," *Earnings*, American Heritage Dictionary.[10]  And Merriam-Webster Dictionary states that "[e]arnings" are the "balance of revenue after deduction of costs and expenses," *Earnings*, Merriam-Webster.[11]

Accounting standards also equate "earnings" with "profits."  *See Corning*, 417 U.S. at 201 (stating a statute's use of "technical words" is "proper[ly] . . . explain[ed]" "by reference to the art or science to which they are appropriate." (citation omitted) (alterations omitted)).  Both the Federal Reserve Banks and the Board of Governors of the Federal Reserve prepare their financial statements under these accounting principles—specifically, Federal Reserve Banks use the Financial Accounting Manual for Federal Reserve Banks ("Financial Accounting Manual") and

---

[10] Available at https://www.ahdictionary.com/word/search.html?q=earnings.

[11] Available at https://www.merriam-webster.com/dictionary/earnings.

the Board of Governors of the Federal Reserve uses the Generally Accepted Accounting Principles ("GAAP").  Fed. Rsrv. Sys., *Federal Reserve System Audited Annual Financial Statements* (Mar. 26, 2024)[12]; *see In re England*, 153 F.3d at 235.  Both GAAP and the Financial Accounting Manual define "earnings" as profit.  *See* SEC, Compliance and Disclosure Interpretations, Question 103.01 ("'Earnings' means *net* income [*i.e.*, profit] as presented in the statement of operations under GAAP." (emphasis added)); BSFT Accounting Manual, Section 12.60 (stating earnings remittances are paid from the "net earnings")[13]; *see also Christensen*, 529 U.S. at 587.  Numerous other leading financial institutions have also embraced the accounting-based definition of "earnings."  *See Corning*, 417 U.S. at 201; *Christensen*, 529 U.S. at 587.  "Earnings," for purposes of the ubiquitous EBITDA metric, is the "operating and nonoperating profit before the deduction of interest and income taxes," Nasdaq, *Glossary of Stock Market Terms* (defining "Earnings before interest, taxes, depreciation, and amortization (EBITDA)")[14]  The definition for "Earnings" is in accord: "*[n]et income* for the company during a period."  *Id.* (defining "earnings") (emphasis added)[15]  "*Earnings* per share" means a company's profit—not gross income—divided by the number of outstanding shares, *id.* (emphasis added) (defining "Earnings per share (EPS)")[16]  Finally, the Securities and Exchange Commission ("SEC") similarly connects "net earnings" with "net profit."  SEC, *Beginners' Guide to Financial Statements* (Jan. 12, 2014)[17]

---

[12] Available at https://www.federalreserve.gov/aboutthefed/audited-annual-financial-statements.htm.
[13] Available at https://www.sec.gov/corpfin/non-gaap-financial-measures.htm; https://www.federalreserve.gov/aboutthefed/files/bstfinaccountingmanual.pdf.
[14] Available at https://www.nasdaq.com/glossary/e/earnings-before-interest-taxes-depreciation-and-amortization.
[15] Available at https://www.nasdaq.com/glossary/e/earnings.
[16] Available at https://www.nasdaq.com/glossary/e/earnings-per-share.
[17] Available at https://www.sec.gov/about/reports-publications/beginners-guide-financial-statements.

The Federal Reserve's financial statements confirm that "earnings" equates to "profits." The Federal Reserve finds "residual net earnings" exist only "after providing for the costs of operations, payment of dividends, and the amount necessary to maintain each Federal Reserve Bank's allotted surplus cap."  *See* Federal Reserve Form H.4.1 § 6.8 (emphasis added) (in the context of remittances to the U.S. Treasury).[18]  The Federal Reserve's own financial statements list "[e]arnings remittances to the Treasury" as one of the final line items on the financial statement, after accounting for its assets, income, liabilities, and expenses, illustrating that "earnings" is the remaining profit once expenses are subtracted from income.  *See* Bd. of Governors of the Fed. Rsrv. Sys., *Federal Reserve Banks Combined Quarterly Financial Report* 25 (Mar. 31, 2024).[19]

Courts likewise equate "earnings" with profits, especially in the context of corporate finance, which uses the substantially same accounting terminology as the Federal Reserve, *supra* 9–10.  The Supreme Court explained that "undistributed earnings" is the "natural meaning" of "undivided profits."  *Edwards v. Douglas*, 269 U.S. 204, 214–15 & n.4 (1925).  There, the Supreme Court found that "undivided profits" meant the same as "earnings or profits" based on the Committee on Accounting Terminology of the American Association of Public Accountants' definition of "undivided profits."  *Id.* at 215 n.4; *see also De Treville v. United States*, 445 F.2d 1306, 1309 (4th Cir. 1971) (equating earnings and profits in the context of corporate income).  And these conclusions are not aberrations: the Supreme Court frequently uses "earnings" interchangeably with "profits," suggesting their meaning is the same, *see Helvering v. Ohio Leather Co*., 317 U.S. 102 (1942); *Hercules Gasoline Co. v. Commissioner*, 326 U.S. 425 (1945).

