IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| TEXAS BANKERS ASSOCIATION; RIO BANK, MCALLEN, TEXAS; and AMERICAN BANKERS ASSOCIATION, | ) ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) ) ) Case No. 7:23-cv-00144 |
| CONSUMER FINANCIAL PROTECTION BUREAU and ROHIT CHOPRA, in his official capacity as Director of the Consumer Financial Protection Bureau, | ) ) ) ) ) ) ) |
| *Defendants*. | ) ) |

**FIRST AMENDED COMPLAINT IN INTERVENTION**

Intervenor-Plaintiffs the Farm Credit Council (the "Council"), Texas Farm Credit ("TFC"), and Capital Farm Credit ("CFC") (collectively, the "Farm Credit Intervenors"), file this First Amended Complaint In Intervention and allege as follows:

**NATURE OF THE ACTION**

1. On March 30, 2023, Defendants the Consumer Financial Protection Bureau and Rohit Chopra, in his official capacity as Director (collectively, the "CFPB"), issued a final rule (the "Final Rule") amending Regulation B governing small business lending under the Equal Credit Opportunity Act ("ECOA"). *Small Business Lending Under the Equal Credit Opportunity Act (Regulation B)*, 88 Fed. Reg. 35,150 (May 31, 2023). The Final Rule's stated purpose is to implement changes to ECOA made by the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act"), Pub. L. No. 111-203, 124 Stat. 1376 (2010).

2. Congress enacted the Dodd-Frank Act in 2010. Section 1071 of the Dodd-Frank Act added a new Section 704B to ECOA, which requires banks and other small business lenders to report on a limited set of data points from credit applications by small businesses, such as "the number of the application and the date on which the application was received" and "the type and purpose of the loan or other credit being applied for." 15 U.S.C. § 1691c-2(e)(2). The new ECOA provision then authorizes the CFPB to impose additional reporting requirements that "would aid in fulfilling the purposes of this section." *Id.* § 1691c-2(e)(2)(H).

3. The Final Rule imposes numerous reporting requirements on small business lenders. Specifically, the Final Rule requires covered financial institutions to develop and implement the necessary systems and compliance mechanisms for collecting and reporting 81 data points. 88 Fed. Reg. at 35,545 (codified at 12 C.F.R. § 1002.107); *see* CFPB, *Small Business Lending Rule: Data Points Chart* (Aug. 17, 2023), https://files.consumerfinance.gov/f/documents/cfpb_small-business-lending-data-points-chart.pdf.

4. Intervenor the Council is the national trade association for the institutions of the Farm Credit System, a nationwide network of customer-owned financial institutions with a specific mission to provide credit and other support to rural communities and agriculture. Intervenors TFC and CFC are members of the Council. The CFPB estimates that about 95% of the Council's members are covered by the Final Rule. 88 Fed. Reg. at 35,165, 35,495.

5. The Final Rule, which considers agricultural credit to be "business credit," causes unique and irreparable harm to the Council's members, including CFC and TFC. In contrast to the customer bases of other lenders, nearly all customers of Farm Credit institutions qualify as "small businesses" under the Final Rule's definition of that term. *Id.* at 35,544 (codified at 12 C.F.R. § 1002.106(b)(1)). Accordingly, Council members will be required to undertake significant

2

efforts and expend significant labor and financial resources to ensure compliance with the Final Rule's burdensome reporting requirements.

6. On August 29, 2023, the Final Rule went into effect. 88 Fed. Reg. at 35,150. The Council's members are currently implementing the Final Rule and, in doing so, are incurring substantial and unrecoverable compliance costs. These compliance costs are unjustified, as the Final Rule is both unconstitutional and unenforceable under recent Supreme Court precedent, *CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.* ("*CFSA*"), 601 U.S. 416 (2024), and binding Fifth Circuit precedent as to the appropriate remedy, 51 F.4th 616 (5th Cir. 2022), *rev'd and remanded on other grounds*, 601 U.S. 416, and is otherwise unlawful in multiple respects.

