IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| TEXAS BANKERS ASSOCIATION, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> CONSUMER FINANCIAL PROTECTION BUREAU, *et al.*, <br><br> *Defendants*. | Civil Action No. 7:23-cv-00144 |

**DEFENDANTS' OPPOSITION TO INTERVENOR-PLAINTIFFS' MOTION TO AMEND THE COMPLAINT IN INTERVENTION**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ..................................................................................................... i

**TABLE OF AUTHORITIES** ............................................................................................. ii

**INTRODUCTION** ............................................................................................................... 1

**BACKGROUND** ................................................................................................................. 1

**ARGUMENT** ....................................................................................................................... 3

**CONCLUSION** ................................................................................................................... 7

# TABLE OF AUTHORITIES

**Cases**

*CFPB v. Community Financial Services Ass'n of Am., Ltd.*,
  601 U.S. 416 (2024) .................................................................................................... 1

*Foman v. Davis*,
  371 U.S. 178 (1962) .................................................................................................... 3

*Gregory v. Mitchell*,
  634 F.2d 199 (5th Cir. 1981) ...................................................................................... 3

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
  610 F. Supp. 2d 600 (S.D. Tex. 2009) ........................................................................ 6

*JECO Invs. P'ship v. Pac. Life Ins. Co.*,
  No. CV H-20-2464, 2020 WL 6322003 (S.D. Tex. Oct. 28, 2020) ........................ 5, 6

*Little v. Liquid Air Corp.*,
  952 F.2d 841 (5th Cir. 1992) ................................................................................... 3, 5

*McClure v. Turner*,
  481 F. App'x 167 (5th Cir. 2012) ................................................................................ 3

*Mitsubishi Aircraft Int'l, Inc. v. Brady*,
  780 F.2d 1199 (5th Cir. 1986) .................................................................................... 6

*Smith v. EMC Corp.*,
  393 F.3d 590 (5th Cir. 2004) ...................................................................................... 3

*Vera v. Bush*,
  980 F. Supp. 254 (S.D. Tex. 1997) ............................................................................. 5

*Whitaker v. City of,Hous.*,
  963 F.2d 831 (5th Cir. 1992) ................................................................................... 3, 5

*Wimm v. Jack Eckerd Corp.*,
  3 F.3d 137 (5th Cir. 1993) .................................................................................. 3, 5, 6

*Worley v. Webb Consol. Indep. Sch. Dist.*,
  No. 5:09-CV-33, 2009 WL 10693894 (S.D. Tex. July 23, 2009) ........................... 5, 6

**Statutes**

12 U.S.C. § 5497(a)(1) ..................................................................................................... 2

**Other Authorities**

Federal Reserve Bank of St. Louis, *Liabilities and Capital: Liabilities: Earnings Remittances Due to the U.S. Treasury: Wednesday Level*,
  https://fred.stlouisfed.org/series/RESPPLLOPNWW (last visited Aug. 22, 2024).................... 4

## INTRODUCTION

Late in this litigation, as the Court was poised to resolve cross-motions for summary judgment and presumably the case, a subset of Intervenor-Plaintiffs seek to raise what they characterize as a constitutional challenge for the first time. These intervenors could have raised this theory at any time; it relies on facts predating their original complaint by more than a year and their motion for leave to amend by nearly two. Movants claim that their delay is justified by the Supreme Court's decision in *CFPB v. Community Financial Services Ass'n of Am., Ltd.*, 601 U.S. 416 (2024) (*CFSA*). But that case came down in May. Yet movants make no attempt to explain, much less excuse, why they have delayed in seeking to plead their new claim until now. While Rule 15(a)'s standard is permissive, it does not stretch so far as to excuse such egregious and undue delay. Under these circumstances, this Court should deny leave to amend.[1]