---

[18] Forms H.4.1 are weekly reports, contained in a database available at: https://www.federal reserve.gov/releases/h41/.

[19] Available at https://www.federalreserve.gov/aboutthefed/files/quarterly-report-20240517.pdf.

B.  The Fifth Circuit and the Supreme Court have held that acts of governmental agencies and actors that lack lawful authority are unconstitutional and consequently invalid.  *Infra* 12. Congress has also recognized this principle and incorporated it into statute with the Antideficiency Act, which prohibits agency action when an agency lacks appropriated funds.  *Infra* 12–13. Because the CFPB has not had a lawful source of funding since September 2022, it unlawfully pursued promulgation and modification of the Final Rule.  *Infra* 13–16.

1.  Where an official "exercise[s] . . . power that the actor did not lawfully possess," *Collins*, 594 U.S. at 258 (2021), the "remedy in those cases" is "invalidation of the unlawful actions," *CFSA*, 51 F.4th at 642 (citation omitted), *rev'd and remanded on other grounds*, *CFSA*, 601 U.S. 416.  Put another way, an agency must have a valid appropriation to take an action, which appropriation "is as much a precondition to every exercise of executive authority by an administrative agency as a constitutionally proper appointment or delegation of authority." *CFPB v. All American Check Cashing, Inc*., 33 F.4th 218, 242 (5th Cir. 2022) (en banc) (Jones, J., concurring); *see also United States v. McIntosh*, 833 F.3d 1163, 1175 (9th Cir. 2016).  This extends to an agency's rulemaking authority, and an appropriate remedy for improper rulemaking is to vacate the rule.  *See Seila Law LLC v. CFPB*, 591 U.S. 197, 233 (2020) (if an agency action is unconstitutional, the "appropriate disposition would be to reverse . . . and dismiss the case").  Such a remedy is appropriate in light of prior court decisions granting a new hearing or invalidating orders.  *CFSA*, 51 F.4th at 642 (citing as examples *Lucia v. SEC*, 585 U.S. 237 (2018) and *NLRB v. Noel Canning*, 573 U.S. 513 (2014)).

Relatedly, the Antideficiency Act, 31 U.S.C. §§ 1341–42—which prohibits agencies from spending in advance or in excess of funding, Gov't Accountability Off., *Antideficiency Act*

*Resources*,[20]—supports the same conclusion that an agency cannot promulgate or modify rules when the agency lacks constitutionally authorized funds to do so. The Antideficiency Act requires agencies to cease operation when they are unfunded, and courts must invalidate government actions taken without constitutional appropriations to support those actions. 31 U.S.C. § 1342; *see, e.g.*, *Springfield Parcel C, LLC v. United States*, 124 Fed. Cl. 163, 190 (2015).

2. Here, the CFPB lacked authority to promulgate, modify and enforce the Final Rule because the Federal Reserve has no "combined earnings" to transfer to the CFPB, leaving the CFPB without constitutional funding. The Federal Reserve does receive funds outside of the congressional appropriations process through interest on securities acquired through open-market operations, fees received from depository institutions for services rendered (*e.g.*, funds transfers, check clearing, and automated clearinghouse operations), and interest on loans to depository institutions. *See generally* 12 U.S.C. §§ 342–361. After paying its operating costs, distributing dividends, and saving an amount to maintain a mandated surplus, the Federal Reserve consolidates the net earnings of its twelve banks and remits these "combined earnings" to the U.S. Treasury. 12 U.S.C. § 289. Because of rising interest rates, since September 2022 the Federal Reserve has not generated sufficient revenue to cover its expenses and consequently ceased making periodic "earnings" remittances to the Treasury. The last such remittance was on August 31, 2022. Fed. Rsrv. Bank of St. Louis, *Liabilities and Capital: Liabilities: Earnings Remittances Due to the U.S. Treasury: Wednesday Level*, *supra*; *see* Castro et al., *supra* ("beginning in September 2022, remittances due [to the Treasury] became negative").

---

[20] Available at https://www.gao.gov/legal/appropriations-law/resources.



Bd. of Governors of the Fed. Rsrv. Sys., *Federal Reserve Board announces preliminary financial information for the Federal Reserve Banks' income and expenses in 2023*, *supra*; *see* Bd. of Governors of the Fed. Rsrv. Sys., Federal Reserve Balance Sheet Developments (May 2023)[21]; CFPB, *Financial Report Of The Consumer Financial Protection Bureau* 7 (Nov. 15, 2022) (stating that CFPB's potential funding was capped at around $734 million in fiscal year 2022) ("FY2022 CFPB Report")[22]; *see also CFSA*, 601 U.S. at 435 (2024) (describing the CFPB's source of funding as external to the regular Congressional appropriations process).  The Federal Reserve "registers the losses as a deferred asset" on its balance sheet when its expenses exceed income, and thereafter directs "positive net income in future years . . . to eliminating this deferred asset instead of being remitted to Treasury."  Cong. Research Serv., *Why Is The Federal Reserve Operating At A Loss* (Jan. 23, 2023).[23]  In short, the Federal Reserve has not had "combined earnings" since September 2022.