7. This Court's preliminary injunction entered July 31, 2023, enjoined the CFPB from implementing and enforcing the Final Rule as against the original Plaintiffs in this action—including the Texas Bankers Association ("TBA") and the American Bankers Association ("ABA")—and their members pending the U.S. Supreme Court's *Community Financial* decision. At least the vast majority of the Council's members, including TFC and CFC, are not members of either the TBA or the ABA.

8. The Council's members will, however, suffer the same immediate and real harms identified by the Court in its preliminary injunction in complying with the Final Rule. Accordingly, the Council, on behalf of its members, and CFC and TFC, seek a judgment vacating the Final Rule, as well as preliminary and permanent injunctive relief.

## PARTIES

9. The Council is the national trade association representing the institutions of this country's Farm Credit System. The Council therefore has members located across the country, including in the Southern District of Texas. The vast majority of the Council's members make small business loans and are covered under the Final Rule.

10. CFC is a Council member headquartered in Bryan, Texas, and chartered to serve 192 counties across Texas, including the area that encompasses this district. CFC provides loans to support small businesses, including rural farmers, ranchers, and agribusinesses, and is a covered financial institution under the Final Rule. CFC estimates that it may be a "Tier 2" lender under the Final Rule, with a compliance date of April 1, 2025.

11. TFC is a Council member with headquarters in Nueces County, Texas, and chartered to serve 100 counties across Texas, including Hidalgo County, Texas, where it has offices. TFC provides loans to support small businesses, including rural farmers, ranchers, and agribusinesses, and is a covered financial institution under the Final Rule. TFC estimates that it may be a "Tier 3" lender under the Final Rule, with a compliance date of January 1, 2026.

12. The CFPB is a federal executive agency and an independent bureau in the Federal Reserve System that regulates the offering and provision of consumer financial products and services throughout the nation. *See* 5 U.S.C. § 105; 12 U.S.C. § 5491(a).

13. Rohit Chopra is the Director of the CFPB and is sued in his official capacity only.

## JURISDICTION AND VENUE

14. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this civil action arises under the Constitution, laws, or treaties of the United States.

15. Venue is proper in this Court because Defendants include a federal agency and an officer of that federal agency sued in his official capacity. Venue is also proper because CFC and TFC are chartered under the Farm Credit Act of 1971, as amended, 12 U.S.C. § 2001, et seq., to serve eligible farmers and ranchers in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district, 28 U.S.C. § 1391(e)(1).

## FACTUAL BACKGROUND

### A. The Farm Credit System

16. The Farm Credit System is a federally chartered nationwide network of cooperative, borrower-owned lending institutions that provide loans to the nation's farmers, ranchers, and agribusinesses. Each of the banks and associations that comprise the Farm Credit System, including CFC and TFC, are federally chartered, owned by their borrower-members, and operated on a cooperative basis.

17. For over a century, Congress has purposely designed the Farm Credit System "to accomplish the objective of improving the income and well-being of American farmers and ranchers by furnishing sound, adequate, and constructive credit and closely related services to them, their cooperatives, and to selected farm-related businesses necessary for efficient farm operations." 12 U.S.C. § 2001(a). As of September 1, 2023, the Farm Credit System included four banks and 67 associations, which together provide approximately 45% of agricultural lending in the United States. These 71 institutions serve all 50 states and the Commonwealth of Puerto Rico. Each institution is structured as a cooperative owned by its customers, that is, farmers, ranchers, farmer-owned cooperatives, and other rural businesses.

18. The Farm Credit Administration ("FCA"), an independent federal financial regulatory agency, supervises and examines the Farm Credit System, based on the Farm Credit

Act of 1971, as amended, 12 U.S.C. § 2001, et seq., and regulations issued by that agency.[1] With respect to Farm Credit institutions, the FCA also examines and enforces compliance with consumer-finance laws, including ECOA and rules issued thereunder, such as the Final Rule. Thus, the FCA (not the CFPB) will be the agency responsible for examining Farm Credit lenders for compliance with the Final Rule and for bringing any administrative actions to enforce compliance with that rule.[2]

19.     The costs of complying with CFPB and other federal regulations is ultimately borne by each Farm Credit institution's customer-owners. That is so because the net income that Farm Credit institutions generate can generally only be used in two ways: (1) retained within the Farm Credit institution as capital to build financial strength to serve customer-owners; or (2) passed on to customer-owners by way of patronage dividends (a practice that effectively reduces those customers' costs of borrowing).