## BACKGROUND

On April 26, 2023, Plaintiffs Texas Bankers Association, Rio Bank, and American Bankers Association brought this suit to challenge the Bureau's Small-Business Lending Rule. *See* ECF No. 1. Plaintiffs sought relief under both the Administrative Procedure Act (APA) and the Appropriations Clause of the Constitution, arguing that "the CFPB's funding structure violates the U.S. Constitution's structural separation of powers." ECF No. 12 at ¶ 79. In August 2023, three groups of entities purporting to be covered by the final rule moved to intervene in this case. *See* ECF Nos. 39, 41, 51. On September 8, 2023, a fourth intervenor complaint was submitted by the Farm Credit Council, Capital Farm Credit, and Texas Farm Credit (the Farm Credit Intervenors or FC Intervenors). *See* ECF No. 55-1 (as an exhibit to FC Intervenors'

---

[1] If the Court disagrees and grants these Intervenor-Plaintiffs leave to amend, then the Bureau will explain in appropriate briefing why this new argument is also entirely meritless.

1

Motion for Leave to Intervene); *see also* ECF Doc. 67. The complaints in intervention alleged claims similar to those in the operative complaint. *See* ECF Nos. 39, 41, 51, 55-1, 67. From March through early June 2024, the parties filed and briefed cross-motions for summary judgment under an agreed-upon schedule that was intended to resolve all dispositive motions and the case. *See* ECF Nos. 79, 90, 91, 95, 96, 100.

On May 16, 2024, roughly midway through summary judgment briefing, the Supreme Court decided *CFSA*. That decision reversed the Fifth Circuit opinion that Plaintiffs and intervenors had cited in support of their constitutional claims and rejected the challenge to the Bureau's statutory method of funding that Plaintiffs and Intervenors raised. Ten days later, Plaintiffs and Intervenors, including FC Intervenors, filed a notice with this Court acknowledging the *CFSA* decision and indicating that what remained was for the Court to decide their remaining APA claims. *See* ECF No. 98. Plaintiffs and Intervenors noted that they were ready to argue the remaining issues "at the earliest date the Court is able to provide." *Id.* at 2.

On August 2, 2024, FC Intervenors moved for judgment on the pleadings, ECF No. 107, and moved to amend their original complaint to add a "new U.S. Constitution Appropriations Clause issue" related to the Bureau's funding, ECF No. 108 at 6. Among other things, FC Intervenors seek to assert that since September 2022, the Federal Reserve has lacked funds that it could transfer to the Bureau in compliance with the Bureau's authorizing statute, the Consumer Financial Protection Act. *See* ECF No. 108-1 ¶ 33 (citing 12 U.S.C. § 5497(a)(1)); *id.* ¶ 34. This purported defect—and publicly-available analysis of the Federal Reserve's finances upon which FC Intervenors rely—predates FC Intervenors' motion by nearly two years.[2]

---

[2] Movants seek judgment on the pleadings though the issue they raise is not in any of the current pleadings; the Court has not granted the instant (and later-filed) motion for leave to amend, and of course the Bureau has not answered the proposed amended complaint.

## ARGUMENT

Though Federal Rule of Civil Procedure 15(a) provides that district courts "should freely give leave [to amend pleadings] when justice so requires," leave is "by no means automatic." *McClure v. Turner*, 481 F. App'x 167, 171 (5th Cir. 2012). In deciding whether to grant leave, courts may consider whether there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Any of these circumstances can provide the "substantial reason" necessary to deny a movant leave to amend. *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004).

While Rule 15(a) does not provide a bright line for determining when undue delay is sufficient to deny leave to amend, "'at some point, time delay on the part of a plaintiff can be procedurally fatal.'" *Whitaker v. City of Hous.*, 963 F.2d 831, 836 (5th Cir. 1992) (quoting *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981)). And when the delay is egregious, the burden shifts to the movant to show their delay was "due to oversight, inadvertence, or excusable neglect." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004); *see also Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992). Here, FC Intervenors' delay was egregious because they had the opportunity to bring their claim in their initial complaint. Yet they have failed to show that their delay resulted from oversight, inadvertence, or excusable neglect. Even if this Court is persuaded that FC Intervenors' delay was not egregious because the May 2024 *CFSA* decision provided some necessary basis for their proposed amendment (it did not), they provide no explanation for their lack of diligence in only pursuing it now. Either way, FC Intervenors' delay is undue and leave to amend should be denied.