---

[21]  Available at https://www.federalreserve.gov/publications/files/balance_sheet_developments_report_202305.pdf.

[22] Available at https://files.consumerfinance.gov/f/documents/cfpb_financial-report-fy 2022.pdf.

[23] Available at https://crsreports.congress.gov/product/pdf/IN/IN12081.

The CFPB director has requested Federal Reserve funds each fiscal year quarter since August 2010. *See* CFPB, *Funds transfer requests* (providing quarterly CFPB funding request letters from the CFPB and acknowledgements from the Federal Reserve).[24]  The Federal Reserve has correspondingly transferred funds to the CFPB, but beginning with a $315,700,000 transfer in October 2022, the funds have not been from the "combined earnings" because the Federal Reserve has had no "earnings" to transfer to the Treasury or the CFPB.  *See* Letter from Rohit Chopa, *supra*; Letter from Ricardo A. Aguilera, *supra*.; Bd. of Governors of the Fed. Rsrv. Sys., *Federal Reserve Banks Combined Quarterly Financial Report* 2, 25 (Mar. 31, 2024); CFPB, *Financial Report of the CFPB* 45–46, 68 (Nov. 15, 2023) ("FY2023 CFPB Report"); 12 U.S.C. § 5497; *CFSA,* 601 U.S. at 425, 435.  The Federal Reserve can only send the CFPB funds from its "combined earnings," 12 U.S.C. § 5497(a)(1), and without "combined earnings" the Federal Reserve's fund transfers to the CFPB are unlawful.  The CFPB therefore lacked funding to pursue rulemaking, issue a final rule, modify the Final Rule, or enforce the Final Rule.[25]  The CFPB thus spent unappropriated funds since there was no statutory authority for the Federal Reserve's transfer of funds to the CFPB, *supra* 4–6, *CFSA,* 601 U.S. at 425, 435.  Such unauthorized spending is not constitutionally authorized, s*upra* 4–8; *CFSA*, 51 F.4th at 642, and in violation of the Appropriations Clause, *supra* 4–8.

---

[24] Available at https://www.consumerfinance.gov/about-us/budget-strategy/funds-transfer-requests/.

[25] The CFPB carried over surplus funds at the end of fiscal year 2022, FY2022 CFPB Report at 97 ($401 million in net assets), and the end of fiscal year 2023 on September 30, 2023, FY2023 CFPB Report at 51–52 (Nov. 15, 2023) ($203.4 million in net assets available).  The CFPB's expenses, however, exceeded the CFPB's balance, and the CFPB relied upon the Federal Reserve's transfer of funds to finance its operations, and without the Federal Reserve's fund transfer would have accrued a net loss of $135 million.  FY2023 CFPB Report at 68.

The CFPB published the Final Rule on May 31, 2023, after September 2022. 12 C.F.R. § 1002 (2023). The CFPB subsequently modified the Final Rule on June 25, 2024, by issuing an interim final rule, 89 Fed. Reg. § 55024 (proposed July 3, 2024) (to be codified at 12 C.F.R. § 1002), also after September 2022. The CFPB thus has no constitutional or lawful source of funding needed to promulgate, modify or enforce the Final Rule. Given the CFPB's lack of legal funding, this Court should grant judgment on the pleadings to Plaintiffs and Plaintiff-Intervenors and vacate the Final Rule. *Collins*, 594 U.S. at 258; *CFSA*, 51 F.4th at 642–43.

## CONCLUSION

Based on the foregoing, Plaintiffs-Intervenors respectfully request that this Court grant their motion for judgment on the pleadings and award any further relief deemed just and proper.

Dated: August 2, 2024                              Respectfully submitted,

                                                  */s/ Daniel G. Gurwitz*
                                                  Daniel G. Gurwitz
                                                  State Bar No. 00787608
                                                  Southern Dist. ID No. 16895
                                                  Email: dgurwitz@atlashall.com

                                                  Attorney in charge for Farm Credit Council,
                                                  Texas Farm Credit, and Capital Farm Credit

OF COUNSEL:
Atlas, Hall & Rodriguez, LLP
818 Pecan Blvd.
P.O. Box 3725
McAllen, Texas 78501/ 78502-3725
Tel: 956-682-5501
Fax: 956-686-6106

Misha Tseytlin
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe Street

16

Suite 3900
Chicago, IL 60606
(312) 759-5947
misha.tseytlin@troutman.com

Joseph J. Reilly
TROUTMAN PEPPER
HAMILTON SANDERS LLP
401 9th Street NW, Suite 1000
Washington, DC 20004
(202) 274-2908
joseph.reilly@troutman.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been filed on August 2, 2024, via the CM/ECF system and via email courtesy copy to Counsel for Defendants.

*/s/ Daniel G. Gurwitz*
Daniel G. Gurwitz

Attorney in charge for Farm Credit
Council, Texas Farm Credit, and
Capital Farm Credit