---

[1]     The FCA is predominantly funded via assessments on Farm Credit institutions. *See generally* FCA, Fiscal Year 2023 Proposed Budget and Performance Plan (Mar. 2, 2023), https://www.fca.gov/template-fca/about/BudgetFY2023.pdf (all websites last visited on August 2, 2024).

[2]     ECOA specifically provides that with respect to Farm Credit institutions, compliance with ECOA and rules issued thereunder "shall be enforced under . . . [t]he Farm Credit Act[, 12 U.S.C. § 2001, et seq.], by the Farm Credit Administration." 15 U.S.C. § 1691c(a)(6). Similarly, the Consumer Financial Protection Act ("CFPA"), which created the CFPB, provides that "[t]he Bureau shall have no authority to exercise any power to enforce [the CFPA] with respect to a person regulated by the Farm Credit Administration." Pub. L. No. 111-203, tit. X, subtit. B, § 1027, 124 Stat. at 2002 (codified at 12 U.S.C. § 5517(k)(1)).

The CFPA also provides that "[n]o provision of [the CFPA] shall be construed as altering, amending, or affecting the authority of the Farm Credit Administration to adopt rules, initiate enforcement proceedings, or take any other action with respect to a person regulated by the Farm Credit Administration." *Id.* Separately, in a section describing the CFPB's authority to supervise certain other nondepository institutions, the CFPA provides that "[n]o provision of [the CFPA] may be construed as modifying, limiting, or otherwise affecting the authority of the Farm Credit Administration." *Id.* at 1990 (codified at 12 U.S.C. § 5514(f)).

### B. The Proposed Rule

20. On September 1, 2021, the CFPB issued a proposed rule purporting to implement Section 1071 of the Dodd-Frank Act, *Small Business Lending Data Collection Under the Equal Credit Opportunity Act (Regulation B)*, 86 Fed. Reg. 56,356 (Oct. 8, 2021), which section directs certain covered financial institutions to gather and report on a handful of data points relevant to small business credit applications, *see* Pub. L. No. 111-203, tit. X, subtit. G, § 1071, 124 Stat. at 2057 (codified at 15 U.S.C. § 1691c-2(e)(2)).  The proposed rule significantly expanded the Dodd-Frank Act's short list of enumerated data points.

21. During the notice and comment period, the Council submitted comments explaining that the rule was overbroad and would place significant costs and burdens on Farm Credit institutions. Specifically, the Council explained that the proposed rule would cover a greater proportion of Farm Credit lenders than any other category of lenders identified in the proposed rule, because (1) Farm Credit lenders are statutorily structured primarily to provide agricultural-purpose credit, considered "business credit" under the proposed rule, and (2) the overwhelming majority of Farm Credit borrowers are "small businesses" under the proposed rule's definition of that term. Farm Credit Council, Comment Letter on Proposed Rule – Small Business Lending Data Collection Under the Equal Credit Opportunity Act (Regulation B) 3–4 (Jan. 4, 2022).

22. Among other things, the Council explained that agricultural credit is unique within the broader category of "business credit," and that the proposed rule failed to account for the material difference between agricultural credit, specifically, and business-purpose credit, in general. *Id.* at 4. The proposed rule defined "small business" as any business with a "gross annual revenue . . . for its preceding fiscal year [of] $5 million or less." 86 Fed. Reg. at 56,577 (proposed

to be codified at § 1002.106(b)). But, as the Council explained, that $5 million threshold was vastly too high as applied to farming and would cover close to *all* farmers who borrow from Farm Credit institutions, rather than those farming enterprises that are actually "small." Farm Credit Council, *supra*, at 4–5. To that end, the Council urged that in the Farm Credit System, the CFPB's definition of "small business" should align with the FCA's well-settled definition of "small farmer" as a "farmer, rancher, or producer or harvester of aquatic products who normally generates less than $250,000 in annual gross sales of agricultural or aquatic products." *Id.* at 4–6 (quoting FCA, Bookletter BL-040 (REVISED) at 2 (Aug. 10, 2007)). (This figure will be $350,000 in 2024.) As the Council explained, aligning those definitions would still result in the rule covering approximately 50% of Farm Credit System loans. Farm Credit Council, *supra*, at 4.