3

FC Intervenors' delay was egregious. Plaintiffs Texas Bankers Association and Rio Bank initiated this case on April 26, 2023; FC Intervenors filed their Complaint in Intervention on September 8, 2023. According to FC Intervenors' own filing, the figures and financial analysis underlying their claim—that the Federal Reserve has purportedly lacked "combined earnings" to transfer to the Bureau since September 2022—have been publicly available since at least January 2023.[3] *See* ECF No. 107 at 14 (citing the January 2023 publication *Why Is the Federal Reserve Operating At a Loss*, Cong. Research Service); *see also* ECF No. 108 at 4 (citing the November 2023 publication *The Fed's Remittances to the Treasury: Explaining the 'Deferred Asset'*, Fed. Rsrv. Bank of St. Louis). And of course, Title X of the Dodd-Frank Act—whose phrase "combined earnings" is at the center of FC Intervenors' proposed claim—dates back to 2010.

Nonetheless, FC Intervenors neither pled their claim in their original September 2023 complaint, itself filed at least nine months after the publication of analysis they now cite, nor sought to amend that complaint until August of 2024—23 months after they assert that the Federal Reserve began to lack "combined earnings" to transfer to the Bureau, 18 months after the publication of their cited analysis, 16 months after this case was initiated, and 11 months after their initial complaint. And all plaintiffs originally raised a different challenge to the Bureau's funding, based on a case they knew was on appeal to the Supreme Court.

---

[3] Indeed, FC Intervenors cite a publicly-available web resource that provides near-contemporaneous reporting on the "remittances due" from the Federal Reserve Board of Governors to the Treasury, suggesting that January 2023 is a conservative estimate of when information was publicly available that Federal Reserve Banks were suspending remittances to Treasury. *See* ECF No. 107 at 6, 13; ECF No. 108 at 5, citing the Federal Reserve Bank of St. Louis, *Liabilities and Capital: Liabilities: Earnings Remittances Due to the U.S. Treasury: Wednesday Level*, https://fred.stlouisfed.org/series/RESPPLLOPNWW (last visited Aug. 23, 2024) (as of Aug. 23, 2024 displaying "remittances due" as of Aug. 21, 2024).

Courts have denied leave to amend due to undue delay under similar or less dramatic circumstances. In *Whitaker*, the Fifth Circuit found that a delay of 11 months was undue. 963 F.2d at 837. In *Wimm*, the Fifth Circuit found an undue delay when nine months passed between an original complaint and a proposed amendment despite plaintiff's knowledge of the relevant facts when the action was initiated. 3 F.3d at 139. This Court reached the same conclusion in cases presenting similar circumstances when a plaintiff delayed for six months, *see Worley v. Webb Consol. Indep. Sch. Dist.*, No. 5:09-CV-33, 2009 WL 10693894, at *3 (S.D. Tex. July 23, 2009) (citing *Wimm*), and three months, *JECO Invs. P'ship v. Pac. Life Ins. Co.*, No. CV H-20-2464, 2020 WL 6322003, at *4–5 (S.D. Tex. Oct. 28, 2020).