### C. Fifth Circuit Precedent and the Final Rule

23. On October 19, 2022, while the proposed rule was still pending, the U.S. Court of Appeals for the Fifth Circuit issued its decision in *Community Financial*, regarding a challenge to the CFPB's Payday Lending Rule. *Community Financial* held that the CFPB's funding structure violates the U.S. Constitution's Appropriations Clause and its "underpinning, the constitutional separation of powers." 51 F.4th at 642–43. The Fifth Circuit further concluded that there was a "linear nexus" between the CFPB's unconstitutional funding structure and the challenged rule, given that the CFPB relied upon its unlawfully unappropriated funds to promulgate and defend that rule. *Id.* at 643. Accordingly, the court determined that the only remedy for this constitutional violation was to "rewind[ ]" the CFPB's unlawful action and vacate the challenged rule. *Id.* (quoting *Collins v. Yellen*, 141 S. Ct. 1761, 1801 (2021) (Kagan, J., concurring)).

24. On February 27, 2023, the U.S. Supreme Court granted the CFPB's petition for a writ of certiorari, 143 S. Ct. 978, to address whether the Fifth Circuit "erred in holding that the

statute providing funding to the Consumer Financial Protection Bureau . . . , 12 U.S.C. [§] 5497, violates the Appropriations Clause, U.S. Const. Art. I, § 9, Cl. 7, and in vacating a regulation promulgated at a time when the CFPB was receiving such funding," Pet. for Writ of Cert. I, *CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, No. 22-448 (U.S. Nov. 14, 2022). The Court heard oral argument on that case on October 3, 2023.

25. Despite the Fifth Circuit's decision and the U.S. Supreme Court's grant of certiorari, the CFPB issued the Final Rule on March 30, 2023. 88 Fed. Reg. 35,150.

### D. This Litigation

26. On July 31, 2023, this Court entered an order granting a preliminary injunction enjoining the CFPB from implementing and enforcing the Final Rule against the original Plaintiffs and their members pending the Supreme Court's *CFSA* decision, 601 U.S. 416. The Court expressly declined to issue nationwide injunctive relief and stayed all deadlines for compliance with the requirements of the Final Rule only as to the original Plaintiffs and their members.

27. On August 10, 2023, the Council, on behalf of its members, delivered a letter to the Honorable Rohit Chopra, Director of the CFPB, asking that the CFPB voluntarily stay the Final Rule as to *all* covered financial institutions pending the Supreme Court's *CFSA* decision, 601 U.S. 416. Two weeks later, the CFPB denied the Council's request via letter dated August 24, 2023.

28. The Final Rule became effective on August 29, 2023. 88 Fed. Reg. at 35,150.

29. The Council's members—including CFC, TFC, and all other Farm Credit institutions—are now incurring and will continue to incur substantial costs to ensure compliance with the Final Rule.

### E. The Supreme Court's CFPB Decision

n

30. On May 16, 2024, the Supreme Court issued its opinion in *CFSA*, 601 U.S. 416. The Supreme Court decided that the CFPB's funding mechanism complied with the Appropriations Clause. *Id*. at 420–21.

31. The Supreme Court then held that only CFPB's funding from the "combined earnings" of the Federal Reserve complied with the requirements of the Appropriations Clause because the "money [is] otherwise destined for the general fund of the Treasury." *Id*. at 425, 435.

32. On June 25, 2024, after the Supreme Court's *CFSA,* 601 U.S. 416 decision, the CFPB modified the Final Rule by issuing an interim final rule, 89 F.R. § 55024 (published July 3, 2024) (to be codified at 12 C.F.R. § 1002).

### F. The CFPB Lacks Funding To Promulgate, Modify Or Enforce The Final Rule

33. As the Supreme Court made clear, the CFPB only has constitutional funding from the Federal Reserve's "combined earnings." 12 U.S.C. § 5497(a)(1).