Despite presenting more significant delays, FC Intervenors make no serious attempt to satisfy their burden to demonstrate that their delay was "due to oversight, inadvertence or excusable neglect." *Little*, 952 F.2d at 846–47 (quotation omitted), *aff'd on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994). And while a delay on its own "need not be fatal in and of itself, it is fatal when unexcused." *Vera v. Bush*, 980 F. Supp. 254, 256–57 (S.D. Tex. 1997). FC Intervenors identify the Supreme Court's May 2024 decision in *CFSA* as the inciting event for their proposed amendment. *See* ECF 108 at 1 ("The requested amendments seek to account for a recent Supreme Court decision that fundamentally changes one of the counts in the Farm Credit Intervenors' Complaint."). But that decision offers FC Intervenors no excuse. The facts and statutory language FC Intervenors newly seek to plead, *see* ECF No. 108-1 ¶¶ 33-36, long predate that decision (and FC Intervenors' original complaint). And *CFSA* did not endorse FC Intervenors' theory of, or even interpret, the statutory "earnings" language. Rather, *CFSA* rejected the funding argument FC Intervenors apparently chose to make instead. The timing of

5

*CFSA* thus cannot demonstrate that the delay here was due to oversight, inadvertence, or excusable neglect. Rather, these circumstances reasonably

> . . . give rise to the inference that the [party] was engaging in tactical maneuvers to force the court to consider various theories seriatim. In such a case, where the movant first presents a theory difficult to establish but favorable and, only after that fails, a less favorable theory, denial of leave to amend on the grounds of bad faith may be appropriate.

*Wimm*, 3 F.3d at 141; *see also Mitsubishi Aircraft Int'l, Inc. v. Brady*, 780 F.2d 1199, 1203 (5th Cir. 1986) (failure to bring a claim that could have been pleaded the outset "strongly suggests either a lack of diligence on its part or a lack of sincerity."); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 610 F. Supp. 2d 600, 654 (S.D. Tex. 2009) (denial of leave where plaintiff could have initially pled proposed theory in the alternative but failed to); *Worley*, 2009 WL 10693894, at *3 (same).

Even if *CFSA* did provide a necessary basis for FC Intervenors' claim (it does not), it was issued three months ago. FC Intervenors were clearly aware of the decision at the time: they filed a notice regarding the decision with this Court ten days after the decision was issued. *See* ECF No. 98 at 4. Yet they offer no explanation for their delay from May to August—after this Court had informed the parties it would rule on summary judgment shortly—in seeking to bring their claim predicated on the decision, despite invoking its issuance as the inciting event for their amendment. Even when bad faith was not unambiguously present, this Court has observed that where a party failed to bring a claim that they could have brought from the start, "such failure may give rise to an inference that the movant lacked diligence," which "can be fatal even where it does not suggest bad faith or dilatory motive." *JECO*, 2020 WL 6322003, at *4 (citing *Mitsubishi Aircraft International, Inc.*). Here, FC Intervenors' delay in raising their proposed claim demonstrates a lack of diligence even under the most favorably-interpreted circumstances.

6

FC Intervenors do not account for the nearly two-year gap between September 2022 (when they claim the Bureau's funding became improper under their new theory) and August 2024, when they filed their motion for leave; nor, even crediting their (meritless) argument the theory springs from *CFSA*, do they account for the gap between their May notice to this Court regarding the *CFSA* decision and their August motion for leave. Whether because of a lack of diligence or a lack of sincerity, FC Intervenors' delay should be fatal.

## CONCLUSION

For these reasons, the Court should deny FC Intervenors' motion for leave to amend their complaint.[4]

Dated: August 23, 2024                                                                 Respectfully submitted,


*/s/ Karen S. Bloom*
Seth Frotman
  *General Counsel*
Steven Y. Bressler
  *Deputy General Counsel*
Kevin E. Friedl
  *Acting Assistant General Counsel*

Andrea Matthews (MA #694538)
Karen S. Bloom (NY # 4438917)
  *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
(202) 407-2324 (phone)
(202) 435-7024 (facsimile)
andrea.matthews@cfpb.gov

---

[4] Should the Court grant FC Intervenors leave to amend their complaint, as noted at *supra* 1 n.1, Defendants anticipate explaining why the newly-pled claim is meritless in appropriate briefing under Rule 12.

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2024, I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/  Karen S. Bloom*