34. But the Federal Reserve has had no "earnings" since September 2022, when the Federal Reserve's costs and expenses first exceeded its income, as demonstrated in the chart below. *See generally,* Bd. of Governors of the Fed. Rsrv. Sys., *Federal Reserve Banks Combined Quarterly Financial Report* 2, 25 (Mar. 31, 2024).[3]

---

[3] Available at https://www.federalreserve.gov/aboutthefed/files/quarterly-report-20240517.pdf.



Bd. of Governors of the Fed. Rsrv. Sys., *Federal Reserve Board announces preliminary financial information for the Federal Reserve Banks' income and expenses in 2023* (Jan. 12, 2024).[4]

35. Without "earnings," the Federal Reserve's transfers of funds to the CFPB after September 2022 were not in compliance with the statute governing the CFPB's funding. *See* 12 U.S.C. § 5497; *CFSA,* 601 U.S. at 435.

36. The CFPB lacked constitutionally appropriated funding when it published the Final Rule in the Federal Register on May 31, 2023 or when it published a modification of the Final Rule on July 3, 2024. As such, the Final Rule and the CFPB's associated rulemaking violate the Appropriations Clause and must be vacated. *CFSA*, 51 F.4th at 642–43; *rev'd and remanded on other grounds*, 601 U.S. 416; *Collins v. Yellen*, 594 U.S. 220, 258 (2021); *Seila Law LLC v. CFPB*, 591 U.S. 197, 233 (2020).

---

[4] Available at https://www.federalreserve.gov/newsevents/pressreleases/other20240112a.htm.

## COUNT I
### Violation of the U.S. Constitution, 12 U.S.C. § 5497, Antideficiency Act, and APA
### (Article I, § 9, Clause 7; 12 U.S.C. § 5497(a)(1); 31 U.S.C. §§ 1341–425, U.S.C. § 706(2)(A), (B))

37. The Farm Credit Intervenors incorporate by reference the preceding paragraphs as if set forth fully herein.

38. The United States Supreme Court held in *CFSA* that only CFPB's funding from the "combined earnings" of the Federal Reserve complied with the Appropriations Clause because the "money [is] otherwise destined for the general fund of the Treasury." 601 U.S. at 421, 425, 435.

39. The Federal Reserve has had no "combined earnings" since September 2022, when its expenses first exceeded its revenue. The Federal Reserve may only transfer funds that are "combined earnings" pursuant to 12 U.S.C. § 5497(a)(1).

40. The CFPB lacks constitutionally appropriated to issue, modify and enforce the Final Rule because the Federal Reserve's has lacked "combined earnings" since September 2022.

41. Thus, the CFPB unlawfully promulgated and modified the Final Rule because it lacked constitutionally authorized funding to issue, modify, and enforce the Final Rule, violating the U.S. Constitution's Appropriation Clause, Antideficiency Act, and 12 U.S.C. § 5497(a)(1). As such, the Final Rule must be vacated. *See CFSA*, 601 U.S. at 643.

42. Moreover, under the APA, agency action must be vacated if it is "not in accordance with law," 5 U.S.C. § 706(2)(A), or "contrary to constitutional right, power, privilege, or immunity," *id.* § 706(2)(B). Because the Final Rule was promulgated and modified in violation of the U.S. Constitution, it is not in accordance with law and contrary to constitutional right and power and must be set aside. *See CFSA*, 51 F.4th at 642–43, *rev'd and remanded on other grounds*, 601 U.S. 416.

## COUNT II
### Violation of APA
### (5 U.S.C. § 706(2)(C))

43. The Farm Credit Intervenors incorporate by reference the preceding paragraphs as if set forth fully herein.

44. Agency actions must be set aside where they "exce[ed]" or contravene an agency's statutory authority. 5 U.S.C. § 706(2)(C).

45. By requiring small-business lenders like CFC, TFC, and other Farm Credit System institutions to collect 81 categories of data, thus vastly expanding the original data points prescribed by Congress in Section 1071 of the Dodd-Frank Act, *see* Pub. L. No. 111-203, tit. X, subtit. G, § 1071, 124 Stat. at 2057 (codified at 15 U.S.C. § 1691c-2(e)(2)), the Final Rule "exce[eds]" the CFPB's statutory authority, 5 U.S.C. § 706(2)(C).

46. The Final Rule should, accordingly, be set aside.

## COUNT III
### Violation of APA
### (5 U.S.C. § 706(2)(A))

47. The Farm Credit Intervenors incorporate by reference the preceding paragraphs as if fully set forth herein.

48. Agency action must be vacated if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Put another way, a reviewing court must set aside agency action where the agency fails to "consider" the "relevant factors" or "important aspect[s] of the problem," *Michigan v. EPA*, 576 U.S. 743, 750, 752 (2015); *Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 856 (5th Cir. 2022), or offers "an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could

not be ascribed to a difference in view or the product of agency expertise," *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

49. The Final Rule is arbitrary and capricious because, among other things, it:

   a. fails to account for the material differences between agricultural credit, specifically, and business credit, more generally, in particular with respect to the definition of "small business";

   b. fails to account for the substantial burden the Final Rule's data collection requirements will place on agricultural and rural lenders, as opposed to business credit lenders more generally;

   c. fails to account for the burden on agricultural and rural consumers; and

   d. will result in outsized costs and resulting disincentives to small farmers, contrary to the Final Rule's purpose.

50. The CFPB acted arbitrarily and capriciously in issuing the Final Rule, so it must be vacated.

## COUNT IV
### Violation of APA
### (5 U.S.C. § 706(2)(A) and (C))

51. The Farm Credit Intervenors incorporate by reference the preceding paragraphs as if fully set forth herein.

52. The Dodd-Frank Act requires the CFPB to consider whether the costs of a proposed regulation outweigh its benefits. 12 U.S.C. § 5512(b)(2)(A). Specifically, the CFPB must consider "the potential benefits and costs to consumers and covered persons, including the potential reduction of access by consumers to consumer financial products or services resulting

from such rule" and "the impact of proposed rules on covered persons . . . and the impact on consumers in rural areas." *Id.*

53. In adopting the Final Rule, the CFPB failed to undertake adequately the cost/benefit analysis required by statute. Among other things, the CFPB did not properly consider the cost of compliance for the Council's members, including CFC, TFC, and other Farm Credit institutions, which will be disproportionately impacted by the Final Rule, as well as the inevitable effect of these additional costs: more costly credit for the nation's rural farmers, ranchers, and agribusinesses.

54. Because the CFPB failed to undertake adequately the necessary cost/benefit analysis, the Final Rule must be vacated.

## REQUEST FOR RELIEF

WHEREFORE, Intervenor-Plaintiffs the Farm Credit Council, Capital Farm Credit, and Texas Farm Credit respectfully request that the Court:

a. enter a declaration that the Final Rule and the CFPB's subsequent modification of the Final Rule are invalid and unenforceable;

b. enter both a preliminary and permanent injunction setting aside and holding unlawful the Final Rule, as modified, as to the Council and its members, including CFC and TFC;

c. award the Farm Credit Intervenors their attorneys' fees and costs incurred in connection with this action; and

d. award such further relief as the Court deems just and proper.

Dated: August 2, 2024                               Respectfully submitted,

                                                                         */s/ Daniel G. Gurwitz*

                                                Daniel G. Gurwitz
                                                State Bar No. 00787608
                                                Southern Dist. ID No. 16895
                                                Email: dgurwitz@atlashall.com

                                                Attorney in charge for Farm Credit Council,
                                                Texas Farm Credit, and Capital Farm Credit

OF COUNSEL:
Atlas, Hall & Rodriguez, LLP
818 Pecan Blvd.
P.O. Box 3725
McAllen, Texas 78501/ 78502-3725
Tel: 956-682-5501
Fax: 956-686-6106

Misha Tseytlin
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe Street
Suite 3900
Chicago, IL 60606
(312) 759-5947
misha.tseytlin@troutman.com

Joseph J. Reilly
TROUTMAN PEPPER
HAMILTON SANDERS LLP
401 9th Street NW, Suite 1000
Washington, DC 20004
(202) 274-2908
joseph.reilly@troutman.com